**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| **PATTY BEALL,  MATTHEW MAXWELL,** | § | |
| **DAVID GRAVLEY, TALINA MCELHANY,** | § | |
| **KELLY HAMPTON, CASEY BROWN,** | § | |
| **JASON BONNER, KEVIN TULLOS,** | § | |
| **ANTHONY DODD, ILENE MEYERS,** | § | |
| **TOM O'HAVER, JOY BIBLES, DON** | § | |
| **LOCCHI AND MELISSA PASTOR ,** | § | |
| **Individually and on behalf of all others** | § | |
| **similarly situated;** | § | |
| | § | |
| **Plaintiffs,** | § | **2:08-cv-422 TJW** |
| | § | |
| **TYLER TECHNOLOGIES, INC. AND** | § | |
| **EDP ENTERPRISES, INC.** | § | |
| **Defendants.** | § | |

**PLAINTIFFS' MOTION FOR CERTIFICATION OF COLLECTIVE ACTION**
**AND REQUEST FOR NOTICE TO POTENTIAL PLAINTIFFS**
**PURSUANT TO SECTION 216(b)**

Plaintiffs, Patty Beall, Matthew Maxwell, David Gravley,  Talina McElhany,  Kelly Hampton, Kevin Tullos, Casey Brown, Jason Bonner,  Anthony "Tony" Dodd,  Ilene Meyers, Don Locchi, and Melissa Pastor, on behalf of themselves and all others similarly situated, current and former employees of Defendants, Tyler Technologies, Inc. and/or  EDP Enterprises, Inc.,  file this Motion for Certification of Collective Action and Request for Notice to Potential Plaintiffs, and would show the Court as follows:

**I.  INTRODUCTION**

1.1     Plaintiffs are non-exempt employees who were denied pay and/or overtime pay as required by law.  Plaintiffs file this collective action to recover unpaid wages and overtime wages owed to them individually and on behalf of all other current and former employees that were not

compensated for the time spent under the direction and control of Defendants. Plaintiffs are present or former employees of Tyler Technologies, Inc. and/or EDP Enterprises, Inc. who were mis-classified as exempt at any time from October 31, 2005 to the present date. Additional individuals employed by Defendants suffer, and continue to suffer, injury as a result of Defendants' violations of the FLSA. These unnamed individuals are similarly situated to the named Plaintiffs because (1) they have or had similar job duties and titles, (2) they have or had the same exempt salary pay structure, (3) they all work or worked for the same company(s), and (4) they were all required by the same employer to work overtime without additional compensation. Accordingly, the named Plaintiffs seek to proceed in this FLSA action collectively with other similarly situated employees of Defendants.

1.2    The FLSA specifically confers the right of a party plaintiff to maintain an action on behalf of him/herself and those similarly situated to him/her. 29 U.S.C. §216(b). 29 U.S.C. §216(b) provides, in pertinent part:

> An action to recover liability ... may be maintained against any employers ... by any one or more employees for and behalf of ... themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless she gives her consent in writing to become such party and such content is filed in the court in which such action is brought.

1.3    Collective actions serve the dual interests of serving justice and efficient case management, and benefit the Plaintiffs, Defendants and the courts by avoiding a multiplicity of duplicative suits, expediting the disposition of the action and reducing the attorney's fees, costs and expenses associated with each affected individual having to pursue his or her own action. *Hoffman-LaRoche, Inc. v. Sperling,* 493 U.S. 165,110 S.Ct. 482, 107 L.Ed 2d.480 (1989). "These benefits, however, depend on employees receiving accurate and *timely notice* concerning the pendency of the

collective action so that they can make informed decisions about whether to participate." *Id.* at 165 (emphasis added).

1.4    To that end, it is well settled that in a collective action brought pursuant to §216(b) of the FLSA, district courts have the discretionary power to authorize the sending of notice to potential class members. *Id.*   Indeed, the "broad remedial purposes of the FLSA are best served" if the district court facilitates such notice. *Brooks v. Bell South Telecommunications, Inc.*, 164 F.R.D. 561, 566 (N.D. Ala. 1955). In the absence of court-authorized notification to all similarly situated employees, those employees may; (i) not receive timely, complete and accurate information as to the pendency of this action, (ii) lack meaningful access to the court, and (iii) have no practical or efficient method of vindicating their rights. *Riojas v. Seal Products, Inc.*, 82 F.R.D. 613 (S.D. Tex. 1979) (court holding that notions of fundamental fairness dictate that notice should be sent).

1.5    Under the FSLA, individual plaintiffs must each "opt-in" in order to join a "collective action."  29 U.S.C. §216(b).  Thus, until a particular individual is notified and consents to join a collective action, the statute of limitations continues to run for that individual.  Given the short two-year time period allowed for back wages under the FSLA, time is of the essence when attempting to find and notify potential plaintiffs in collective actions.  29 U.S.C. § 255.  Every day that passes until Employees "opt-in" to this suit is a day's less pay that they can recover from their employer who paid them in violation of the FSLA.  *See Id.*  Because the recovery for each potential plaintiff is eroding daily, Plaintiffs are seeking authorization to send court-approved nation-wide notices to Defendants' employees as soon as possible.

1.6    Plaintiffs have alleged that they, and all other similarly situated to them (the "potential Opt-In Plaintiffs"), were subject to a common  policy, practice and procedure transgressing the requirements of the FLSA.   Specifically, Plaintiffs contend that they and those current and former

employees throughout the Tyler Technologies system "similarly situated" to them were improperly

classified as exempt from the overtime provisions of the FLSA. Plaintiffs' Amended Complaint ¶7.2.

At the notice stage, no more is required.

1.7    Plaintiffs contend that they are similarly situated to current and former employees of

Defendants Tyler Technologies, Inc. and/or EDP Enterprises, inc. or predecessor companies of Tyler

Technologies, Inc. who are or have been employed at any time from October 31, 2005, to the present

as Customer Support Analysts," "Systems Support Specialists/Systems Analyst" "Software Support

Specialists," Technical Support Specialist/Trainers," "Systems Engineers," "Client Liaisons,"

"Trainers," "Implementation Specialists," "Implementation Consultants," "Technical Sales Product

Specialists," "Quality Assurance Analysts," or similar job title(s).

1.8    Plaintiffs, by this Motion,  request this Court to enter an order authorizing this case

to as a collective action.

1.9    Plaintiffs, by this Motion, request this Court to order the Defendants to produce a

computer-readable data file containing the names, addresses, e-mail address (if available), Social

Security numbers and telephone numbers of such similarly situated current and former employees

so that Court-ordered notice may be implemented.

1.10    Plaintiffs, by this Motion, request this Court to authorize Plaintiffs' counsel to

maintain an internet website for the purpose of informing similarly situated persons of their right to

opt-in to this litigation, to include a copy of the Court's orders, pleadings and exhibits, pertinent

provisions of the Fair Labor Standards Act, Consent Forms,  information concerning filing deadlines

and contact information for all Plaintiffs'  attorneys.

1.11    Plaintiffs, by this Motion, request this Court to order the Defendants to post, on its

company bulletin boards and send via regular company newsletter, the Notification to Potential

Members of Collective Action authorized by the Court.

1.12    Plaintiffs, by this Motion, request this Court to order Defendants and individuals under its direction and control to refrain from interfering, by written or unwritten policy, by action or by statement, with the right of its employees to choose to opt-in as a Plaintiff to this cause of action.

1.13    In support of this Motion, Plaintiffs have submitted an appendix providing to the Court (1) a proposed Notification to Potential members of Collective Action, (2) a proposed Opt-In Consent Form, (3) declarations of  Plaintiffs and opt-in Plaintiffs,  establishing support for a collective action and (4) job descriptions from Tyler Technologies, Inc's website.

## II. <u>FACTUAL BACKGROUND</u>

2.1    Defendants TYLER TECHNOLOGIES, INC., and  EDP ENTERPRISES, INC. are/were in the business of creating, installing and providing customer training and support for specialized software programs for use by public entities including schools, appraisal districts, courts, pension plans and public safety entities.  In September 2007, Defendant, TYLER TECHNOLOGIES, INC. merged with EDP ENTERPRISES, INC. and thereafter continued its operations as TYLER TECHNOLOGIES, INC.   During all  times relevant to this action,  Plaintiffs and Putative Class Members were employed by Tyler Technologies, Inc. and/or EDP Enterprises, Inc. as exempt salaried employees, and were not provided any additional compensation for any hours they worked over 40 hours per week, with the exception of "travel" or "expertise" bonuses of $25.00 to $120.00 per day for each day they were out of town performing billable work at a client's site.

2.2    During all times relevant to this action,  Plaintiffs and Putative Class Members were classified as "Customer Support Analysts," "Systems Support Specialists/Systems Analysts" "Software Support Specialists," Technical Support Specialist/Trainers," "Systems Engineers,"

"Client Liaisons," "Trainer," "Implementation Specialists," "Implementation Consultants," "Technical Sales Product Specialists," "Quality Assurance Analysts," or similar job title(s).

2.3    "Customer Support Analysts"' primary job duties consisted of assisting Defendants' customers via telephone with problems they encountered with the use and operation of Defendants' computer software programs.

2.4    "Systems Engineers"' primary job duties involved the installation and maintenance of computer hardware and software for Defendants and their customers.

2.5    "Client Liaisons,"'[1] primary job duties consisted of interacting with EDP Enterprises, Inc.'s customers via telephone, during the conversion of the customer's old software system to EDP Enterprises, Inc.'s software system, including the entry of the client's data after it is converted to the new software, reviewing the data for errors, assisting the client with correcting errors, and providing customer support several months after the conversion.

2.6    "Trainer," "Implementation Consultant" and/or "Implementation Specialist" are job titles that refer to the same job position. "Trainers," "Implementation Consultants" and/or "Implementation Specialists" provide on-site assistance to Defendants' customers during the implementation of Defendants' software.[2] This position often entails extensive travel to customer sites where the "Trainers," "Implementation Specialist" and/or "Implementation Consultant" assists

---

[1] The job title of "Client Liaison" was exclusive to EDP Enterprises, Inc. Although the position continued after Tyler Technologies, Inc. purchased EDP Enterprises, Inc. the name of the position changed to "Implementation Specialist."

[2] The job title of "Trainer" was exclusive to EDP Enterprises, Inc. Although the position continued after Tyler Technologies, Inc. purchased EDP Enterprises, Inc., the name of the position changed to "Implementation Specialist."

customers during the conversion of their existing software to Defendants' software.[3]   This process involves the conversion of the customer's data from their existing software to Defendants' software, reviewing the converted data for errors, assisting the customer with correcting data errors, setting up software modules and training the customer's employees on the use and operation of Defendants' software.

2.7     "Technical Sales Product Specialists'" primary job duties consist of providing  pre and post sale technical product assistance to Tyler Technologies, Inc.'s sales managers, consisting of on-site presentations to explain the technical aspects of the Tyler Technologies, Inc's software to potential customers and post-sale technical support during the conversion and implementation of the software.[4]

2.8     "Quality Assurance Analysts'" primary job duties involved preparing test cases to assure that Defendants' software operated in "real life" scenarios as it was intended to operate.

2.9     During the relevant time period, Plaintiffs and Putative Class Members were all treated as exempt employees by Defendants, notwithstanding the fact that they did not qualify for any recognized FLSA exemption.   Defendants regularly required Plaintiffs and Putative Class Members to work  longer than 40 hours per week, and failed and refused to compensate them for such work in excess of 40 hours at rates not less than one and one-half times the regular rates at which they were employed, contrary to the provisions of Section 207(a) of the Act (29 USCA § 207(a)).   Plaintiffs and the Putative Class Members were all subject to a common plan to deprive them of overtime compensation under 29 U.S.C. § 207(a)(1). Plaintiffs' Complaint ¶7.1; 7.3.

_____

[3]Tyler Technologies, Inc. sells a wide variety of software products for use by public entities.  Although the software packages are designed for different applications, the job duties of the Implementation Specialists/Consultants are essentially the same.

[4]The position of "Technical Sales Product Specialist" is only applicable to Tyler Technologies, Inc.'s employees.

### III. REQUEST FOR CONDITIONAL CERTIFICATION AND 216(B) NOTICE TO POTENTIAL PLAINTIFFS

**A.** **Legal Standards: Because Plaintiffs and Potential Class Members are "similarly situated" the District Court is Authorized to Conditionally Certify and Issue Notice to Potential Class Members**.

3.1    The FLSA's "collective action" provision allows one or more employees to bring an action for overtime compensation on "behalf of themselves and other employees similarly situated." 29 U.S.C. § 216(b).  District Courts have discretion to allow a party asserting FLSA claims on behalf of others to notify potential plaintiffs so that they may choose to "opt-in" to the suit.  *Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165, 169-70, 110 S Ct. 482, 107 L.Ed 2d. 480 (1989).  Court-authorized notice protects against "misleading communications" by the parties, resolves the parties' disputes regarding the content of any notice, prevents the proliferation of multiple individual lawsuits, assures that joinder of additional parties is accomplished properly and efficiently, and expedites resolutions of the dispute.  *Id*. at 170-72.

3.2    Under Section 216(b), an employee need only show that he is suing his employer for himself and on behalf of other employees "similarly situated."  *Mooney v. Aramco Services Co.*, 54 F.3d 1207, 1213-14 (5th Cir. 1995).  **Plaintiffs' claims and positions need not be identical to the potential opt-ins, they need only be similar.**  *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1096 (11th Cir. 1996). (Emphasis added).  Plaintiffs need only show "a reasonable basis" for the allegation that a class of similarly situated persons may exist. *Id*. at 1097.

3.3    The standard for collective action notice is a "lenient" standard.  *Mooney v. Aramco Servs. Co.*, 54 F3d 1207, 1213-14 (5th Cir. 1995).  "It is considerably 'less stringent' than the proof required pursuant to Fed. F. Civ. P. 20(a) for a joinder or Fed. R. Civ. P. 23 for class certification."  *Grayson v. K Mart, supra* at 1096.  Similarly situated does not mean identically situated.  *See*

*Heagney v. European American Bank*, 122 F.R.D. 125 (E.D.N.Y. 1988); *Palmer v. Readers Digest Ass'n*, 42 Fair Empl. Prac. 212, 213 (S.D.N.Y.1986); *Riojas v. Seal Produce Inc.*, 82 F.R.D. 613, 617 (S.D.Tex. 1979). Rather, an FLSA class determination is appropriate when there is "a demonstrated similarity among the individual situations ... some factual nexus which binds the named plaintiffs and the potential class members together as victims of a particular alleged [policy or practice]." *Heagney v. European American Bank* , *supra* at 127 . Thus, a court can foreclose a plaintiffs' right to proceed collectively only if "the action relates to specific circumstances personal to the plaintiff rather than any generally applicable policy or practice." *Burt v. Manville Sales Corp.*, 116 F.R.D 276, 277 (D.Colo.1987).

(a)     **The Court Should Use the Two-Stage Approach in Issuing Notice to Potential Plaintiffs.**

3.4     The Fifth Circuit has acknowledged two different approaches that may apply in deciding whether notice should be issued to potential plaintiffs: the two-stage approach and the Rule 23 approach. *Mooney v. Aramco Services Co. supra* at 1213-14. Although the Fifth Circuit has not specified which of the two tests courts must follow, this Court has previously applied the two-stage approach in *Hayes v. Laroy Thomas, Inc.*, 2007 U.S. Dist. LEXIS 28885 (E.D.Tex.2007) and *Allen v. McWane, Inc*. 2006 U.S. Dist. LEXIS 81543, 9-10 (E.D. Tex 2006). Additionally, in *Donihoo v. Dallas Airmotive, Inc.*, 1998 U.S. Dist. LEXIS 2318 (N.D. Tex. 1998), the Court, without the benefit of any Rule 23 analysis, found customer service representatives throughout the Defendant's Company to be "similarly situated." Accordingly, the Court allowed notification to all customer service representatives employed over a four year period.

3.5     In addition to the Fifth Circuit, courts across the country have adopted the two stage

approach. [5]  Under the two-stage method, the court considers certification in two phases.  First, the

court must decide whether the plaintiff has presented substantial evidence that similarly situated

potential plaintiffs exist.    This decision is made after the plaintiff has petitioned, as here, for

judicially-certified notification of putative class members.  *See Mooney v. Aramco Services Co.*

*supra* at 1213; *H & R Block v.. Housden*, 186 F.R.D. 399, 400 (E.D. Tex.1999).  If the district court

"conditionally certifies" the class at the first step, putative class members are given notice and the

opportunity to "opt-in." *See Mooney v. Aramco Services Co., supra* at 1214.  At the notice stage, the

court will determine whether plaintiffs and potential opt ins are "similarly situated" based upon the

---

[5]

    *See also Kane v. Gage Merchandising Services, Inc.*, 138 F. Supp. 2d 212, 214 (D. Mass. 2001) (Rule 23 is inapplicable to §216(b) representative actions); *Reeves v. Alliant Techsystems, Inc.*, 77 F. Supp. 2d 242, 246 (D.R.I 1999) (applying the two stage approach); *Realite v. ARK Restaurants Corp.*, 7 F. Supp. 2d 303, 306 (S.D.N.Y. 1998) (applying lenient two stage approach and granting notification to a broad class of employees ranging from cooks to bartenders who worked at Ark Restaurants); *Jackson v. New York Telephone Co.*, 163 F.R.D. 429, 432 (S.D.N.Y. 1995) (application of Rule 23 is at odds with the remedial purposes of the ADEA): *Felix DeAscencio v. Tyson Foods, Inc.*, 130 F. Supp. 2d 660, 662 (E.D. Pa. 2001) (applying two stage approach and holding that judicially facilitated notice was appropriate); *Sperling v. Hoffman-La Roche, Inc.*, 118 F.R.D. 392, 407 (D.N.J. 1988) *aff'd in part and appeal dismissed in part*, 862 F.2d 439 (3rd Cir. 1988) (proposing lenient standard for notification under two stage approach); *Camper v. Home Quality Management Inc.*, 200 F.R.D. 516, 519 (D.Md. 2000) (notice appropriate under two stage approach); *Belcher v. Shoney's Inc.*, 927 F. Supp. 249 (M.D. Tenn. 1996) (applying two stage approach to approving nationwide notice to all employees employed at Defendants' Shoney's concept restaurant who were compensated on an hourly basis or under a fluctuating pay plan); *Gordon v. Trace Ambulance, Inc.*, 2001 U.S. Dist. LEXIS 3140, (N.D. Ill. 2001) (approving notification and noting that "'there is a fundamental, irreconcilable difference between the class action described in Rule 23 and that provided for by FLSA §16(b) ... It is crystal clear that §16(b) precludes pure Rule 23 class actions in FLSA suits'"); *Krieg v. Pell's Inc.*, 2001 U.S. Dist. LEXIS 6769, (S.D. Ind. 2001) (Court holding that it need not make a final determination on the similarly situated requirement of 216(b) before allowing notice because to do so "would have the effect of putting an FLSA class action in a 'chicken and egg' limbo"); *Schmidt v. Fuller Brush Co.* 527 F.2d 532, 536 (8th Cir. 1975) (Rule 23 and §216(b) class actions are mutually exclusive); *Church v. Consolidated Freightways, Inc.*, 137 F.R.D. 294, 305 (N.D. Cal. 1991) (clear weight of authority holds that Rule 23 procedures are inappropriate for the prosecution of class actions under 216(b)); *Montoya* v. *Rescue Industries, Inc.*, 176 F.3d 489 (10th Cir. 1999) (approving application of two stage approach in granting nationwide notification and reversing district court's decision to decertify the conditional collective action).

allegations in a complaint supported by affidavits or declarations. *Allen v. McWane, Inc.*, supra; *Grayson v. K Mart, supra* at 1097; *Mooney v. Aramco Services Co., supra* at 1213-14; *Brooks v. Bellsouth Telecom.*, 164 F.R.D. 561, 568 (N.D. Ala. 1995); *Sperling v. Hoffman-Laroche, Inc.*, 118 F.R.D. 392, 406-07 (D.N.J. 1988), *aff'd* 493 U.S. 165, 110 S. Ct. 482 (1989). The plaintiffs are required to present substantial allegations that the putative class members are similarly situated to the named plaintiffs and to support those allegations with competent evidence. *See H & R Block v. Housden,* 186 F.R.D. 399, 400 (E.D. Tex.1999); *see also Haynes v. Singer Company, Inc.,* 696 F.2d 884,887 (11th Cir. 1983). Plaintiffs would show the Court that they have presented substantial proof of the nature of the allegations, and that they are similarly situated, as defined under the two-stage approach.

3.6     Under the two-stage approach, once a court makes the preliminary determination that the potential plaintiffs are similarly situated, the case proceeds as a collective action throughout discovery. *Mooney v. Aramco Services Co., supra*, at 1214. Discovery is relevant thereafter both as to the merits of the case and for the second step in the collective action procedure where the court evaluates conflicting evidence developed in discovery to test the validity of the preliminary decision made at the notice stage. *Mooney v. Aramco Services Co., supra* at 1214. Allowing early notice and full participation by the opt-ins "assures that a full 'similarly situated' decision is informed, efficiently reached and conclusive." *Sperling v. Hoffman-Laroche, Inc., supra* at 406. Once the notice and opt-in period is complete, the Court will have the benefit of knowing the actual make-up of the collective action.

   **(b).     Notification is appropriate under the two-stage approach.**

3.7     The Fifth Circuit has recognized that the *collective* action provisions of 29 U.S.C. §216(b) are independent of and unrelated to the *class* action mechanism provided for in Fed. R. Civ.

P. 23. *See Lachappell v. Owens-Illinois, Inc.*, 513 F. 2d 286, 289 (5th Cir. 1975) (*per curiam*). In

*Lachappell*, the Fifth Circuit Court of Appeals specifically recognized that Fed. R. Civ. P. 23 and

29 U.S.C. §216(b) are "mutually exclusive" and "irreconcilable". *Id.* at 289. This is because of the

"opt-in" nature of 29 U.S.C. §216(b) and "opt-out" nature of Rule 23. *Id*. In opt-in actions, potential

class members need considerably less protection since they are not bound by the outcome of the

action unless they specifically opt-in. Conversely, in opt-out actions, potential class members are

bound by the outcome of the action. Thus, requirements for certifying a class pursuant to Rule 23

are more stringent than the requirements for obtaining notification of potential class members

pursuant to §216(b). *Schmidt v. Fuller Brush Co.*, 527 F.2d 532, 536 (8th Cir. 1975); *Church v.*

*Consolidated Freightways, Inc.*, 137 F.R.D. 294 (N.D. Cal. 1991); *Garner v. G.D. Searle*

*Pharmaceuticals & Company*, 802 F. Supp. 418, 421 (M.D. Ala. 1991).

3.8     While Plaintiffs recognize that they bear the initial burden of demonstrating a

reasonable basis for the Court to exercise its discretion and authorize notification, *Haynes v. Singer*

*Company, Inc.*, 696 F.2d 884, 887 (11th Cir. 1983), the burden "is not [a] heavy" one. *Grayson v. K*

*Mart Corporation*, 79 F.3d 1086, 1098 (11th Cir. 1996); *Allen v. McWane, Inc.*, supra.  Because the

court has minimal evidence, the district court's determination as to whether notice of the action

should be given to potential class members "is made using a fairly lenient standard, and typically

results in at least conditional certification of a representative class." *Mooney v. Aramco Services Co.,*

*supra* at 1214.

**(1)     The Opt-in Plaintiffs are Similarly Situated.**

3.9     To be similarly situated, each class member's situation need not be identical, but

merely similar. *Riojas v. Seal Produce, Inc.*, 82 F.R.D. 613, 616 (S.D. Tex. 1979). At the notice

stage, in order to satisfy the burden of showing that the putative class members are similarly situated,

"courts require nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan infected by discrimination." *Mooney v. Aramco Services Co., supra* at 1214, fn8, *quoting, Sperling v. Hoffman-LaRoche, Inc*. 118 F.R.D. 392, 407 (D.N.J. 1988). Thus, Plaintiffs need only show that the members of a collective action class under the FLSA are "similarly situated with respect to their job requirements and with regard to their pay provisions." *Dybach v. State of Florida Department of Corrections*, 942 F.2d 1562, 1567-68, (11th Cir. 1991).   At this juncture, the Court does not decide the merits of the claims or defenses. *Severton v. Phillips Beverage Co*., 137 F.R.D. 264, 267 (D. Minn. 1991); *Garner v. G.D. Searle Pharmaceuticals & Co.,* 802 F. Supp. 418, 423 fns. 3 & 4 (M.D. Ala. 1991); *Roebuck v. Hudson Valley Farms, Inc.,* 239 F. Supp. 2d. 234, 238 (N.D. N.Y. 2002); *Grayson v. K Mart Corp., supra* at 1099, n.17.   Rather, at this time, the Court only decides whether the employees are similarly situated with respect to the right to overtime or any exemption from it.

3.10   A collective action "claim is not defeated simply because the proposed class members performed a variety of different jobs at different locations, reported to different supervisors or left employment for different reasons than the named plaintiffs." *Church v. Consolidated Freightways, Inc.*, *supra* at 308. Thus, in FLSA cases, courts have found that the fact that the potential opt-in plaintiffs held different positions in different locations did not preclude a finding that they and the plaintiffs were similarly situated. *See e.g., Tucker v. Labor Leasing Inc.*, 872 F. Supp. 941 (M.D. Fla. 1994) (individuals working in a variety of clerical positions, including cashier, receptionist, customer service personnel, rating and billing clerks, OS&D clerks and "other positions" were "similarly situated"); *Foster v. The Food Emporium*,  2000 U.S. Dist. LEXIS 6053, (S.D.N.Y. 2000).  (All hourly employees alleged to have been subject to same work conditions were "similarly situated"); *Garza v. Chicago Transit Authority*, 2001 U.S. Dist. LEXIS 6132, (N.D. Ill. 2001) (notification of

suit to switchman, towerman and flagman positions appropriate where each position was subject to same compensation policy); *Austin v. Champion Intern. Corp.,* 1990 WL 339487 (S.D. Tex) (employees similarly situated even though they held different levels of responsibility); *Heagney v. European American Bank*, *supra* at127.  (class treatment under Section 216(b) not defeated because "the plaintiffs performed a variety of jobs in a number of departments at different locations").

3.11    Different job titles or positions do not preclude a finding that the Plaintiffs are similarly situated.  *See e.g., Trezvant v. Fidelity Employer Services Corp. et. al.,* 434 F.Supp. 2d 40,48 (D.C. Mass 2006), *citing, Baldozier v. Am. Family Mutual Ins.,* 375 F.Supp. 2d 1089, 1092-93 (D.Co. 2005).  The fact that Plaintiffs may work in different departments and different locations does not undermine the similarly situated requirement.   *Kauperman v. ICF International et. al.,* 2008 U.S. Dist. LEXIS 88605 (E.D. La. 2008).  In addition, the Plaintiffs need not show that their position is identical to the positions of other potential class members.  *Ritzer v. UBS Financial services*, 2008 U.S. Dist. LEXIS 71635 (D.N.J. 2008)(technical support associates who solve computer problems but who have varying job responsibilities are similarly situated).

3.12    In *Richards v. Computor Sciences Corporation*, 2004 U.S. Dist. LEXIS 19638, 9 Wage & Hour Cas.2d (BNA) 1825 (2004), the Defendant provided information technology services to companies around the world.  Clients of the company received technology support services geared toward the specific business needs of the individual client.  Customer Support Analysts answer the "help desk" and assisted the clients with their problem. The tasks that the Analysts perform  included setting up email accounts, changing passwords, resolving conflicts with computer programs, or helping clients navigate through a computer system crash or networking problem. The Plaintiff, a computer help desk analyst, moved to proceed as a collective action for violations of FLSA.  The Court noted that the Plaintiff's burden to show that she was similarly situated was not heavy and that

it could be met by making substantial allegations supported by affidavits. *Id., citing, Grayson v. K Mart Corp., supra* at 1096. The defendant claimed that the CSA's were not similarly situated as they served different clients and dealt with varying applications, components, industries and secrecy. The court rejected the argument. In doing so it stated:

> The arguments of CSC amount to little more than proof that every CSA uses a different tool to accomplish the same task. An appropriate analogy would be to a team of floor cleaners each assigned by a cleaning service to a different building. One building might have a carpet, another a tile floor and a third polished stone floors. Each floor cleaner would need a different skill set and tool set to accomplish his given task but the essential task remains the same. Just as the first cleaner would require a vacuum and the second a waxing machine, so could one CSA need to create email passwords and another be able to solve conflicts with various word processor programs. Yet the essential nature of the task-floor cleaning, or computer troubleshooting, remains the same. The testimony of the Plaintiff and the CSC managers makes plain that all CSAs spend their days resolving application and network problems for their clients. The nature of the clients served and the specific applications used by each CSA are irrelevant to the court's determination of whether Richards and other CSAs are similarly situated. Here, Plaintiffs have clearly satisfied their burden of showing that the potential Opt-In Plaintiffs "were together the victims of a single policy" by showing that Plaintiffs and the potential Opt-In Plaintiffs were similarly situated with respect to their job requirements and their pay provisions.

*Id.*

### (2)    Plaintiffs and the Potential Opt-In Plaintiffs Have the Same Job Requirements.

_____3.13___There is no significant difference between the job duties and responsibilities of the representative Plaintiffs and the potential class members that hold or held the job positions of "Customer Support Analysts," "Systems Support Specialists/Systems Analysts," "Software Support Specialists," Technical Support Specialists/Trainers," "Systems Engineers," "Client Liaisons," "Trainers," "Implementation Specialists," "Implementation Consultants," "Technical Sales Product Specialists," "Quality Assurance Analysts," from October 2005 to present. For purposes of collective action treatment the plaintiffs' job positions can be divided into five categories:

    a.    **Telephone and remote computer support:** "Customer Support Analysts,"

"Systems Support Specialists/Systems Analyst," "Software Support Specialists," Technical Support Specialists/Trainers."

b. **Computer hardware and software set up and maintenance**: "Systems Engineers"

c. **Implementation:** "Client Liaisons," "Implementation Specialists," "Implementation Consultants,"

d. **Sales support:** Technical Sales Product Specialists

e. **Quality assurance**: "Quality Assurance Analyst,"

3.14    The similarity of the duties and responsibilities of **:** "Customer Support Analysts," "Systems Support Specialists/Systems Analyst," "Software Support Specialists," Technical Support Specialists/Trainers" is confirmed by the declarations of, Patty Beall, (Exhibit "A"); Kevin Tullos, (Exhibit "B"); Jason Hunter Bonner (Exhibit "C"); Casey Brown, (Exhibit "D"), Diana Hudman (Exhibit "E"), and  Kim Huynh (Exhibit "F").  The declarations confirm that all of these job positions were exempt salaried positions, each declarant regularly worked more than 40 hours per week without being compensated for overtime at a rate of one and one-half times their regular hourly rate.  The declarations also confirm  that the job duties performed by these employees are nearly identical i.e. telephone and remote computer support for Defendants' customers regarding the use and operation of Defendants' software.

3.15    The similarity of the duties and responsibilities of "Systems Engineers," is confirmed by the declarations of Plaintiffs,  Matt Maxwell (Exhibit "G ") and David Gravley (Exhibit "H"). The declarations of Mr. Maxwell and Mr. Gravley confirm that their job positions were exempt salaried positions and that they regularly worked more than 40 hours per week without being compensated for overtime at a rate of one and one-half times their regular hourly rate.  The declarations also confirm  that their job duties are nearly identical i.e. computer hardware and

software set up and maintenance.

3.16    The similarity of the duties and responsibilities of "Client Liaisons" is confirmed by the declarations of    Talina McIlheny (Exhibit "I"); and Lisa White (Exhibit "J" ), and Kelly Hampton (Exhibit "K" ).

3.17    The similarity of the duties and responsibilities of "Trainers," "Implementation Specialists" and "Implementation Consultants," is confirmed by the declarations of Talina McIlheny, (Exhibit "I" ). Kelly Hampton, (Exhibit "K" ), Tony Dodd, (Exhibit "L" ),  Ilene Meyers, (Exhibit "M" ), Tom O'Haver, (Exhibit "N"), Joy Bibles, (Exhibit "O"),  Todd Davis  (Exhibit " P "), Molly Defreese, (Exhibit "Q") and Sandra Joy, (Exhibit "R"). The declarations confirm that all of these job positions were exempt salaried positions and each declarant regularly worked more than 40 hours per week without being compensated for overtime at a rate of one and one-half times their regular hourly rate.  The declarations also confirm  that the job duties performed by these employees are nearly identical i.e. working with customers during implementation of Defendants software, and assisting with conversion, setting up the software, and/or  training the customers' employees regarding the use and operation of Defendants' software.

3.18    The duties,  responsibilities and compensation of Technical Sales Product Specialists, is confirmed by the declaration of Don Locchi.  (Exhibit "S").

3.19    The duties,  responsibilities and compensation of "Quality Assurance Analyst," are confirmed by the declaration of Melissa Pastor. (Exhibit "T").  The similarity of the duties and responsibilities of "Quality Assurance Analysts,"  is confirmed by the job descriptions posted on Defendant, Tyler Technologies, Inc.'s website as shown in (Exhibit "U1 - U2").  Thus, there can be no question that the Software Quality Assurance Analysts perform the same functions at each different location.

**(3)** **Plaintiffs and the Potential Opt-In Plaintiffs were Subject to the Same Pay Provisions.**

_____3.20___Plaintiffs have also alleged that they along with potential Opt-In Plaintiffs, were all subject to the same illegal pay practice. Plaintiff's Amended Complaint ¶1.3; 3.17 5.5; 6.13; 7.3. Plaintiffs have alleged that all of the "Customer Support Analysts," "Systems Support Specialists/Systems Analyst" "Software Support Specialists" "Technical Support Specialists/Trainers" "Systems Engineers," "Client Liaisons," "Trainers," "Implementation Specialists," "Implementation Consultants," "Technical Sales Product Specialists," and "Quality Assurance Analysts," employed by Tyler Technologies, Inc. and/or EDP Enterprises, Inc. were improperly classified as exempt from the overtime provisions of the FLSA; that "Customer Support Analysts," "Systems Support Specialists/Systems Analyst" "Software Support Specialists" "Technical Support Specialists/Trainers" "Systems Engineers," "Client Liaisons," "Trainers," "Implementation Specialists," "Implementation Consultants," "Technical Sales Product Specialists," and "Quality Assurance Analysts," including Plaintiffs and the potential Opt-In Plaintiffs, were expected to, and did in fact, work in excess of 40 hours per week; but that neither Plaintiffs nor the potential Opt-In Plaintiffs were compensated for those hours. Plaintiffs' Amended Complaint ¶1.3; 3.17; 5.5; 6.13; 7.3. Plaintiffs have supported these allegations with their declarations and the declarations of the Opt-In Plaintiffs. (See Exhibits "A" through Exhibits "T")

3.21    Moreover, Plaintiffs have alleged that Tyler Technologies, Inc. and EDP Enterprises, Inc. administered its human resource decisions, including the decision to misclassify "Customer Support Analysts," "Systems Support Specialists/Systems Analyst" "Systems Engineers," "Client Liaisons," "Implementation Specialists," "Implementation Consultants," "Technical Sales Product Specialists," "Quality Assurance Analysts," centrally and irrespective of the different software

applications and or customers that the employee worked with. ¶ 3.17

_____3.22___Accordingly, Plaintiffs have provided "substantial allegations that the putative class

members were together the victims of a single decision, policy, or plan." *Mooney v. Aramco Services*

*Co. supra* at 1214, fn8.  In addition, although not required, Plaintiffs have provided evidence in

support of those substantial allegations. At this stage, no more is required to conditionally certify the

class and authorize nation-wide notice to potential class members.

## IV. RELIEF SOUGHT

4.1     Plaintiffs ask that the court approve the attached proposed Order recognizing this

proceeding as a collective action pursuant to Section 216(b) of the FLSA.

4.2     To facilitate the Notice process and protect and preserve the rights of those who have

not yet opted in, Plaintiffs have attached a proposed Notice and proposed Consent Form to be

approved by the Court.  (See Exhibits "V" and "W").  Plaintiffs seek to notify a group of potential

plaintiffs described as follows:


**ALL CURRENT AND FORMER CUSTOMER SUPPORT ANALYSTS, SYSTEMS
SUPPORT SPECIALIST/SYSTEMS ANALYST, SOFTWARE SUPPORT SPECIALISTS,
TECHNICAL SUPPORT SPECIALIST/TRAINER, SYSTEMS ENGINEERS, CLIENT
LIAISONS, TRAINERS,  IMPLEMENTATION SPECIALISTS, IMPLEMENTATION
CONSULTANTS, TECHNICAL SALES PRODUCT SPECIALISTS, AND QUALITY
ASSURANCE ANALYSTS OR SIMILAR JOB POSITIONS, WHO WERE CLASSIFIED AS
EXEMPT WHILE EMPLOYED BY TYLER TECHNOLOGIES INC. ,  EDP
ENTERPRISES, INC. AND/OR A PREDECESSOR COMPANY OF TYLER
TECHNOLOGIES, INC. DURING THE TIME PERIOD FROM OCTOBER 31, 2005, TO
PRESENT AND WERE NOT PAID OVERTIME COMPENSATION FOR TIME WORKED
IN EXCESS OF 40 HOURS PER WEEK.[6]**

---

[6] Although the parties agreed to proceed through the conditional certification process without discovery, the
widely varying job titles used by Defendant, Tyler Technologies, Inc. for similar jobs warrants an effort to determine
the  job titles that include job duties that are similar to the Plaintiffs herein.  Consequently, in an effort to more
closely define the class of potential plaintiffs,  Plaintiffs' counsel has conferred with Defense counsel regarding
limited discovery of  similar job titles used by Tyler Technologies, Inc., and the names of any predecessor companies
purchased by Tyler Technologies, Inc. after October 31, 2005, whose employees may be effected by this collective
action.

4.3     Plaintiffs do not have access to a list of all of Defendants' employees that performed duties similar to those performed by  "Customer Support Analysts,"  "Systems Support Specialists/Systems Analyst," "Software Support Specialists," Technical Support Specialist/Trainer," "Systems Engineers,"  "Client Liaisons,""Trainers," "Implementation Specialists," "Implementation Consultants," "Technical Sales Product Specialists," "Quality Assurance Analysts," and who were classified as exempt by Defendants, and thus denied overtime pay for hours worked over 40 per week  from October 31, 2005 to the present.   Therefore, Plaintiffs request that the Court  order the Defendants to produce a computer-readable data file containing the names, job titles, addresses, e-mail address (if available), Social Security numbers and home telephone and cell phone telephone numbers of such similarly situated current and former employees so that Court-ordered notice may be implemented.

4.4     Requiring defendant to provide this information will carry out the purposes of §216(b) and help ensure that each affected individual will be located and provided with appropriate notice so each can determine whether he/she wants to "opt-in" as a plaintiff in this collective action.

4.5     All of the information requested above is necessary to locate the similarly situated affected individuals.  As mentioned earlier, accurate and timely notice is critical to the preservation of employees' legal rights in FLSA collective actions and will be maintained in accordance with the Court's standard protective order.

4.6     Plaintiffs also request that the Court authorize Plaintiffs' counsel to maintain an internet website for the purpose of informing similarly situated persons of their right to opt-in to this litigation and the progress of same, by providing a copy of all of the Court's orders, pleadings and exhibits, pertinent provisions of the Fair Labor Standards Act, Consent Forms, information concerning filing deadlines and contact information for all Plaintiffs' attorneys.

4.7     That the Court order Defendants to post the attached Notice, along with the consent forms, in each of Defendants' offices where Covered Employees are employed.

4.8     Plaintiffs request that all potential plaintiffs be given ninety (90) days from the date of mailing of the notices to "opt-in" to the collective action.

WHEREFORE, Plaintiffs pray that the Court grant their Motion for Conditional Certification and Notice to Potential Class Members and for such other and further relief to which they may be justly entitled.

Respectfully submitted,

SLOAN, BAGLEY, HATCHER & PERRY
LAW FIRM

/s/ Laureen F. Bagley
John D. Sloan, Jr.
State Bar No. 18505100
jsloan@textrialfirm.com
Laureen F. Bagley
State Bar No. 24010522
lbagley@textrialfirm.com
101 East Whaley Street
P.O. Drawer 2909
Longview, Texas 75606
(903) 757-7000
(903) 757-7574 (Fax)

Alexander R. Wheeler
awheeler@rrexparris.com
Jason Paul Fowler
jfowler@rrexparris.com
R. REX PARRIS LAW FIRM
42220 10TH Street West, Suite 109
Lancaster, CA 93534-3428
(661) 949-2595
(661) 949-7524 (Fax)

John P. Zelbst
zelbst@zelbst.com
Chandra L. Holmes Ray
chandra@zelbst.com
ZELBST, HOLMES & BUTLER
P.O. Box 365
Lawton, OK 73502-0365
(580) 248-4844
(580) 248-6916 (Fax)

James E. Wren
Texas State Bar No. 22018200
James_Wren@baylor.edu
One Bear Place #97288
Waco, Texas 76798-7288
(254) 710-7670
(254) 710-2817 (Fax)

**ATTORNEYS FOR PLAINTIFFS**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this the 6th day April, 2009, a true and correct copy of this document was sent via electronic mail to the following:

Paulo B. McKeeby
Joe S. Allen
Sharon Fast Fulgham
*Morgan, Lewis & Bockius LLP*
1717 Main Street, Suite 3200
Dallas, TX 75201-7347

Deron R. Dacus
*Ramey & Flock P.C.*
100 East Ferguson, Suite 500
Tyler, TX 75702

/s/ Laureen F. Bagley
Laureen F. Bagley

## <u>CERTIFICATE OF CONFERENCE</u>

I certify that on April 6, 2009,  I conferred with Defense Counsel, Deron R. Dacus.  Counsel has complied with the meet and confer requirement in Local Rule CV-7(h) and Defense counsel is Unopposed to Plaintiff's Motion for Leave to File Plaintiffs' First Amended Collective Action Complaint.  The personal conference required by this rule was conducted on April 6, 2009  via teleconference.

By: /s/ Laureen F. Bagley
LAUREEN F. BAGLEY