**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| **PATTY BEALL, MATTHEW MAXWELL,** | § | |
| **DAVID GRAVELY, TALINA MCELHANY,** | § | |
| **KELLY HAMPTON, KEVIN TULLOS,** | § | |
| **CASEY BROWN, JASON BONNER,** | § | |
| **ANTHONY DODD, ILENE MEYERS,** | § | |
| **TOM O'HAVER, JOY BIBLES, DON** | § | |
| **LOCCHI AND MELISSA PASTOR ,** | § | |
| **Individually and on behalf of all others** | § | |
| **similarly situated;** | § | |
| | § | |
| **Plaintiffs,** | § | **2:08-cv-422 TJW** |
| | § | |
| **TYLER TECHNOLOGIES, INC. AND** | § | |
| **EDP ENTERPRISES, INC.** | § | |
| **Defendants.** | § | |

**PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR**
**CERTIFICATION OF COLLECTIVE ACTION**
**AND REQUEST FOR NOTICE TO POTENTIAL PLAINTIFFS**
**PURSUANT TO SECTION 216(b)**

TO THE HONORABLE COURT:

NOW COMES Plaintiffs' PATTY BEALL, MATTHEW MAXWELL, DAVID GRAVELY,

TALINA MCELHANY, KELLY HAMPTON, KEVIN TULLOS, CASEY BROWN, JASON

BONNER, ANTHONY DODD, ILENE MEYERS, TOM O'HAVER, JOY BIBLES, DON LOCCHI

and MELISSA PASTOR, Individually and on behalf of all others similarly situated, and files this

their Reply Memorandum in support of their Motion for Certification of Collective Action and

Request for Notice to Potential Plaintiffs Pursuant to Section 216(b).

## I. PRELIMINARY STATEMENT

Plaintiffs have met the lenient burden for conditional certification and notice because

Plaintiffs have come forward with substantial allegations and numerous declarations that establish there is "some factual nexus which binds the named plaintiffs and potential class members together as victims of a particular alleged [policy or practice].'"[1]

Defendants Response attempts to eliminate the two step inquiry adopted by this court and seeks to impose on Plaintiffs the more stringent burden of decertification through its arguments that differences in locations, job duties, and pay prevent a finding that the Plaintiffs and Putative Class members are similarly situated. These exact arguments were rejected by this court in *Allen v. McWane, supra* and numerous other decisions.[2]

Defendants Response offers little to refute the Plaintiffs' substantial allegations and declarations of 20 former employees regarding job duties and pay practices. Additionally, Plaintiffs are providing, as rebuttal evidence, the declaration Kelly Ainsworth,[3] the former Vice-President of Business and Operations for EDP Enterprises, Inc. and former Implementation Services Manager for North America for Tyler Technologies, which provides evidence that the companies acquired by Defendant, at least in the MUNIS division, did not operate autonomously and that all issues regarding the hiring of new employees and their compensation plan were handled through the corporate office in Falmouth, Maine. Plaintiffs have also attached as an Exhibit to this Reply, Tyler Technologies' Employee Handbook stating that its "purpose is to establish and maintain a uniform

---

[1] *Allen v. McWane, Inc.*, 2006 U.S. Dit. LEXIS 81543, 12-14 (E.D. Tex. Nov. 7 2006).

[2] See, *Ryan v. Staff Care, Inc.,* 497 F.Supp. 2d 820, 825-826 (N.D. Tex. 2007); *Richards v. Computer Scis. Corp.*, 2004 U.S. Dist. LEXIS 19638, 10-12 (D. Conn. Sept. 28, 2004); Holbrook v. Smith & Hawken, Ltd., 246 F.R.D. 103, 106 (D. Conn. 2007); *Gieseke v. First Horizon Home Loan Corp.*, 408 F. Supp. 2d 1164 (D. Kan. 2006); *Donohue v. Francis Services, Inc.,* 2004 WL 1406080 (E.D.La. June 22, 2004);Prater v. Commerce Equities Mgmt. Co. 2007 U.S. Dist. LEXIS 85338 (S.D. Tex. 2007).

[3] Exh. X

system for managing personnel matters; to comply with applicable employment laws.....'[4]  Plaintiffs evidence, together with  Defendants admission that it classifies all of the plaintiffs the putative class members as exempt is more than sufficient evidence to support certification and class notice in this case. [5]

1.      **Plaintiffs Have Met their Burden of Identifying a Common Policy / Widespread Unlawful Plan**.

Defendants argue that Plaintiffs have failed to put forth evidence of a common policy or widespread plan because Tyler did not have any single, corporate compensation policy, but rather just accepted the employees classifications of the individual companies it purchased.  In support of this "willful blindness" defense, Tyler cites *Sheffield v. Orious Corp*.211 F.R.D. 411, 413 (D.Or. 2002) and *Reed v. Mobile County School System*, 246 F.Supp. 2d 1227, 1230 (S.D. Ala. 2003).[6]

Neither case, however, stands for the broad proposition that knowledge of FLSA violations by the acquiring company is not enough to satisfy the common plan or scheme requirement.[7]  In *Sheffield,* the plaintiffs attempted to hold the defendant liable for wage and hour violations committed by a company defendant purchased because it was aware of those violations.  *Id.* at 413. *Sheffield* did not concern a situation where, the illegal FLSA practices are knowingly continued by the defendant after it purchases a smaller company, which Plaintiffs have shown Tyler did in this case.[8]

---

[4]Exh. Y-1 pg. 9

[5]Defendants' Response Pg 3, 8.

[6]Defendants' Response Pg  8.

[7] Defendant's Res. Pg. 9.

[8]  Moreover, the court in *Sheffield*  specifically stated that the crux of its opinion was the differences in individualized claims for liability and damages, and that certain employees had deductions taken from their

***Plaintiffs' Reply***                                                                                                            ***Page* 3**

*Reed* does not support the Defendants' argument.[9]   Rather, the court denied certification in *Reed* because of a complete lack of evidence of similarity between plaintiff and the potential collective action members.   *Reed,* 246 F.Supp.2d at 1232.   In the instant case, Plaintiffs have set forth substantial evidence that all Tyler employees were subject to the same compensation and classification policies.[10]   Indeed, and contrary to Tyler's argument, compensation and classification policies were *not* controlled by individual supervisors or individual companies.[11]   Rather, Tyler designed and implemented uniform  employee compensation and classification policies that were applied company wide. [12]   This common plan and policy evidence *alone* justifies conditional certification of this collective action.

a.    **Plaintiffs were Victims of a Common Decision, Policy or Plan.**

Defendants argue that the classification of a group of employees as exempt or non-exempt is not a "decision, policy or plan," citing *Trinh v. JP Morgan Chase & Co. No.* 07-cv-1666 W(WMC), 2008 WL 1860161, at *4 fn2 (S.D. Cal. Apr. 22, 2008) and *Morisky v. Pub. Serv. Elec. & Gas Co.* 111 F.Supp. 2d 493,498 (D.N.J. Aug. 15, 2000).   Once again,  Defendants present only part of the courts' analysis, and  left out the primary  basis of the courts' decisions, which was the plaintiffs' total failure to present sufficient evidence that the putative class members were similarly

---

paychecks while others did not. This is not an issue in the case at hand.

[9]Defendant's Res. Pg. 9.

[10]*See* Tyler Employee Handbook p. 4.

[11]See Declaration of Kelly Ainsworth Exhibit "X."

[12]*See* Tyler Employee Handbook p. 4; *see also* Declaration of Kelly Ainsworth Exhibit "X."

situated.[13]   The defendant in the *Dreyer* case also relied on the *Trinh* case to support an identical

argument, which the Court rejected :

> The court recognizes that many courts have viewed a single decision, policy, or plan as necessary for employees to be similarly situated. It respectfully disagrees. While the presence of a single decision, policy, or plan is often good evidence that employees are similarly situated, it should not be a requirement. If it were, then subgroups of employees who share the same duties would be denied collective action treatment as long as their employer makes decisions, policies, and plans for only the larger groups of which they are a part. The remedial purpose of the FLSA's collective action mechanism should not be so easily evaded. As long as plaintiffs are able to show that other employees are "similarly situated," the lack of a common decision, policy, or plan should not be fatal.[14]

> **b.    The Collective Action Members are Similarly Situated with respect to Tyler's Uniform Pay Policies.**

Defendants attempt to manufacture "individual issues" by pointing out that some collective

action members receive bonuses while others do not.[15]   Defendants' argument would essentially

render any collective action impossible where the potential class members received different wages.

Defendants cite *Allen, supra,* in support of their argument.   However, *Allen*'s holding that  "[t]he

employees have similar pay structure because they were all paid hourly" actually supports the

---

[13]The court in *Trinh* found, "At most, Plaintiffs' affidavits establish a few similarities in training and compensating rookie sub-prime loan officers in the singular Southern California market. Plaintiffs provide no real evidence, beyond their own speculative beliefs, suggesting that all JP Morgan loan officers across the country, regardless of location or experience, receive the same compensation and are required to work in the same manner. Although Plaintiffs' burden is lenient, the Court nonetheless finds that Plaintiffs have failed to provide the modest factual showing that they and the broad class they wish to represent are similarly situated with respect to job requirements and pay provisions."  Id. at 10.

In *Morisky* the court held, "Plaintiffs have made no showing that the job responsibilities of the named plaintiffs are the same or similar to those of the remaining members of the proposed class, or that the opt-in plaintiffs could properly be classified as non-exempt employees. In fact, plaintiffs do not even discuss the job responsibilities of the opt-in plaintiffs. Instead, plaintiffs reference an extremely broad "general connection" all plaintiffs have to the production of electricity." Id. at 498.

[14]*Dreyer v. Baker Hughes Oilfield Operations, Inc.,* 2008 U. S. Dist. LEXIS 101297, 5-11 (S.D. Tex. Dec. 11, 2008).

[15]Defendants' Response Pg. 12.

*Plaintiffs' Reply*                                                                                                          *Page*  **5**

Plaintiffs' contentions herein.[16]  The only similar pay practice that is relevant to this motion is

Tyler's policy and practice of misclassifying and failing to pay the Plaintiffs and putative collective

action members overtime wages for all hours over 40 worked in a week.  Plaintiffs have put forth

substantial allegations and evidence that they and the potential collective action members were not

compensated at an overtime rate for all hours worked in excess of 40 in a week.[17]

> ## 2.   Differences Among the Potential Plaintiffs' Job Responsibilities do not Weigh Against Certifying this Collective Action.

The purposes of section 216(b) are not defeated by the mere assertion of an unsubstantiated

exemption defense.   Defendants'  Response reveals, for the first time,  its contention that the

"administrative" or "computer professional exemptions"  "*may*" apply to some or all of the putative

collective action members.[18]   Based on this contention, Defendants argue that the determination of

whether these exemptions apply to the potential collective action members is a fact-intensive inquiry

not in keeping with the benefits of judicial economy.

Defendants' attempt to require Plaintiffs to disprove possible exemptions at the notice stage

has been flatly rejected by the U.S. District Court for the Southern District of Texas in the *Foraker*

and *Dreyer* cases. The court in *Dreyer* specifically held that "[t]his argument fails because

exemptions are merits-based defenses to an FLSA claim. See, e.g., *Foraker v. Highpoint Sw.,* No H-

06-1856, 2006 U.S. Dist. LEXIS 63951, 2006 WL 2585047, at *4 n.16 (S.D. Tex. Sept. 7, 2006).

---

[16] See also *Gieseke v. First Horizon Home Loan Corp.*, 408 F. Supp. 2d 1164 (D. Kan. 2006) (loan originators were similarly situated notwithstanding alleged differences in compensation plans); *Moss v. Crawford & Co.*, 201 F.R.D. 398 (W. D. Pa., 2000)( variations in the plaintiffs' duties, job locations and hourly billing rates did not prohibit finding of similarly situated); *Bradford v. Bed Bath & Beyond,* 184 F.Supp.2d 1342, 1351 (N.D.Ga.2002)( differing annual salaries did not create individual issues prohibiting certification.).

[17] Exhibits A-T, Plaintiffs Motion For Certification

[18] Defendants' Response Pg. 13.

Accordingly, the possible applicability of one or more exemption defenses cannot defeat conditional certification."[19]

The court in *White v. MPW Industrial Servs., Inc.,* 236 F.R.D. 363, 373 (E.D. Tenn. 2006) was also unpersuaded by this same argument:

> "[t]he notice stage of analysis is centered on whether the plaintiff has demonstrated, through allegations and factual support, that he and the putative class members were similarly situated -- that is, victims of a common policy or plan of the defendant. Defendants have the burden of proving any exemptions from the FLSA. The Court believes that, at this stage, a defendant's assertion of the potential applicability of an exemption should not be permitted to overcome an otherwise adequate threshold showing by the plaintiff. [20]

The predominant view is that disparate factual and employment settings of the individual plaintiffs and the applicability of the exemptions should be  reserved for a later stage in the proceedings, after the parties have conducted discovery and can present to the Court a more detailed factual record.[21]

**3.      Tyler Implements Uniform Policies and Procedures Throughout all of its Division.**

Although Defendants contend  that there are 18 different divisions within the company,[22] the declaration of Mr. Lynn Moore, Tyler's general counsel, makes it clear that there are only four  core software application groups:1) Financial Managment (Large Cities) and Education 2) City Solutions;

---

[19] *Dreyer,* 2008 U. S. Dist. LEXIS 101297 at *9.

[20] *Id*. at 373.

[21] See *Neary v. Metro. Prop. & Cas. Ins. Co.*, 517 F.Supp. 2d 606, 620 (D. Conn. 2007); *Austin v. CUNA Mut. Ins. Soc.*, 232 F.R.D. 601, 606 (W.D. Wis. 2006); *Goldman v. RadioShack Corp*., 2003 U.S. Dist. LEXIS 7611, 2003 WL 21250571, at *8 (E.D. Pa. 2003).

[22]Defendants' Response Pg. 14.

*Plaintiffs' Reply*                                                                                                      *Page* **7**

3) Courts and Justice; 4) Property Appraisal and Tax.[23]

In an effort to manufacture diversity where none otherwise exists, Defendants argue that the companies within these four core groups operate differently and autonomously.   However, the declaration of Mr. Kelly Ainsworth, former vice-president of Education Services for North America, and Tyler's own Employee Handbook, paint a different picture regarding Tyler Technologies' corporate structure.[24]   Specifically, the companies that Tyler acquired over the last eleven years ***do not*** operate as "individual distinct companies."  To the contrary the acquired companies, at least in the MUNIS division, the largest of the Tyler groups, are  managed under the MUNIS division and all human resource issues including hiring and salaries are handled through the corporate office in Falmouth Maine. [25]

> a.   **Plaintiffs have Presented Substantial Allegations and Supporting Declarations to Warrant Conditional Certification and Notice.**

Defendants' attempts to show dissimilarity between the job duties of the representative Plaintiffs and the potential collective action members are insignificant distinctions that do not prohibit a finding that the plaintiffs have met their lenient burden for certification.   Although Defendants point to differences between the job duties of the representative Plaintiffs, each Plaintiff is an individual representative for his or her respective job position and all similarly-situated potential collective action members.  As such, any difference between representative plaintiffs at most, merely creates a separate job classification for purposes of certification.  The only differences that might even arguable be relevant for purposes of this motion are any substantial differences

[23]Defendant's Response,  Exhibit A, Moore Dec. ¶ 7.

[24]Exhibit "X" Ainsworth Dec. and Exhibit "Y-1" Brown Dec.

[25] Exhibit "X" See Declaration of Kelly Ainsworth

between the representative Plaintiffs and putative class members, which Defendants have failed to demonstrate exist.

      (1)      **Tyler's "Courts and Justice"Group**

      The declaration of Mitchell Spence, fails to establish any meaningful differences among the job duties of the representative Plaintiffs and similar positions within Tyler's Courts and Justice Group.[26] Although Mr. Spence asserts that some of the customer support employees also performed implementation services, this is not unlike the duties of the representative Plaintiffs that likewise performed implementation and customer support functions.[27] Additionally, without more detail concerning the amount of time that the employees spend performing each of those job duties, a true comparison is impossible.

      Mr. Spence's declaration also raises the insignificant "distinction"that support specialists' job duties varied depending on their years of experience –in other words, that the specialists with more experience had to answer the more complex customer inquiries. Finally, Mr. Spence noted that the Senior Support Specialists' duties included training classes and overseeing the work of other employees and the Support Specialists within Appraisal and Tax Group perform Quality Assurance work. Again he provides no details to support any true distinctions.

      The only job differences Mr. Spence offered with regard to Implementation Consultants is that "some employees travel out of state to perform implementations" and "some implementation projects are longer and more complex than others." These are not differences in job duties relevant to the propriety of conditional certification, and are no different than those duties described by

---

[26]Defendants' Response Exhibit B.

[27] Plaintiffs' Mot. for Cert. Exh. N, ¶ 2; Exh. R ¶ 3;

several Plaintiffs that held Implementation Consultant positions with MUNIS[28]

### (2)     Tyler's "Large Financial or MUNIS"Group

The declaration of Chris Hepburn, the Vice President of Tyler 's largest division, MUNIS offers little to substantiate the Defendants' positions.[29] He explains that Implementation Consultants perform implementation within their particular area of expertise, ie tax, utility billing, etc.,[30] not unlike the representative plaintiffs;[31] and that job duties vary depending on levels of experience.[32] i.e. the more senior Implementation Consultants are involved more heavily with interviewing MUNIS Customer employees and analyzing customer information systems and processes;[33] and finally, some Implementation Consultants have experience with rules and processes of certain states and are more qualified to perform Implementations in that state.[34] These can only be considered distinctions without a difference.

With regard to support services he describes the job duties of Support Techs as primarily trouble shooting over the telephone, and that Support Analysts tackle more complex issues that may require networking into the customers database to resolve the issue.[35]  These job duties are identical

---

[28] Plaintiff's Mot. For Cert. Exh. L ¶¶ 2; Exh. M ¶ 3, 5.

[29] Defendants' Response Exh. C.

[30] Defendants' Response Exh. C.¶ 6

[31] Plaintiffs' Mot. For Cert. Exh. I ¶ 3;  Exh. K ¶1; Exh. O ¶ 3.

[32] Defendants' Response Exh. C ¶ 6

[33] Defendants' Response Exh. C ¶ 6

[34] Defendants' Response Exh. C ¶ 7

[35] Defendants' Response Exh. C ¶ 6

to Plaintiffs Beall, Tullos, Bonner and Brown. [36]

        **(3)**        **Tyler's "INCODE" Software**

The declaration of Dane Womble,  fails to establish any substantial differences between

Plaintiffs' job duties and the putative class members that work with INCODE software.[37]  According

to Mr. Womble, Implementation Consultant job duties differ from office to office: In Ames, Iowa

the duties are generalized and implementation consultants "spend a significant amount of their time

at the office performing 1)customer support functions/troubleshooting issues; 2) reviewing client

data; 3) working with conversion developers: 4) quality assurance testing; 5) documentation writing

for particular projects to assist clients.[38]  There is no substantial difference between these job duties

and those that Messrs. McElheny and Hampton described as taking place at Tyler's Longview

office.[39]

        Mr. Womble, differentiates the Implementation Consultants in Lubbock because they do not

performed all of the above duties, however he does not explain what duties they do perform.[40]  He

further explains that the Ann Arbor, Michigan location does not have implementation consultants'

instead the traditional implementation functions are performed by Support Specialists who also

perform telephone support work,  much like Plaintiffs Bonner and Brown.[41]

        With regard to support services, Mr. Womble explained that client services representatives

---

[36] Plaintiffs' Motion for Cert. Exh. A, B, C, & D

[37] Defendants' Response Exh. D.

[38]Defendants' Response Exh. D ¶ 6.

[39]  Plaintiffs' Motion for Cert. Exh. I ¶ 4; Exh. K ¶ 3.

[40]Defendants' Response Exh. D ¶ 6.

[41] Plaintiffs' Motion for Cert. Exh. C ¶ 3; Exh. D ¶ 3.

that work with INCODE are divided into three categories: Front Line Support, that deal directly with customers on an on-going and regular basis; Advisors, that help front line support and direct their work; and Team Leaders, that are responsible for the entire team, perform job evaluations, conduct interviews, are involved in hiring, and otherwise have input in personnel decisions.[42]  With the exception of Team Leaders, the job duties of the client services representatives for INCODE are *identical* to those of Plaintiff Patty Beall. [43]

### (4)    Tyler's "EDEN" Software

The declaration of Bruce Volkens, offers much in support of Plaintiffs' claims that the potential collective action members in the MUNIS/Eden division are similarly situated to the Plaintiffs.[44]

Mr. Volkens describes the job duties of implementers as "work[ing] at customer sites [performing] consulting, training, process review and going live."  He further explained that prior to 2009, Implementers were divided into three categories 1) Staff Consultants - had expertise on limited software modules; 2) Senior Consultants - had expertise on extensive software modules; 3) Principal Consultants - had project and client management skills & expertise on extensive software. Again, simply distinguishing job positions based on level of skill is not a difference in job duties, moreover, the duties described by Volkens are the same as those performed by the Plaintiffs.[45]

Mr. Volkens further describes the primary duties of the customer support staff as: 1) taking

---

[42] Defendants' Response Exh. D ¶ 9.

[43] Plaintiffs' Motion for Cert. Exh. A ¶ 3.

[44] Defendants' Response Exh.  ¶ 9.

[45] Plaintiffs' Mot. For Cert. Exh.L ¶ 3;  Exh. O ¶3.

*Plaintiffs' Reply*                                                                    *Page* 12

customer calls, 2) resolving customer questions, 3) reporting software defects, 4) escalating issues when necessary, 5) cleaning up customer data base. These job duties are identical to the job duties of Plaintiff Patty Beall.[46]

### (5)   Tyler's Versa Trans Software

Ms. Fallon's declaration confirms that the job duties of all four Technical Support positions are nearly identical, the only difference being the levels of experience and expertise. [47]   According to Ms. Fallon, Training Specialists perform the same job duties performed by the representative Plaintiffs with the job title of Implementation Consultant/Specialist, i.e. on-line and on-site training, downloading student data, delivering data to client.[48]   With the exception of the Training Director, the only differences between the four Training positions described by Ms. Fallon is experience level and whether the trainer works remotely or on-site.[49]   Fallon offers no insight into the job duties of Quality Assurance, and confirms the similarity of the job duties of the Sales Engineer/Consultant II and Plaintiff Don Locchi.[50]

### 4.   Plaintiffs' Notice is Appropriate and Accurate

While Plaintiffs believe that their notice is appropriate and accurate, they are willing to meet and confer with Defendants on many of the issues they raise to develop a mutually-agreeable notice similar to that which was approved by this Court in *Allen v. McWane, Inc., supra.*   However,

---

[46]Plaintiffs' Mot. For Cert. Exh. A ¶ 3.

[47] All Technical Support employees handle customer telephone inquiries, with more experienced support employees handling more complex issues.  Defendants' Response Exh. F ¶ 5.

[48] Plaintiffs' Mot. For Cert. Exh. I ¶ 3;  Exh. K ¶3.

[49] Defendants' Response Exh. F ¶ 7.

[50]  Plaintiffs' Mot. For Cert. Exh. S ¶ 3.

Plaintiffs will not consider placing a statement in the notice that the potential opt-in plaintiffs could be subject to liability for attorneys' fees or potential counter claims.  Contrary to Defendants' suggestion, neither *Hoffman v. Securitas Sec. Servs.,* nor *Garcia v. Elite Labor Serv. Ltd.* even suggest that language regarding potential liability for a defendant's attorneys' fees is appropriate in a Notice. Furthermore, Defendants have failed to cite any case holding that attorney's fees are even recoverable against opt-in Plaintiffs in an FLSA action.  It appears that Defendants' primary reason for advocating the attorney fee language is to discourage potential opt-ins from asserting there legal rights.

For the foregoing reasons, Plaintiffs respectfully request that the court grant the relief requested in Plaintiffs Motion For Certification of Collective Action and Request for Notice to Potential Plaintiffs Pursuant to Section 216(b).

Respectfully submitted,

SLOAN, BAGLEY, HATCHER & PERRY LAW FIRM

/s/ Laureen F. Bagley
John D. Sloan, Jr.
State Bar No. 18505100
jsloan@textrialfirm.com
Laureen F. Bagley
State Bar No. 24010522
lbagley@textrialfirm.com
101 East Whaley Street
P.O. Drawer 2909
Longview, Texas 75606
(903) 757-7000
(903) 757-7574 (Fax)

Alexander R. Wheeler
awheeler@rrexparris.com
Jason Paul Fowler
jfowler@rrexparris.com
R. REX PARRIS LAW FIRM
42220 10TH Street West, Suite 109
Lancaster, CA 93534-3428
(661) 949-2595
(661) 949-7524 (Fax)

John P. Zelbst
zelbst@zelbst.com
Chandra L. Holmes Ray
chandra@zelbst.com
ZELBST, HOLMES & BUTLER
P.O. Box 365
Lawton, OK 73502-0365
(580) 248-4844
(580) 248-6916 (Fax)

James E. Wren
Texas State Bar No. 22018200
James_Wren@baylor.edu
One Bear Place #97288
Waco, Texas 76798-7288
(254) 710-7670
(254) 710-2817 (Fax)

**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I hereby certify that on this the 29th day May, 2009, a true and correct copy of this document was sent via electronic mail to the following:

Paulo B. McKeeby
Joe S. Allen
Sharon Fast Fulgham
*Morgan, Lewis & Bockius LLP*
1717 Main Street, Suite 3200
Dallas, TX 75201-7347

Deron R. Dacus

*Ramey & Flock P.C.*
100 East Ferguson, Suite 500
Tyler, TX 75702

/s/ Laureen F. Bagley
Laureen F. Bagley


## CERTIFICATE OF CONFERENCE

I certify that on May 29, 2009 I conferred with Defense Counsel, Paulo McKeeby, regarding Plaintiff's Reply to Defendant's Response to Plaintiffs Motion for Certification of Collective Action and Request for Notice to Potential Plaintiffs Pursuant to Section 216(b). Defense counsel advised that Defendants are opposed to the Motion.

By: /s/ Laureen F. Bagley
LAUREEN F. BAGLEY