JOY M. BIBLES McLEOD; May 18, 2010

1

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

---

PATTY BEALL, MATTHEW MAXWELL,  )
TALINA McELHANY and KELLY      )
HAMPTON, individually and on   )
behalf of all other similarly  )
situated,                      ) 2:08-cv-422 TJW
                               )
    Plaintiff(s),              )
                               )
vs.                            )
                               )
TYLER TECHNOLOGIES, INC., and  )
EDP ENTERPRISES, INC.,         )
                               )
    Defendant(s).              )

---

DEPOSITION UPON ORAL EXAMINATION OF
JOY M. BIBLES McLEOD

---

1:35 P.M.

MAY 18, 2010

520 PIKE STREET, 12TH FLOOR

SEATTLE, WASHINGTON

REPORTED BY: MARY L. GREEN, CCR 2981

Yamaguchi Obien Mangio, LLC Reporting & Video * www.yomreporting.com
520 Pike Street, Suite 1320, Seattle, WA 98101 * (206) 622-6875 * 1 (800) 831-6973

EXHIBIT 0012

1  Q. And then you mentioned Darren Dundis.
2  A. Yes.
3  Q. What was his group?
4  A. His group worked with conversions if I recall,
5  and although I interfaced with some of those people, he
6  didn't train me. I didn't do anything with those
7  people.
8  Q. Do you recall anything from your interview
9  with him wherein you might have discussed the position
10 that you were taking in particular?
11 A. If there was a problem in conversion, his
12 group was the people that I contacted. That's what he
13 told me that they worked with conversions. If there's
14 a problem in a conversion, his group was the people
15 that were called.
16 Q. When you say conversion, as I understand it --
17 and tell me if I'm way off base -- they took the
18 customer or client's data and converted it from their
19 old system into the Tyler software.
20 A. That's correct.
21 Q. And you didn't work in that conversion group
22 itself?
23 A. No. But I still did have to deal with them
24 sometimes in that when there was a technical issue even
25 with the auxiliary modules, still their group were

JOY M. BIBLES McLEOD; May 18, 2010

23

people that I sometimes had to deal with, because they were technical support.

Q. So you went in and you interviewed with the five different people that we have just mentioned. Did you have any follow-up telephone or in-person interviews with anyone at Tyler Technologies?

A. No, Ma'am.

Q. How did you --

A. Oh, Bruce Volkens was another person I met. He was the VP.

Q. What do you recall from your discussion with Mr. Volkens?

A. Another person telling me what a great place it was to work, but very distant.

Q. What do you mean by distant?

A. He just -- he was -- he was executive management, just very, very much -- it's a great place to work, nice to meet you, you know, executive management meeting a prospective employee and just very, very, very friendly but got important things to do. He didn't really give me any information. Very --

Q. Didn't spend much time with him?

A. Yeah. I mean, he met me more because executive management, I think, needed to meet me, but he didn't give me any information.

JOY M. BIBLES McLEOD; May 18, 2010

90

1   Q.  Can you tell me where that is?
2   A.  It's implementation consultant continued.
3   Didn't participate in the user conference.
4   Q.  I see.  So where it says participate in the
5   annual user conference, you didn't actually --
6   A.  I didn't do that.  Where it says become
7   competent in other disciplines, generic business
8   process review, project management, web application
9   deployment, crystal report writer, didn't do that.
10  Q.  Anything --
11  A.  Achieving certification of multiple modules,
12  didn't do that.  Pursue diversity that was not
13  technical specification, those weren't things that were
14  done.  Prepare appropriate training materials as new
15  products are developed, didn't have anything to do with
16  writing training documentation.  (Reviewing).  So far
17  that's all I see that jumped out to me.
18  Q.  And you've read through the entire document
19  that we've marked Deposition Exhibit 12, correct?
20  A.  As fast as I can and process it with the time
21  that I had, yeah.
22  Q.  We haven't tried to hurry you.  We've given
23  you all the time you need.
24  A.  (Reviewing).
25              MS. PERLIONI:  Let the record reflect

1  we're again sitting here as Ms. Bibles goes back
2  through the job description marked as Deposition
3  Exhibit 12.
4      A.  I didn't work with the client to develop
5  procedures, documentation, and office systems to
6  facilitate software installation.  I never did that.
7      Q.  (BY MS. PERLIONI) Anything else?
8      A.  (Reviewing).  And I didn't document client
9  requirements.
10         MS. BAGLEY:  Where is that?
11         THE WITNESS:  Right here.
12     A.  Thoroughly identify and document client
13 requirements to a level of detail required to design
14 configure, I didn't do that.
15     Q.  (BY MS. PERLIONI) Anything else on Deposition
16 Exhibit 12?
17     A.  If I see something, I'll let you know as we
18 go.  I don't see anything now.
19     Q.  I'd like to go back to what we marked
20 Deposition Exhibit 11.  It's your declaration.
21     A.  Okay.
22     Q.  I'm looking specifically at paragraph 3.
23 "During the time I was an implementation consultant
24 with Tyler Technologies, Inc., my job duties consisted
25 primarily of walking clients through the implementation

JOY M. BIBLES McLEOD; May 18, 2010

```
                                                          134
 1    where I started.
 2         Q.   I think Ellen cleared that up, but I don't
 3    think I was listening close enough.
 4         A.   I think I was unclear when I said that.
 5         Q.   When you would complete an implementation,
 6    would you sometimes do follow-up telephone support with
 7    those clients if they had questions?
 8         A.   No, Ma'am.  I don't believe I did.  I think
 9    that when a client did call, because I was the face
10    that they knew, that our job was to pass them on to
11    support.
12         Q.   Thank you.  No further questions.
13              MS. PERLIONI:  No redirect or recross.
14              (Deposition concluded at 4:37 p.m.)
15              (Signature was reserved.)
16
17
18
19
20
21
22
23
24
25
```

JOY M. BIBLES McLEOD; May 18, 2010

```
                                                              135
 1                    CORRECTION & SIGNATURE PAGE

 2    RE:   BEALL v. TYLER TECHNOLOGIES;
            USDC; 2:08-cv-422 TJW;
 3          JOY M. BIBLES McLEOD
                            Reported By:   Mary L. Green
 4
         I, JOY M. BIBLES McLEOD, have read the within transcript
 5    taken May 18, 2010, and the same is true and accurate except
      for any changes and/or corrections, if any, as follows:
 6
      PAGE/LINE            CORRECTION             REASON
 7
      _____
 8
      _____
 9
      _____
10
      _____
11
      _____
12
      _____
13
      _____
14
      _____
15
      _____
16
      _____
17
      _____
18
      _____
19
      _____
20
      _____
21
            Signed at _____, Washington, on this
22
      date:_____.
23
            _____
24
25          JOY M. BIBLES McLEOD
```

JOY M. BIBLES McLEOD; May 18, 2010

136

## REPORTER'S CERTIFICATE

I, MARY L. GREEN, the undersigned Certified Court Reporter and Notary Public, do hereby certify:

That the sworn testimony and/or proceedings, a transcript of which is attached, was given before me at the time and place stated therein; that any and/or all witness(es) were duly sworn to testify to the truth; that the sworn testimony and/or proceedings were by me stenographically recorded and transcribed under my supervision, to the best of my ability; that the foregoing transcript contains a full, true, and accurate record of all the sworn testimony and/or proceedings given and occurring at the time and place stated in the transcript; that I am in no way related to any party to the matter, nor to any counsel, nor do I have any financial interest in the event of the cause.

WITNESS MY HAND, SEAL, AND DIGITAL SIGNATURE this 23rd day of May, 2010.

MARY L. GREEN
Certified Court Reporter, #2981
Notary Public in and for the State of Washington,
Residing in Snohomish County.  Commission expires 4-4-2013.
mgreen@yomreporting.com

Click Link to Verify Signature:

(Https://digitalid.verisign.com/services/client/index.html)