Freedom Court Reporting, Inc                                          1

```
IN THE UNITED STATES DISTRICT COURT
    FOR THE EASTERN DISTRICT OF TEXAS
              MARSHALL DIVISION
```

PATTY BEALL, MATTHEW           )
MAXWELL, DAVID GRAVLEY,        )
TALINA MCELHANY, KELLY         )
HAMPTON, KEVIN TULLOS,         )
CASEY BROWN, JASON BONNER,     )
ANTHONY DODD, ILENE            )
MEYERS, TOM O'HAVER, JOY       )
BIBLES, DON LOCCHI AND         )
MELISSA PASTOR,                )
Individually and on behalf     )
of all others similarly        )
situated,                      ) CIVIL ACTION
                               )
            PLAINTIFFS,        ) NO.: 2:08-CV-422 TJW
                               )
VS.                            )
                               )
                               )
TYLER TECHNOLOGIES, INC.       )
AND EDP ENTERPRISES, INC.,     )
                               )
            DEFENDANTS.        )

---

ORAL DEPOSITION OF

TONY DODD

APRIL 27, 2010

---

     ORAL DEPOSITION OF TONY DODD, produced as a witness at the instance of the DEFENDANTS, and duly sworn, was taken in the above-styled and numbered cause on the 27th day of April, 2010, from 9:10 a.m. to 11:42 a.m., before Elaine Fowler, CSR in and for the State of Texas, reported by machine shorthand, at the offices of Cathy Sosebee & Associates, 901 Mac Davis Lane, Lubbock, Texas, pursuant to the Federal Rules of Civil Procedure and the provisions stated on the record or attached hereto.

1                    TONY DODD,
2    having been first duly sworn, testified as follows:
3                    EXAMINATION
4    BY MR. MCKEEBY:
5         Q.   Please state your full name for the record.
6         A.   Anthony Dale Dodd.  I go by Tony.
7         Q.   Okay.  Mr. Dodd, we were introduced before the
8    deposition.  My name is Paulo McKeeby and I represent
9    Tyler Technologies.  Do you understand that?
10        A.   Yes, sir.
11        Q.   And you were previously employed with Tyler?
12        A.   Yes, sir.
13        Q.   And you worked out of their Eagle Division?
14        A.   That is correct.
15        Q.   Okay.  Do I understand your dates of
16   employment -- I got them from your personnel records --
17   that you started work in October of 2007?  Does that
18   sound right in terms of your hire date?
19        A.   That sounds right.  Correct.
20        Q.   And you left Tyler in May of 2008?
21        A.   Correct.
22        Q.   Have you ever given a deposition before today?
23        A.   No, sir.
24        Q.   Have you ever testified under oath before?
25        A.   Yes.

```
 1   program.
 2        Q.   This was done on-line as well, you also would
 3   print it out and get it signed.  What you are saying is
 4   that the other time was not printed out?
 5        A.   Right.  They have a web portal that you log
 6   into and it doesn't really facilitate printing; you just
 7   enter your hours.
 8        Q.   And this would be times when you would be at
 9   home?
10        A.   Correct.
11        Q.   What would you typically be doing at home?
12        A.   Configuration and what is called staging,
13   getting the software prepared for an implementation.
14        Q.   And so that time you would enter through the
15   web portal?
16        A.   Correct.  And in addition to that, we did
17   customer support from home a lot of times.  We were
18   flagging phone calls basically.  And those hours had to
19   be documented as well in the TNE system.
20        Q.   Okay.  And did you call it the TNE system?
21        A.   T-N-E, like the letter "N."
22        Q.   What does that stand for?
23        A.   I couldn't tell you.
24        Q.   That is the time entry system?
25        A.   I think that is time and expenses is what some
```

1   creative programmer came up with.
2       Q.  Okay.  You don't have any documents showing
3   your hours on dates when you were just entering your
4   time through the TNE system for a regular configuration,
5   staging or customer support work, I take it?
6       A.  No.  No, sir.
7       Q.  In terms of the percentage of your time while
8   you were employed at Tyler in a typical month, if we can
9   break it down that way.  And if we can't, we can talk
10  about a better way to do it.
11          What percentage of your time was spent at home
12  doing these functions that you outlined versus at an
13  actual customer site doing implementation or relating
14  activities?
15      A.  It would vary.  It would be between -- I mean,
16  it was certainly more than 50/50, but 75 percent may be
17  a little bit high.  I mean, I travelled at minimum two
18  weeks a month and fairly often three weeks a month.  So
19  somewhere around 50 and 75 percent I was on the road.
20  So 25 to 40 percent I was at home.
21      Q.  Okay.  Now, I notice that -- look at the first
22  page of this document.  And it says that -- it looks
23  like a signature amount of time was done doing
24  configuration work?
25      A.  Correct.

1    Q.  And the reason we know you were at the location
2    is because you -- for one reason is that it is written
3    on this form?
4    A.  It is on the form.
5    Q.  Exactly.
6    A.  Correct.
7    Q.  But you did some configuration work at your
8    home as well?
9    A.  Correct.
10   Q.  And what would it depend on as to whether or
11   not you could do the configuration work at home versus,
12   as in this example on the first page of Deposition
13   Exhibit 3 where you were doing it remotely at the site?
14   A.  Well, the work done at home was primarily in
15   preparation for an install of the software.  And then
16   occasionally we would have to log in and fix issues or
17   make updates or changes.  But the majority of the work
18   at home is in preparation for doing an implementation of
19   the software.
20       The configuration that you see on these sheets
21   is done generally with updates and things that were
22   suggested by the site that came up during training.
23       In other words, there is a pre -- there is an
24   assessment made beforehand, then we stage and configure
25   the software, we install the software, we go do the

```
 1        A.    Typically three to five.  Occasionally there
 2   would be 10 or 12 just depending on the location.
 3        Q.    And the size of the county?
 4        A.    And the size of the county.
 5        Q.    And would the people at the customer (sic) who
 6   were being trained -- you were the one doing the
 7   training, correct?
 8        A.    Correct.
 9        Q.    And how would you do the training?  Would you
10   do it based on a Power Point presentation where you are
11   giving a speech or did they all have laptops where you
12   were kind of walking them through different assets of
13   the software?
14        A.    Well, we provided handouts and we normally had
15   a training facility up with workstations for them to
16   work on.  And I more or less would walk around and I
17   would demonstrate one time and let them see and then
18   they would log in to their training workstation and
19   duplicate it.  So it was very hands-on training.
20        Q.    Was there a training schedule that --
21        A.    Yes.
22        Q.    -- you were required to adhere to?
23        A.    Yes, sir.  Well, there was a training schedule
24   provided for me to use as a guide, you know.  It varied
25   from site to site depending on if it was a small group
```

```
1   or a large group.  So I would take the number of
2   people ahead of time and then break the schedule down
3   so I could show them the various functions in the
4   software and accommodate everyone during a week.
5       Q.  Were you doing the training -- the same
6   training session for multiple people then?
7       A.  Yes.
8       Q.  Just based on their own schedules?
9       A.  Correct.
10      Q.  And did you use the guide to determine how long
11  to spend on particular aspects of the software or is
12  that something that you decided based on whatever
13  criteria?
14      A.  It was something that was kind of handed down
15  to me in what I learned from Nate about how much time
16  you spend on various things.  But, again, that -- it
17  depended on the end user.  You know, if the end user
18  gets it the first time, you don't need to have -- and
19  there is two of them in the class, we didn't necessarily
20  spend a whole hour working on it.  There was a little
21  bit of variance there.
22      Q.  Was there anything --- what were the handouts
23  that you would provide?
24      A.  They were documents provided by Tyler that were
25  instruction sheets on -- it essentially covered what we
```

1    this job.
2        Q.   And you had had that experience before you came
3    to the job?
4        A.   Yes, sir.
5        Q.   That was based on your work at Techno
6    Specialties?
7        A.   Yes, sir.
8        Q.   What about the other person, how long were you
9    in with training with him, the one that you can't
10   remember his name?
11       A.   He was in Carson County, and I want to say I
12   was with him for just a week.  One, maybe two weeks.
13   And I just don't remember his name, sorry.
14       Q.   Okay.  I want to ask you about that last
15   sentence of Paragraph 3 of your declaration because you
16   just mentioned it.  It says you performed computer
17   hardware installation.  Is that what you meant when you
18   said that one of the things you needed to know how to do
19   was to install the computers at the customer facility?
20            MS. HOLMES RAY:  Object to the form.
21       Q.   (BY MR. MCKEEBY)  Is that what you meant --
22       A.   That is what I meant, yes, sir.
23       Q.   What does it mean to install hardware?  What
24   are you actually doing in that function of your job?
25       A.   I am unboxing computers, setting up the

```
 1    Scott or Shauna.  Occasionally there would be some
 2    communication with the customer if we needed a form that
 3    we didn't have a clear copy of or something.  But for
 4    the most part, no.
 5         Q.  So when you come on to the customer's site for
 6    the first time during an installation -- and I don't
 7    know if Ector County is typical or not, but if it is not
 8    we can use a better example but I will use Ector County
 9    since we have been talking about it -- the site
10    assessment had been done by Nate Moses?
11         A.  Correct.
12         Q.  And then you had done the configuration before
13    you set foot on the premises?
14         A.  Correct.
15         Q.  And had the installation had been done prior to
16    you coming on board of that is what you had to do?
17         A.  Well, for Ector I actually had to do -- they
18    sent one technician out and myself.  And he and Kevin
19    had to do all the installation as well.
20         Q.  Was that unusual?
21         A.  That one was a little bit unusual.
22         Q.  In terms of how the installation was done,
23    though, was that unusual?
24         A.  No.  No.
25         Q.  What are you doing when you are doing the
```

1  installation? What role were you serving or playing?
2      A.  Opening boxes, installing computers, carrying
3  things back and forth.
4      Q.  This is hardware installation you are talking
5  about?
6      A.  Right. And in addition I had to do the
7  software install as well.
8      Q.  Okay. What does the software install involve?
9      A.  The software is -- it involves -- once the
10 server is set up, which actually for Ector County the
11 server was already plugged in and there. But we have to
12 go in and download what we had set up staging from the
13 Tyler servers onto the customer's server and then make
14 sure everything works and get it deployed out to all the
15 individual workstations.
16     Q.  Is that a function you performed on your own?
17     A.  Correct, unless I needed tech support, which
18 occasionally we did.
19     Q.  Why would you need tech support? What would
20 come out that would require that kind of support?
21     A.  Sometimes it didn't -- you work on a computer
22 sometimes, right, and they don't do exactly what you
23 want them to. I mean, things would come up that I
24 didn't know how to resolve so I would have to call.
25     Q.  Okay. Paragraph 3 here in your declaration

```
 1            IN THE UNITED STATES DISTRICT COURT
              FOR THE EASTERN DISTRICT OF TEXAS
 2                      MARSHALL DIVISION

 3   PATTY BEALL, MATTHEW         )
     MAXWELL, DAVID GRAVLEY,      )
 4   TALINA MCELHANY, KELLY       )
     HAMPTON, KEVIN TULLOS,       )
 5   CASEY BROWN, JASON BONNER,   )
     ANTHONY DODD, ILENE          )
 6   MEYERS, TOM O'HAVER, JOY     )
     BIBLES, DON LOCCHI AND       )
 7   MELISSA PASTOR,              )
     Individually and on behalf   )
 8   of all others similarly      )
     situated,                    ) CIVIL ACTION
 9                                )
                    PLAINTIFFS,   ) NO.: 2:08-CV-422 TJW
10                                )
     VS.                          )
11                                )
     TYLER TECHNOLOGIES, INC.     )
12   AND EDP ENTERPRISES, INC.,   )
                                  )
13             DEFENDANTS.        )

14

15              REPORTER'S CERTIFICATION
                 DEPOSITION OF TONY DODD
16                   APRIL 27, 2010

17      I, Elaine Fowler, Certified Shorthand Reporter in

18   and for the State of Texas, hereby certify to the

19   following:

20

21      That the witness, TONY DODD, was duly sworn by the

22   officer and that the transcript of the oral deposition

23   is a true record of the testimony given by the witness;

24

25
```

```
 1        That the deposition transcript was submitted on
 2   May 7, 2010, to the witness or to the attorney for the
 3   witness for examination, signature and return to me by
 4   _____;
 5        That the amount of time used by each party at the
 6   deposition is as follows:
 7   MR. PAULO MCKEEBY - 2 hours 5 minutes
 8   MS. CHANDRA HOLMES RAY - 12 minutes
 9
10        That pursuant to information given to the
11   deposition officer at the time said testimony was taken,
12   the following includes counsel for all parties of
13   record:
14   MS. CHANDRA L. HOLMES RAY, Attorney for Plaintiffs
15   MR. PAULO MCKEEBY, Attorney for Defendants
16
17        That $_____ is the deposition officer's
18   charges to the Defendants for preparing the original
19   deposition transcript and any copies of exhibits;
20
21        I further certify that I am neither counsel for,
22   related to, nor employed by any of the parties or
23   attorneys in the action in which this proceeding was
24   taken, and further that I am not financially or
25   otherwise interested in the outcome of the action.
```

| | Freedom Court Reporting, Inc | 104 |

1  Certified to by me this 7th day of May, 2010.
2
3
4
                        ELAINE FOWLER, CSR, No. 5881
5                       Expiration Date: 12/31/2011
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25