# EXHIBIT 2

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

PATTY BEALL, MATTHEW
MAXWELL, TALINA MCELHANY,
KELLY HAMPTON, CASEY BROWN,
JAWSON BONNER, KEVIN TULLOS,
ANTHONY DODD, ILENE MEYERS,
TOM O'HAVER, JOY BIBLES, DON
LOCCHI AND MELISSA PASTOR ,
individually and on behalf of all other
similarly situated;

          Plaintiff,

      vs. –

TYLER TECNOLOGIES, INC. AND
EDP ENTERPRISES, INC.

        Defendants.

§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§

Case No. 2:08-CV-422  TJW

## EXPERT REPORT OF SCOTT D. HAKALA, PH.D., CFA

**I.**     **Background and Qualifications of the Expert**

1.     I am a director of CBIZ Valuation Group, LLC, a national business valuation and consulting firm that operates as a wholly owned subsidiary of CBIZ, Inc., a publicly traded business services firm (NASDAQ: CBIZ).  CBIZ Valuation Group is one of the largest business valuation and consulting firms in the United States with offices in Dallas, Chicago, Atlanta, Milwaukee, St. Louis and Princeton (New Jersey).  CBIZ Valuation Group employs approximately 90 individuals providing business valuation services to public and private companies.



2.      I received a Doctor of Philosophy degree in Economics and a Bachelor's degree in Economics from the University of Minnesota.   I have earned the professional designation of Chartered Financial Analyst, awarded by the Association for Investment Management and Research.  I have studied labor economics.  In addition, I have served as a consultant and expert witness on numerous occasions regarding economic issues similar to those in this litigation.   On numerous occasions I have been called upon to evaluate and consider compensation issues, including: reasonable compensation; wage discrimination; and lost wages due to personal injury, wrongful termination, and other similar claims.   I have direct experience evaluating companies engaged in the design, marketing, installation/customization, and customer support related to computer software, information technology, and networking services both for specialized commercial customers and for more general retail purposes. A detailed summary of my qualifications, including prior testimony and articles, is provided on the curriculum vitae attached hereto as Exhibit A.

3.      Plaintiffs are being charged fees for my services in this engagement based on my hourly billing rate of $575 per hour.  However, our fees for services through the issuance of this report are limited to not exceed $5,000.  I have received assistance from other staff employed by CBIZ Valuation Group, primarily Lisa Lipkin, and have spoken with other experts in affiliates of CBIZ, including Edward Rataj of CBIZ Benefits & Insurance Services, Inc.[St. Louis - Human Capital Services Office].

## II.     Information Considered

4.      My opinions are based on my professional experience, as well as a thorough review of a substantial amount of available materials, including:

(a) Plaintiffs' First Amended Collective Action Complaint ("Complaint") in this case;

(b) Defendants' Answer to Plaintiffs' First Amended Collective Action Complaint;

(c) Payroll Documents for the following employees: Melanie Baird, Joy Bibles, Jason Bonner, Titus Britt, Jill Brown, Nancy Butterbaugh, Linda Carrington, Larry Churnovic, Edward David, Anthony Dodd, Gayla Duke , Amy Dunn,Sandra Dunning, Betty Dupree, Eric Emde, Joy Flynn, Kimberly Gennette, Janette Graham, Ronald Grimwood, Kelly Hampton, David Hayner, Kim Huynh, Geraldine Ingram, Joyce James, Bethany Maynard, Talina McElhany, Ilene Meyers, Jessica Meyers, Laura Milburn, Kevin Mosenthin, Lorraine Mutch, Matthew New, Thomas O'Haver, Russell Steele, Travis Void, Lisa White and Eyvonne Wilton provided by counsel.

(d) Online research on wage and salary rates for professional and managerial positions in information technology companies.

## III.     Summary of the Analyses and Conclusions

5.      I have been requested by counsel to analyze certain compensation and work information provided to date.  Based on that information, I have calculated the hourly wage rate and an over-time rate of 150% of the hourly rate.  Those calculations are provided in the Summary of Plaintiff Salaries-Volumes 1 through 3.  The information provided sets forth the hiring date, dates when changes in salary or wage rates were identified based on information produced from the employment files or bi-weekly payment records. An average hourly rate for identified periods of employment is

provided as a convenience for each individual, as well as the total number of days of employment over which the average hourly rate was identified.

6.      I have not made a determination as to the amount of unpaid overtime.  I have also not determined whether specific employees qualify as exempt or non-exempt employees. However, based on my experience, the salary levels and wage rates reported are customarily associated with less technical and non-managerial employment positions in this industry sector.  Professional and technical employees typically earn salaries in the range of $80,000 to $120,000 and receive bonuses of 5% or more on average per annum. Greater skilled and more advanced professional and technical software engineers and managers typically earn even greater levels of compensation.  Bonuses paid in this case were typically nominal and not of the magnitude provided for managerial and professional employees in a software engineering, installation, or consulting company.

7.      I may review and consider additional information and modify my report accordingly should such additional information alter any opinions provided.


Respectfully submitted,


Executed this 3rd day of September 2010, at Dallas, Texas.


_Scott D. Hakala_

_____

Scott D. Hakala, Ph.D., CFA

## Summary of Plaintiff Salaries-Volume 1

| Date | Period Salary | Hours | Notes | Annual Pay Rate | Hourly Rate | Days | Avg. Hourly Pay |
|---|---|---|---|---|---|---|---|
| **Baird, Melanie** | | | | | | | |
| Hire Date 4/23/2001 | | | | | | | |
| 4/23/2001 | 1,076.92 | 80.00 | annual salary | $ 28,000 | $ 13.46 | | |
| 3/2/2003 | 1,120.00 | 80.00 | salary increase | | $ 14.00 | 678 | |
| 4/23/2004 | 1,153.62 | 80.00 | salary increase | | $ 14.42 | 418 | |
| 1/14/2005 | 1,153.62 | 80.00 | | | $ 14.42 | 266 | |
| 3/15/2005 | | | changed department and salary (transfer) | $ 31,500 | $ 15.14 | 60 | |
| 3/25/2005 | 1,211.54 | 80.00 | | | $ 15.14 | 10 | |
| 7/14/2006 | | | annual review | $ 32,500 | $ 15.63 | 476 | |
| 7/28/2006 | 1,250.00 | 80.00 | | | $ 15.63 | 14 | |
| 6/14/2007 | | | annual review | $ 33,638 | $ 16.17 | 321 | |
| 6/29/2007 | 1,293.77 | 80.00 | | | $ 16.17 | 15 | |
| 5/30/2008 | | | annual salary | $ 34,984 | $ 16.82 | 336 | |
| 6/13/2008 | 1,345.54 | 80.00 | annual salary | $ 34,984 | $ 16.82 | 14 | |
| 8/11/2008 Short Term Disability | | | | | $ 16.82 | 59 | |
| 9/19/2008 | 1,278.27 | 76.00 | | | $ 16.82 | 39 | |
| 10/3/2008 | 1,345.54 | 80.00 | | | $ 16.82 | 14 | |
| 11/14/2008 | 1,345.54 | 80.00 | resignation | $ 34,984 | $ 16.82 | 42 | |
| 11/26/2008 | | | | | | 2,762 | $    14.76 |
| | | | | | Overtime Rate | | $    22.15 |
| **Bibles, Joy** | | | | | | | |
| Hire Date 9/21/2005 | | | | | | | |
| 9/21/2005 | | 80.00 | | $ 50,000 | $ 24.04 | | |
| 10/7/2005 | 1,923.08 | 80.00 | | | $ 24.04 | 16 | |
| 8/11/2006 | 1,538.46 | 64.00 | | | $ 24.04 | 308 | |
| 8/25/2006 | 1,730.77 | 72.00 | | | $ 24.04 | 14 | |
| 10/13/2006 | separation | | | | $ 24.04 | 49 | |
| 10/20/2006 | | | | | | 387 | $    24.04 |
| | | | | | me Rate | | $    36.06 |
| **Bonner, Jason** | | | | | | | |
| 11/17/2006 | 788.46 | 40.00 | | | $ 19.71 | | |
| 12/1/2006 | 1,281.25 | 65.00 | | | $ 19.71 | 14 | |
| 12/15/2006 | 1,576.92 | 80.00 | | | $ 19.71 | 14 | |
| 2/9/2007 | 1,384.73 | 70.25 | | | $ 19.71 | 56 | |
| 4/6/2007 | | | | | $ 19.71 | 56 | |
| | | | | | | 140 | $    19.71 |
| | | | | | Overtime Rate | | $    29.57 |

## Summary of Plaintiff Salaries-Volume 1

| Date | Period Salary | Hours | Notes | Annual Pay Rate | Hourly Rate | Days | Avg. Hourly Pay |
|---|---|---|---|---|---|---|---|
| **Britt, Titus** | Hire Date 11/26/2007 | | | | | | |
| 11/26/2007 | | 80.00 | salary | $ 65,000 | 31.25 | | |
| 11/30/2007 | 2,500.00 | 80.00 | | | $ 31.25 | 4 | |
| 5/16/2008 | 2,125.00 | 68.00 | | | $ 31.25 | 168 | |
| 5/30/2008 | 2,500.00 | 80.00 | | | $ 31.25 | 14 | |
| 9/5/2008 | resignation | 80.00 | salary | $ 65,000 | $ 31.25 | 98 | |
| 9/19/2008 | | | | | | 284 | $ 31.25 |
| | | | | | Overtime Rate | | $ 46.88 |
| **Brown, Jill** | | | | | | | |
| 1/14/2005 | 1,673.08 | 80.00 | | | 20.91 | | |
| 2/25/2005 | 1,765.38 | 80.00 | | | $ 22.07 | 42 | |
| 1/13/2006 | 1,836.00 | 80.00 | | | $ 22.95 | 322 | |
| 2/24/2006 | 1,800.00 | 72.00 | | | $ 25.00 | 42 | |
| 3/10/2006 | 2,000.00 | 80.00 | | | $ 25.00 | 14 | |
| 2/19/2007 | | | annual salary | $ 45,000 | $ 21.63 | 346 | |
| 1/25/2008 | 2,060.00 | 80.00 | | | $ 25.75 | 340 | |
| 2/8/2008 | | | performance review | $ 46,800 | $ 22.50 | 14 | |
| 1/23/2009 | 2,101.19 | 80.00 | | | $ 26.26 | 350 | |
| 2/4/2009 | 1,575.00 | | year end bonus | | $ 22.50 | 12 | |
| 2/13/2009 | | | performance review | $ 46,800 | $ 22.50 | 9 | |
| 2/20/2009 | 1,050.60 | 40.00 | | | $ 26.27 | 7 | |
| 8/23/2009 | | 80.00 | annual salary | $ 46,800 | $ 22.50 | 184 | |
| 2/5/2010 | 1,061.12 | 40.00 | | | $ 26.53 | 166 | |
| 2/19/2010 | | | | | | 1,848 | $ 23.15 |
| | | | | | Overtime Rate | | $ 34.73 |
| **Butterbaugh, Nancy** | Hire Date 6/6/2005 | | | | | | |
| 6/6/2005 | | | | $ 42,500 | 20.43 | | |
| 6/17/2005 | 1,634.62 | 80.00 | | | 20.43 | 11 | |
| 4/9/2007 | | 80.00 | annual salary | $ 43,775 | 21.05 | 661 | |
| 4/20/2007 | 1,683.65 | 80.00 | | | 21.05 | 11 | |
| 8/22/2008 | 1,750.00 | 80.00 | | | 21.88 | 490 | |
| 9/26/2008 | resignation | | annual salary | $ 45,500 | 21.88 | 35 | |
| 10/3/2008 | | | | | | 1,208 | $ 20.73 |
| | | | | | Overtime Rate | | $ 31.09 |

## Summary of Plaintiff Salaries-Volume 1

| Date | Period Salary | Hours | Notes | Annual Pay Rate | Hourly Rate | Days | Avg. Hourly Pay |
|---|---|---|---|---|---|---|---|
| **Carrington, Linda** | | | | | | | |
| Hire Date 2/19/2007 | | | | | | | |
| 2/19/2007 | | | annual salary | $ 41,000 | $ 19.71 | | |
| 3/9/2007 | 1,576.92 | 80.00 | | | $ 19.71 | 18 | |
| 1/28/2008 | | | performance review | $ 42,640 | $ 20.50 | 325 | |
| 2/8/2008 | 1,640.00 | 80.00 | annual salary | $ 42,640 | $ 20.50 | 11 | |
| 2/4/2009 | | | bonus | $ 1,230 | $ 20.50 | 362 | |
| 3/26/2009 | separation | | | $ 42,640 | $ 20.50 | 50 | |
| 4/3/2009 | | | | | | 766 | $ 20.15 |
| | | | | | Overtime Rate | | $ 30.22 |
| **Churnovic, Larry** | | | | | | | |
| Hire Date 4/11/2005 | | | | | | | |
| 4/11/2005 | | | annual salary | $ 45,000 | $ 21.63 | | |
| 4/22/2005 | 1,730.77 | 80.00 | | | $ 21.63 | 11 | |
| 10/23/2006 | | | annual salary | $ 52,000 | $ 25.00 | 549 | |
| 11/3/2006 | 2,000.00 | 80.00 | | | $ 25.00 | 11 | |
| 3/23/2007 | 3,653.85 | 80.00 | | | $ 45.67 | 140 | |
| 11/8/2008 | discharged | 80.00 | annual salary | $ 95,000 | $ 45.67 | 596 | |
| 11/14/2008 | | | | | | 1,307 | $ 32.99 |
| | | | | | Overtime Rate | | $ 49.48 |
| **David, Edward** | | | | | | | |
| Hire Date 6/18/2007 | | | | | | | |
| 6/18/2007 | | 80.00 | annual salary | $ 65,000 | $ 31.25 | | |
| 6/29/2007 | 2,500.00 | 80.00 | | | $ 31.25 | 11 | |
| 10/10/2008 | resignation | | annual salary | $ 65,000 | $ 31.25 | 469 | |
| 10/17/2008 | | | | | | 480 | $ 31.25 |
| | | | | | Overtime Rate | | $ 46.88 |
| **Dodd, Tony** | | | | | | | |
| Hire Date 10/15/2007 | | | | | | | |
| 10/15/2007 | | | annual salary | $ 50,000 | $ 24.04 | | |
| 11/2/2007 | 1,923.08 | 80.00 | | | $ 24.04 | 18 | |
| 1/13/2008 | | | pay action | $ 51,000 | $ 24.52 | 72 | |
| 1/25/2008 | 1,961.54 | 80.00 | | | $ 24.52 | 12 | |
| 5/30/2008 | terminated | | | $ 51,000 | $ 24.52 | 126 | |
| 6/13/2008 | | | | | | 228 | $ 24.33 |
| | | | | | Overtime Rate | | $ 36.49 |
| **Duke, Gayla** | | | | | | | |
| Hire Date 10/15/2007 | | | | | | | |
| 10/15/2007 | | 80.00 | annual salary | $ 55,000 | $ 26.44 | | |
| 10/19/2007 | 2,115.38 | 80.00 | | | $ 26.44 | 4 | |
| 11/3/2008 | | 80.00 | annual salary | $ 40,000 | $ 19.23 | 381 | |
| 11/14/2008 | 1,538.46 | 80.00 | | | $ 19.23 | 11 | |
| 12/27/2008 | 1,076.92 | 56.00 | | | $ 19.23 | 43 | |
| 1/10/2009 | 1,538.46 | 80.00 | | | $ 19.23 | 14 | |
| 5/29/2009 | 1,211.54 | 64.00 | | | $ 18.93 | 139 | |
| 6/12/2009 | 1,538.46 | 80.00 | | | $ 19.23 | 14 | |
| 7/24/2009 | resignation | 80.00 | annual salary | $ 40,000 | $ 19.23 | 42 | |
| | | | | | | 648 | $ 23.51 |
| | | | | | Overtime Rate | | $ 35.26 |

## Summary of Plaintiff Salaries-Volume 2

| Date | Period Salary | Hours | Notes | Annual Pay Rate | Hourly Rate | Days | Avg. Hourly Pay |
|---|---|---|---|---|---|---|---|
| **Dunn, Amy** | | | | Hire Date 7/16/2007 | | | |
| 7/16/2007 | | 80.00 | annual salary | $ 45,000 | 21.63 | 11 | |
| 7/27/2007 | 1,730.77 | 80.00 | | | 21.63 | 11 | |
| 3/24/2008 | | | merit increase | $ 46,800 | 22.50 | 241 | |
| 4/4/2008 | 1,800.00 | 80.00 | | | 22.50 | 11 | |
| 6/2/2009 | 1,620.00 | 72.00 | | | 22.50 | 424 | |
| 6/5/2009 | | | resignation | | 22.50 | 3 | |
| 6/12/2009 | | | | | | 690 | $ 22.18 |
| | | | | | Overtime Rate | | $ 33.28 |
| **Dunning, Sandra** | | | | Hire Date 9/19/2005 | | | |
| 9/19/2005 | 1,692.31 | 80.00 | annual salary | $ 44,000 | 21.15 | 11 | |
| 9/30/2005 | | 80.00 | | | 21.15 | 11 | |
| 2/6/2006 | | | salary increase | $ 46,000 | 22.12 | 129 | |
| 2/17/2006 | 1,769.23 | 80.00 | | $ 47,840 | 23.00 | 11 | |
| 2/24/2006 | 884.62 | 40.00 | | | 22.12 | 7 | |
| 3/10/2006 | 1,769.23 | 80.00 | | | 22.12 | 14 | |
| 4/7/2006 | 1,840.00 | 80.00 | | | 23.00 | 28 | |
| 6/30/2006 | 1,104.00 | 48.00 | | | 23.00 | 84 | |
| 7/14/2006 | 1,840.00 | 80.00 | | | 23.00 | 14 | |
| 10/20/2006 | 920.00 | 40.00 | | | 23.00 | 98 | |
| 2/23/2007 | 1,196.00 | 52.00 | | | 23.00 | 126 | |
| 3/9/2007 | 1,840.00 | 80.00 | | | 23.00 | 14 | |
| 3/26/2007 | | | merit increase | $ 49,740 | 23.91 | 17 | |
| 4/6/2007 | 956.54 | 40.00 | | | 23.91 | 11 | |
| 4/20/2007 | 1,913.08 | 80.00 | | | 23.91 | 14 | |
| 11/30/2007 | 1,147.85 | 48.00 | | | 23.91 | 224 | |
| 12/14/2007 | 1,913.08 | 80.00 | | | 23.91 | 14 | |
| 1/25/2008 | 1,147.85 | 48.00 | | | 23.91 | 42 | |
| 1/31/2008 | | | resignation | | 23.91 | 6 | |
| 2/6/2008 | | | | | | 6 | |
| 3/14/2008 | | | retirement | $ 49,740 | 23.91 | 870 | $ 22.98 |
| | | | | | Overtime Rate | | $ 34.47 |
| **Dupree, Betty** | | | | Hire Date 12/14/1998 | | | |
| 12/14/1998 | 1,516.99 | 80.00 | annual salary | $ 38,000 | 18.27 | 11 | |
| 3/27/2000 | 1,596.15 | 80.00 | merit increase | | 19.95 | 469 | |
| 3/26/2001 | 1,675.96 | 80.00 | merit increase | | 20.95 | 364 | |
| 3/25/2002 | 1,757.73 | 80.00 | merit increase | | 21.97 | 364 | |
| 3/24/2003 | 1,826.96 | 80.00 | pay action | $ 47,500 | 22.84 | 364 | |
| 3/22/2004 | 1,892.34 | 80.00 | pay action | $ 49,200 | 23.65 | 364 | |
| 1/7/2005 | 1,892.34 | | | | 23.65 | 291 | |
| 3/21/2005 | | | merit increase | $ 51,000 | 24.52 | 73 | |
| 4/1/2005 | 1,961.54 | 80.00 | | $ 53,000 | 25.48 | 11 | |
| 4/7/2006 | 2,038.46 | 80.00 | | | 25.48 | 371 | |
| 3/26/2007 | | | merit increase | $ 55,000 | 26.44 | 353 | |
| 4/6/2007 | 2,115.38 | 80.00 | | | 26.44 | 11 | |
| 9/21/2007 | | | | | | 3035 | $ 22.20 |
| | | | | | Overtime Rate | | $ 33.30 |

## Summary of Plaintiff Salaries-Volume 2

| Date | Period Salary | Hours | Notes | Annual Pay Rate | Hourly Rate | Days | Avg. Hourly Pay |
|---|---|---|---|---|---|---|---|
| **Emde, Eric** | Hire Date 2/26/2007 | | | | | | |
| 2/26/2007 | | 80.00 | annual salary | $ 50,000 | 24.04 | | |
| 3/9/2007 | 1,923.08 | 80.00 | | | 24.04 | 11 | |
| 4/6/2009 | lay off | | | | 24.04 | 759 | |
| 2/19/2010 | | | | $ 50,000 | 24.04 | 770 | $ 24.04 |
| | | | | | Overtime Rate | | $ 36.06 |
| **Flynn, Joy** | Hire Date 3/17/2008 | | | | | | |
| 3/17/2008 | | 80.00 | annual salary | $ 45,000 | 21.63 | | |
| 4/4/2008 | 1,730.77 | 80.00 | | | 21.63 | 18 | |
| 12/22/2008 | Discharged | | | | 21.63 | 262 | |
| 12/26/2008 | | | | $ 45,000 | 21.63 | 280 | $ 21.63 |
| | | | | | Overtime Rate | | $ 32.45 |
| **Gennette, Kimberly** | Hire Date 12/31/2007 | | | | | | |
| 12/31/2007 | 1,692.31 | | annual salary | $ 44,000 | 21.15 | | |
| 1/11/2008 | | 80.00 | | | 21.15 | 11 | |
| 8/4/2008 | | | merit increase | $ 45,350 | 21.80 | 206 | |
| 8/22/2008 | 1,744.23 | 80.00 | | | 21.80 | 18 | |
| 9/5/2008 | 1,395.39 | 64.00 | | | 21.80 | 14 | |
| 9/19/2008 | 1,744.23 | 80.00 | | | 21.80 | 14 | |
| 3/23/2009 | | | merit increase | $ 46,550 | 22.38 | 185 | |
| 4/3/2009 | 1,790.38 | 80.00 | | | 22.38 | 11 | |
| 7/24/2009 | Resignation | | annual salary | $ 46,550 | 22.38 | 112 | |
| 7/24/2009 | | | | | | 571 | $ 21.68 |
| | | | | | Overtime Rate | | $ 32.52 |
| **Graham, Janette** | Hire Date 2/11/2008 | | | | | | |
| 2/11/2008 | 1,769.23 | 80.00 | annual salary | $ 46,000 | 22.12 | | |
| 2/22/2008 | | 80.00 | | | 22.12 | 11 | |
| 4/9/2008 | Discharged | | | | 22.12 | 47 | |
| 4/18/2008 | | | | $ 46,000 | 22.12 | 58 | $ 22.12 |
| | | | | | Overtime Rate | | $ 33.17 |
| **Grimwood, Ronald** | Hire Date 4/25/2000 | | | | | | |
| 4/25/2000 | 1,346.15 | 80.00 | annual salary | $ 35,000 | 16.83 | | |
| 12/4/2000 | 1,423.07 | 80.00 | merit increase | $ 37,000 | 17.79 | 223 | |
| 9/24/2001 | 1,458.66 | 80.00 | merit increase | $ 39,925 | 19.19 | 294 | |
| 3/25/2002 | 1,554.81 | 80.00 | merit increase | $ 40,425 | 19.44 | 182 | |
| 3/24/2003 | 1,631.73 | 80.00 | merit increase | $ 42,425 | 20.40 | 364 | |
| 3/22/2004 | 1,680.73 | 80.00 | merit increase | $ 43,698 | 21.01 | 364 | |
| 3/21/2005 | | | merit increase | $ 45,699 | 21.97 | 364 | |
| 4/1/2005 | 1,757.65 | 80.00 | | | 21.97 | 11 | |
| 4/1/2006 | | | merit increase | $ 47,526 | 22.85 | 365 | |
| 4/7/2006 | 1,827.96 | 80.00 | | | 22.85 | 6 | |
| 3/26/2007 | | | merit increase | $ 49,428 | 23.76 | 353 | |
| 3/24/2008 | | | merit increase | $ 51,400 | 24.71 | 364 | |
| 4/6/2008 | 1,901.08 | 80.00 | | | 23.76 | 13 | |
| 4/18/2008 | 1,976.92 | 80.00 | | | 24.71 | 12 | |
| 3/23/2009 | | | merit increase | $ 52,900 | 25.43 | 339 | |
| 4/3/2009 | 2,034.62 | 80.00 | annual salary | $ 52,900 | 25.43 | 11 | |
| 9/18/2009 | 2,080.99 | 81.80 | | | 25.44 | 168 | |
| | | | | | | 3433 | $ 21.34 |
| | | | | | Overtime Rate | | $ 32.01 |

## Summary of Plaintiff Salaries-Volume 2

| Date | Period Salary | Hours | Notes | Annual Pay Rate | Hourly Rate | Days | Avg. Hourly Pay |
|---|---|---|---|---|---|---|---|
| **Hampton, Kelly** | Hire Date 3/22/2004 | | | | | | |
| 3/22/2004 | | 80.00 | annual salary | | $ 16.35 | 587 | |
| 10/30/2005 | 1,307.69 | 80.00 | | | $ 16.35 | 684 | |
| 9/14/2007 | 1,342.69 | 80.00 | | | $ 16.78 | 35 | |
| 10/19/2007 | resignation | | | $ 34,910 | $ 16.78 | 35 | |
| | | | | | | 1306 | $ 16.36 |
| | | | | Overtime Rate | | | $ 24.54 |
| **Hayner, David** | Hire Date 2/15/2005 | | | | | | |
| 2/15/2005 | 2,007.69 | 80.00 | annual salary | $ 58,000 | $ 27.88 | | |
| 2/25/2005 | 2,230.77 | 72.00 | | | $ 27.88 | 10 | |
| 3/11/2005 | | 80.00 | | | $ 27.88 | 14 | |
| 1/1/2006 | 2,300.00 | | annual salary | $ 59,800 | $ 28.75 | 296 | |
| 1/13/2006 | | 80.00 | | | $ 28.75 | 12 | |
| 1/1/2007 | 2,392.31 | | annual salary | $ 62,200 | $ 29.90 | 353 | |
| 1/12/2007 | 1,913.85 | 80.00 | | | $ 29.90 | 11 | |
| 11/16/2007 | 2,392.31 | 64.00 | | | $ 29.90 | 308 | |
| 11/30/2007 | 1,943.75 | 80.00 | | | $ 29.90 | 14 | |
| 12/14/2007 | 1,674.62 | 65.00 | | | $ 29.90 | 14 | |
| 12/28/2007 | 1,478.45 | 56.00 | | | $ 29.90 | 14 | |
| 1/1/2008 | 2,464.08 | 48.00 | annual salary | $ 64,066 | $ 30.80 | 4 | |
| 1/25/2008 | 2,217.67 | 80.00 | | | $ 30.80 | 24 | |
| 10/31/2008 | 2,464.08 | 72.00 | | | $ 30.80 | 280 | |
| 11/14/2008 | 2,513.35 | 80.00 | annual salary | $ 65,347 | $ 30.80 | 14 | |
| 1/1/2009 | 2,513.35 | 80.00 | | | $ 31.42 | 48 | |
| 2/6/2009 | | 80.00 | | $ 65,347 | $ 31.42 | 36 | |
| 6/1/2009 | | 80.00 | transfer | $ 67,000 | $ 31.42 | 115 | |
| 7/10/2009 | 1,803.84 | | annual salary | | $ 32.21 | 39 | |
| 11/25/2009 | 1,288.46 | 56.00 | | | $ 32.21 | 138 | |
| 12/11/2009 | 2,576.92 | 40.00 | | | $ 32.21 | 16 | |
| 12/24/2009 | | 80.00 | | | $ 32.21 | 13 | |
| 1/1/2010 | 2,592.38 | | annual salary | $ 67,670 | $ 32.53 | 8 | |
| 1/8/2010 | 2,602.69 | 80.00 | | | $ 32.53 | 7 | |
| 1/22/2010 | | 80.00 | | | $ 32.53 | 14 | |
| 2/19/2010 | | | | | $ 32.53 | 28 | |
| | | | | | | 1830 | $ 29.95 |
| | | | | Overtime Rate | | | $ 44.92 |
| **Huynh, Kim** | Hire Date 2/19/2007 | | | | | | |
| 2/19/2007 | | | | $ 45,000 | $ 21.63 | | |
| 3/9/2007 | 1,730.77 | 80.00 | | | $ 21.63 | 18 | |
| 9/20/2007 | resignation | | | $ 45,000 | $ 21.63 | 195 | |
| | | | | | | 213 | $ 21.63 |
| | | | | Overtime Rate | | | $ 32.45 |

Page 3 of 3

## Summary of Plaintiff Salaries-Volume 3

| Date | Period Salary | Hours | Notes | Annual Pay | Hourly Rate | Days | Avg. Hourly Pay |
|---|---|---|---|---|---|---|---|
| **Ingram, Geraldine** | Hire Date 1/2/2006 | | | | | | |
| 1/2/2006 | | 80.00 | annual salary | $ 45,000 | 21.63 | | |
| 1/20/2006 | 1,730.77 | 80.00 | | | 21.63 | 18 | |
| 5/5/2006 | 1,800.00 | 80.00 | | | 22.50 | 105 | |
| 10/20/2006 | 1,620.00 | 72.00 | | | 22.50 | 168 | |
| 11/10/2006 | resignation | | | $ 46,800 | 22.50 | 21 | |
| 11/17/2006 | | | | | | 312 | $ 22.16 |
| | | | | Overtime Rate | | | $ 33.24 |
| **James, Joyce** | Hire Date 3/3/2003 | | | | | | |
| 3/3/2003 | 1,538.47 | 80.00 | annual salary | $ 40,000 | 19.23 | | |
| 3/22/2004 | 1,611.55 | 80.00 | merit increase | $ 41,900 | 20.14 | 385 | |
| 1/7/2005 | 1,611.55 | 80.00 | | | 20.14 | 291 | |
| 3/21/2005 | | 80.00 | merit increase | $ 43,400 | 20.87 | 73 | |
| 4/1/2005 | 1,669.23 | | | | 20.87 | 11 | |
| 4/1/2006 | | 80.00 | merit increase | $ 45,150 | 21.71 | 365 | |
| 4/7/2006 | 1,736.54 | | | | 21.71 | 6 | |
| 3/26/2007 | | 80.00 | merit increase | $ 46,650 | 22.43 | 353 | |
| 4/20/2007 | 1,794.23 | | | | 22.43 | 25 | |
| 9/28/2007 | discharged | 80.00 | | $ 46,650 | 22.43 | 161 | |
| | | | | | | 1670 | $ 20.69 |
| | | | | Overtime Rate | | | $ 31.03 |
| **Maynard, Bethany** | Hire Date 12/9/2002 | | | | | | |
| 12/9/2002 | 1,538.47 | 80.00 | annual salary | $ 40,000 | 19.23 | | |
| 12/9/2002 | 1,538.47 | 80.00 | | | 19.23 | 0 | |
| 6/30/2003 | 1,576.93 | 80.00 | merit increase | $ 41,000 | 19.71 | 203 | |
| 3/22/2004 | 1,634.62 | 80.00 | merit increase | $ 42,500 | 20.43 | 266 | |
| 1/7/2005 | 1,634.62 | 80.00 | | | 20.43 | 291 | |
| 4/1/2005 | 1,711.54 | 80.00 | | $ 44,500 | 21.39 | 84 | |
| 4/1/2006 | | 80.00 | | $ 46,700 | 22.45 | 365 | |
| 4/7/2006 | 1,796.15 | | | | 22.45 | 6 | |
| 3/9/2007 | resignation | | | $ 46,700 | 22.45 | 336 | |
| | | | | | | 1551 | $ 20.82 |
| | | | | Overtime Rate | | | $ 31.23 |
| **McElhany, Talina** | Hire Date 8/8/2002 | | | | | | |
| 8/8/2002 | | 80.00 | | $ 36,910 | 17.75 | | |
| 9/1/2007 | 1,419.62 | 80.00 | | | 17.75 | 1850 | |
| 9/14/2007 | | 80.00 | | | 17.75 | 13 | |
| 4/4/2008 | 1,490.62 | 80.00 | | | 18.63 | 203 | |
| 8/22/2008 | resignation | | | $ 38,756 | 18.63 | 140 | |
| | | | | | | 2206 | $ 17.80 |
| | | | | Overtime Rate | | | $ 26.70 |
| **Meyers, Ilene** | Hire Date 3/27/2006 | | | | | | |
| 3/27/2006 | | 80.00 | annual salary | $ 42,000 | 20.19 | | |
| 4/21/2006 | 1,615.38 | 80.00 | | | 20.19 | 25 | |
| 3/26/2007 | | 80.00 | merit increase | $ 43,680 | 21.00 | 339 | |
| 4/6/2007 | 1,680.00 | | | | 21.00 | 11 | |
| 11/9/2007 | | | | $ 43,680 | 21.00 | 217 | |
| | | | | | | 592 | $ 20.50 |
| | | | | Overtime Rate | | | $ 30.76 |

## Summary of Plaintiff Salaries-Volume 3

| Date | Period Salary | Hours | Notes | Annual Pay Rate | Hourly Rate | Days | Avg. Hourly Pay |
|---|---|---|---|---|---|---|---|
| **Meyers, Jessica** | | | | | | | |
| Hire Date 8/11/2008 | | | | | | | |
| 8/11/2008 | | 80.00 | annual salary | $ 65,000 | $ 31.25 | | |
| 8/22/2008 | 2,500.00 | 80.00 | | | $ 31.25 | 11 | |
| 3/6/2009 | 2,437.50 | 76.00 | | | $ 32.07 | 196 | |
| 3/20/2009 | 2,500.00 | 80.00 | | | $ 31.25 | 14 | |
| 6/15/2009 | resignation | | | | $ 31.25 | 14 | |
| 6/26/2009 | | | | $ 65,000 | $ 31.25 | 87 | 308 | $ 31.29 |
| | | | | | Overtime Rate | | $ 46.93 |
| **Milburn, Laura** | | | | | | | |
| Hire Date 6/9/2008 | | | | | | | |
| 6/9/2008 | | 80.00 | annual salary | $ 50,000 | $ 24.04 | | |
| 6/27/2008 | 1,923.08 | 80.00 | | | $ 24.04 | 18 | |
| 7/11/2008 | 1,730.77 | 72.00 | | | $ 24.04 | 14 | |
| 7/25/2008 | 1,923.08 | 80.00 | | | $ 24.04 | 14 | |
| 9/22/2008 | | | annual salary | $ 50,000 | $ 24.04 | 59 | |
| 1/23/2009 | 1,534.46 | 64.00 | | | $ 23.98 | 123 | |
| 2/6/2009 | 1,923.08 | 80.00 | | | $ 24.04 | 14 | |
| 4/3/2009 | 1,942.31 | 80.00 | | | $ 24.28 | 56 | |
| 4/17/2009 | 1,748.08 | 72.00 | | | $ 24.28 | 14 | |
| 5/1/2009 | 1,942.31 | 80.00 | | | $ 24.28 | 14 | |
| 11/6/2009 | Discharged | | | $ 50,500 | $ 24.28 | 189 | 515 | $ 24.14 |
| | | | | | Overtime Rate | | $ 36.21 |
| **Mosenthin, Kevin** | | | | | | | |
| Hire Date 1/21/2002 | | | | | | | |
| 1/21/2002 | 1,538.47 | 80.00 | annual salary | $ 40,000 | $ 19.23 | | |
| 7/29/2002 | | 80.00 | merit increase | $ 41,000 | $ 19.71 | 189 | |
| 3/24/2003 | 1,576.93 | 80.00 | merit increase | $ 42,700 | $ 20.53 | 238 | |
| 2/12/2004 | 1,642.31 | 80.00 | | | $ 20.53 | 325 | |
| 3/22/2004 | 1,696.16 | 80.00 | merit increase | $ 44,100 | $ 21.20 | 39 | |
| 4/1/2006 | | | | $ 45,864 | $ 22.05 | 740 | |
| 3/26/2007 | 2,136.04 | 80.00 | merit increase | $ 48,000 | $ 23.08 | 359 | |
| 3/28/2007 | Discharged | | | $ 48,000 | $ 23.08 | 2 | 1892 | $ 20.85 |
| | | | | | Overtime Rate | | $ 31.28 |
| **Mutch, Lorraine** | | | | | | | |
| Hire Date 12/4/2006 | | | | | | | |
| 12/4/2006 | | 80.00 | annual salary | $ 60,000 | $ 28.85 | | |
| 12/15/2006 | 2,307.69 | 80.00 | | | $ 28.85 | 11 | |
| 7/31/2007 | Discharged | | | $ 60,000 | $ 28.85 | 228 | 239 | $ 28.85 |
| | | | | | Overtime Rate | | $ 43.27 |
| **New, Matthew** | | | | | | | |
| Hire Date 11/13/2000 | | | | | | | |
| 11/13/2000 | 1,538.16 | | annual salary | $ 35,000 | $ 16.83 | | |
| 11/13/2001 | 1,569.23 | 80.00 | anniversary raise | $ 40,000 | $ 19.23 | 365 | |
| 8/1/2004 | 1,569.23 | 80.00 | cost of living increase | $ 40,800 | $ 19.62 | 992 | |
| 1/14/2005 | 1,608.46 | 80.00 | | | $ 19.62 | 166 | |
| 8/12/2005 | 1,656.72 | 80.00 | cost of living increase | $ 41,820 | $ 20.11 | 210 | |
| 4/21/2006 | | | merit increase | $ 43,075 | $ 20.71 | 252 | |
| 10/1/2006 | | | cost of living increase | $ 44,367 | $ 21.33 | 163 | |
| 10/20/2006 | 1,706.42 | 80.00 | | | $ 21.33 | 19 | |
| 9/23/2007 | | | merit increase | $ 46,142 | $ 22.18 | 338 | |
| 10/5/2007 | 1,774.67 | 80.00 | | | $ 22.18 | 12 | 2517 | $ 19.43 |
| | | | | | Overtime Rate | | $ 29.15 |

## Summary of Plaintiff Salaries-Volume 3

| Date | Period Salary | Hours | Notes | Annual Pay Rate | Hourly Rate | Days | Avg. Hourly Pay |
|---|---|---|---|---|---|---|---|
| **O'Haver, Thomas** | Hire Date 12/1/2003 | | | | | | |
| 12/1/2003 | | 80.00 | annual salary | $ 60,000 | $ 28.85 | | |
| 1/1/2005 | 2,307.69 | 80.00 | salary increase | $ 61,200 | $ 29.42 | 397 | |
| 1/14/2005 | 2,353.85 | 80.00 | | | $ 29.42 | 13 | |
| 2/25/2005 | | 80.00 | salary increase | $ 62,424 | $ 30.01 | 42 | |
| 1/1/2006 | 2,400.92 | 80.00 | | $ 62,424 | $ 30.01 | 310 | |
| 1/1/2007 | 2,472.96 | 80.00 | | $ 64,297 | $ 30.91 | 365 | |
| 1/12/2007 | | | | $ 64,297 | $ 30.91 | 11 | |
| 4/13/2007 | separation | | | $ 64,297 | $ 30.91 | 91 | |
| | | | | | | 1229 | $  29.68 |
| | | | | | Overtime Rate | | $  44.53 |
| **Steele, Russell** | Hire Date 4/23/2001 | | | | | | |
| 4/23/2001 | 1,846.15 | 80.00 | annual salary | $ 48,000 | $ 23.08 | | |
| 1/14/2005 | | | | | $ 23.08 | 1362 | |
| 1/12/2007 | resignation | | | $ 48,000 | $ 23.08 | 728 | |
| | | | | | | 2090 | $  23.08 |
| | | | | | Overtime Rate | | $  34.62 |
| **Void, Travis** | Hire Date 12/17/2007 | | | | | | |
| 12/17/2007 | 1,730.77 | 80.00 | annual salary | $ 45,000 | $ 21.63 | | |
| 12/28/2007 | | | | | $ 21.63 | 11 | |
| 8/8/2008 | 1,782.69 | 80.00 | merit increase | $ 46,350 | $ 22.28 | 224 | |
| 3/23/2009 | | | merit increase | $ 47,750 | $ 22.96 | 227 | |
| 4/3/2009 | 1,836.54 | 80.00 | | | $ 22.96 | 11 | |
| 2/19/2010 | | | | | $ 22.96 | 322 | |
| 3/22/2010 | | 80.00 | | $ 49,250 | $ 23.68 | 31 | |
| | | | | | | 826 | $  22.40 |
| | | | | | Overtime Rate | | $  33.59 |
| **White, Lisa** | Hire Date 10/30/2005 | | | | | | |
| 10/30/2005 | 1,615.38 | 80.00 | annual salary | | $ 20.19 | | |
| 10/30/2005 | 1,615.38 | 80.00 | | | $ 20.19 | 0 | |
| 3/3/2007 | 1,615.38 | 80.00 | last statement | | $ 20.19 | 489 | |
| | | | | | | 489 | $  20.19 |
| | | | | | Overtime Rate | | $  30.29 |
| **Wilton, Eyvonne** | Hire Date 3/13/2006 | | | | | | |
| 3/13/2006 | 1,923.08 | 80.00 | annual salary | $ 50,000 | $ 24.04 | | |
| 1/12/2007 | 1,923.08 | 80.00 | Resignation | $ 50,000 | $ 24.04 | 305 | |
| | | | | | | 305 | $  24.04 |
| | | | | | Overtime Rate | | $  36.06 |

# Exhibit A

## Scott D. Hakala, Ph.D., CFA

## Employment History

- **1992 – Jan 1998, March 1998 to Present    CBIZ Valuation Group, LLC (formerly Business Valuation Services), Dallas, Texas**

  *Managing Director.*  As a financial economist and financial analyst, Dr. Hakala brings to the firm extensive practical knowledge of finance, economics and statistics.  His expertise includes: corporate finance, restructuring and cost of capital; the valuation of securities and business interests (transactions, mergers, acquisitions, fairness opinions); the valuation of intangible assets (patents, trademarks); analysis of publicly traded securities (insider trading studies, trading analyses, event analyses, materiality, damages in securities litigation); economic loss analyses (commercial litigation); wage and compensation determination (reasonable compensation studies, lost personal income, wrongful termination); transfer pricing; derivative securities (options pricing and valuation); and antitrust and industry structure, strategic pricing, marketing and cost allocation analyses.

- **Jan 1998 – March 1998    Laser BioTherapy, Inc., Dallas, Texas**

  *Interim President*.  Dr. Hakala served as the Chief Executive Officer of Laser BioTherapy, Inc. His decision-making authority involved issues of marketing, employment, negotiating with investors, pricing, product planning, financial planning and all other corporate decisions.

- **1988 - 1992    Dept. of Economics, Southern Methodist University, Dallas, Texas**

  *Assistant Professor.*  Dr. Hakala taught graduate and undergraduate courses in macroeconomics, monetary/financial economics, financial institution regulation and international financial management. He supervised dissertations on international money, commodity options and forward markets, and foreign exchange rates.  His research interests included monetary policy, the causes of fluctuations in employment and output, capital stock estimation, aggregate production theory, foreign currency movements (futures, options and forward contracts), inflation, interest rate movements and the term structure of interest rates, asset pricing and consumption.

- **1983 - 1988    Dept. of Economics, University of Minnesota, Minneapolis, Minnesota**

  *Lecturer.*  Dr. Hakala designed course materials and taught large classes in macroeconomics and international economics.  He served on hiring committees and evaluated other instructors.

## Formal Education

- Doctor of Philosophy, Economics - 1989
  University of Minnesota, Minneapolis, Minnesota
  Graduate School Fellowship
  (Graduate/dissertation advisor Edward Prescott was awarded the Nobel Prize in Economics in 2004.)

- Bachelor of Arts, Economics - 1983
  Minor in Business Administration and Pre-Law Emphasis
  University of Minnesota, Duluth, Minnesota
  Graduated Summa Cum Laude
  Whiteside Scholarship, full tuition and expenses

## Honors and Awards

- Distinguished Instructor, Department of Economics, University of Minnesota, 1987-1988

- Earhart Foundation Award, Department of Economics, University of Minnesota, 1985

- Graduate School Fellowship, 1983 and 1984

- Cecil H. Meyers Outstanding Economics Student Award, 1982

- Perfect Scores on Quantitative Analysis and Verbal Analysis sections of Graduate Record Examination (GRE), 1982

- Alice Touhy Tweed Award, High School Valedictorian, 1979

- Lee Krough Award (outstanding character), American Legion's Minnesota Boy's State, 1978, elected Lt. Governor and invited to represent state at other events

- Centrum Award, 1979 (for outstanding character and contributions)

## Professional Associations

- CFA Charter, The Institute of Chartered Financial Analysts, completed all tests and requirements for a CFA designation

- Member, American Finance Association

## Publications

- "The Other Side of Kohler: IRS Expert Offers Insights," *Business Valuation Update*, January 2007.

- Thorsen, Kaplan and Hakala, "Rediscovering the Economics of Loss Causation," *Journal of Business and Security Law Acceptance*, Vol. 6, No. 1 and 2, April 2006, pp. 93-125.

- "Estimating and Applying Economic Value Added," Chapter 13E - *Financial Valuation: Businesses and Business Interests - 1998 Update.*  Publisher:  Warren, Gorham & Lamont

- "Valuation for Smaller Capitalization Companies" (with Dr. Mukesh Bajaj), Chapter 12A - *Financial Valuation: Businesses and Business Interests - 1998 Update.*  Publisher:  Warren, Gorham & Lamont.

- "Analysis and Valuation of Distressed Equity Securities" (with Mr. M. Travis Keath), Chapter 13F - *Financial Valuation: Businesses and Business Interests - 1999 Update.*  Publisher:  Warren, Gorham & Lamont.

- "Analysis and Valuation of Distressed Equity Securities" (with Mr. M. Travis Keath), *Valuation Strategies*, September/October 1999, pp. 24-34.  Publisher:  Warren, Gorham & Lamont.

- Contributing author in *The Art of M&A Integration:  A Guide to Merging Resources, Processes and Responsibilities*. October 1997.  Publisher:  McGraw-Hill. Contributed on valuation of tangible and intangible assets (patents, trade secrets, customers, goodwill, employment agreements, non-competes, etc.), allocation of purchase price issues, accounting treatment of acquisitions, international valuation and transfer pricing and general valuation and due diligence issues.  Assisted editor in commenting on and editing first half of text.

- Provided live and taped interviews pertaining to economic issues for television, including lengthy interviews for CNN (July 1990), WFAA-TV (July 1990; July 1991; March 1992), and radio (Internet radio on November 9, 1999, discussing Microsoft anti-trust issues).

## Lectures Presented

Dr. Hakala is a frequent public speaker on valuation, economics, ethics, and monetary policy.  Examples include:

- New York City Bar Association, Securities Litigation Meeting– Discussion with Marcia Mayer Kramer regarding: "View from the trenches: How has *Dura* changed the way you analyze damages" - May 14, 2008

- PLUS D&O Symposium – New York-Panel Discussion-Written presentation entitled "Current Economic Issues in Securities Litigation" and Panel Discussion - February 2, 2006

- "Valuation of Options for Litigation Purposes" – New York University CLE Presentation-October 2000

- "Valuation Issues-Family Limited Partnerships" – Professional Financial Service, LP's Family Limited Partnership Alert and Update; Dallas/Fort Worth  - February 2000

- "PPOs for Sale: the Valuation of Managed Care Entities" - Caesars Palace; Las Vegas, Nevada - September 1992

- "Equilibria in Continuous-Time Models of Money" - refereed paper presented to the Sixth World Congress of the Econometric Society; Barcelona, Spain - August 1990

- "The Use and Holding of Currency" - Feature Presentation - Western Economic Association Meeting; San Diego, California - July 1990

- "Values and Economics" - Dallas Philosophical Forum; Dallas, Texas - March 1990

- "Ethics and the Role of Government" - ARCO Oil and Gas Research Center; Plano, Texas - October 1989

- "Continuous-Time Models of Money:  Policy Implications" - paper presented to the Division of Research and Statistics of the Board of Governors of the Federal Reserve; Washington, DC - January 1988

## Expert Witness/Litigation Support

Dr. Hakala has undertaken various assignments involving litigation support and has testified as an expert witness.  He has been qualified as an expert and has testified in both U.S. District Court and in U.S. Tax Court. The following is a list of testimony on record:

- *Six & Mango Equipment, L.L.P., et al. v. Adair, Morris & Osborn, P.C., et al;* (Cause No. 296-00453-2009); In the 296th District Court, Collin County, Texas; deposition testimony July 29, 2010; testimony regarding damages ( loss of value, additional expenses and lost profits) resulting from undisclosed restrictions on use and delays in development of commercial real estate for an operating commercial equipment dealership.

- *WILLIAM MOUNTANOS, PETER MOUNTANOS, JAMES RYE, and TYRONE REMINGA, vs. DENDREON CORPORATION, et al.;* (Case No. C 09-426-MJP); In the United States District Court For the Western District of Washington at Seattle; deposition testimony June 15, 2010; testimony regarding market efficiency, materiality, loss causation, and damages.

\*   *MIDDLECOUNTY RETIREMENT SYSTEM, on behalf of itself and all others similarly situated, vs. SEMTECH CORP., JOHN D. POE, JASON L. CARLSON, MOHAN R. MAHESWARAN, DAVID G. FRANZ JR., and JOHN M. BAUMAN;* (Civil Action No. 07-CV-7183); In the United States District Court For the Southern District of New York; deposition testimony March 30, 2010; testimony regarding market efficiency, materiality, and loss causation relating to issues of class certification.

\*   *James I. Jaconette, in his capacity as Trustee of the James I. Jaconette Separate Property Trust Dated January 14, 2004 vs. EMERALD BAY FINANCIAL, INC., a California corporation; BOB SYREK, an individual; AND DOES 1-50, inclusive; (Case No. 37-2008-00071642 CU-FR-SC);* In the Superior Court for the State of California, County of San Diego, South County Division; trial testimony March 23, 2010; testified as to losses and measures of losses associated with allegations of fraud and negligent misrepresentation in connection with the sale of a mortgage loan to the plaintiff.

\*   *In re: Cobalis Corp., a Nevada Corporation; COBLAIS CORP., A NEVADA CORPORATION, and CORNELL CAPITAL PARTNERS, LP, YORKVILLE ADVISORS, LLC AND, YA GLOBAL INVESTMENTS, LP; (CASE NO. 8:07: 12347-TA; ADVERSARY NO. 09:09-AP);* In the United States Bankruptcy Court For the Central District of California-Santa Ana Division; deposition testimony February 16, 2010; hearing testimony March 10, 2010; testimony regarding gains from short sales and avoided losses from sales of shares by defendants and damage to market value of debtor/plaintiff.

\*   *Harvey Lapin vs. Goldman Sachs Group, Inc. et al.;* (No. 1:04-CV-02236-KMK); In the United States District Court For the Southern District of New York; deposition testimony February 11, 2010; testimony regarding market efficiency, materiality, loss causation, inflation per share, and damages.

\*   *In re: Northfield Laboratories, Inc. Securities Litigation;* (Master File No. 06 C 1493); In the United States District Court For the Northern District of Illinois; deposition testimony February 8, 2010; testimony regarding market efficiency, materiality, and loss causation relating to issues of class certification.

\*   *In re: Gary Vanier* (MDL No. 06-0784); 48th Judicial District Court, Tarrant County, Texas; deposition testimony February 3, 2010; hearing testimony June 17 and 18, 2010; testified as to the absence of any stock price impact (and no damages) associated with various critical Yahoo! Bulletin Board posts regarding a publicly-traded company.

\*   *ROBERT LEVITT for himself and as custodian for Richard Levitt and Monica Levitt, ROBERT RICE, STEPHEN G. SIBEN, STEPHEN STROBEHN, STANLEY VELTKAMP, PHILIP C. VITANZA for himself and Elizabeth Vitanza and Luke Vitanza, JOHN T. WHITE, GUY V. WOOD, CARL ZANDER, JR., and TED M. and KATHRYN N. JONES, as Trustees, vs. J.P. MORGAN SECURITIES INC., and J.P. MORGAN CLEARING CORP.* (Civil Action No. 99 Civ. 2789 MDL 1208 (ADS) (MLO)); In the United States District Court for the Eastern District of New York; deposition testimony November 20, 2009; testimony related to a motion for class certification in a class action alleging market manipulation and non-disclosure in connection with an initial public offering regarding issues of loss causation and common measures of damages.

\*   *Between: ED J. MCKENNA and GAMMON GOLD, INC., RUSSELL BARWICK, COLIN P. SUTHERLAND, DALE M. HENRICK, FRED GEORGE, FRANK CONTE, KENT NOSEWORTHY, CANEK RANGEL, BRADLEY LANGILLE, ALEJANDRO CARAVEO, BMO NESBITT BURNS INC., SCOTIA CAPITAL INC., and TD SECURITIES INC.* Proceeding under the *Class Proceedings Act,* 1992 (Court File No. 56862); Ontario Superior Court of Justice; deposition testimony October 27, 2009; testimony, including rebuttal testimony, regarding marketing efficiency, materiality, and loss causation for class certification purposes.

\*   *Douglas Fletcher v. Pivot International,* American Arbitration Association (Arbitration Case No. 57-180-Y-00070-08); deposition testimony October 14, 2009; direct and rebuttal arbitration testimony February 23 and 25, 2010; testified as to various transfer pricing and fair market valuation issues relating to the valuation of Pivot International in connection with a buy-sell agreement for a departing employee.

\*   *In re Herley Industries Inc. Securities Litigation.*  (Civil Action No. 06-2596 (JRS)); In the United States District Court for the Eastern District of Pennsylvania; deposition testimony October 9, 2009; testimony, including regarding loss causation and damages issues associated with failure to disclose issues with government contracts.

\*   *Between: ROMAN PYSZNYJ and ORSU METALS CORPORATION (f/k/a EUROPEAN MINERALS CORPORATION) WILLIAM G. KENNEDY and JAMES COLE* Proceeding under the *Class Proceedings Act,* 1992 (Court File No.: 59650CP); Ontario Superior Court of Justice; deposition testimony August 26, 2009; testimony, including rebuttal testimony, regarding marketing efficiency, materiality, and loss causation for class certification purposes.

\*   *In re Merix Corporation Securities Litigation.*  (Lead Case No. CV-04-826-MO); In the United States District Court for the District of Oregon; deposition testimony August 21, 2009; testimony, including rebuttal testimony, regarding loss causation issues and market and industry forces in a Section 11 case at class certification.

\*   *United States v. Charles Cathcart et al.*  (Civil Case No. 07-4762-PJH (JCS)); In the United States District Court for the Northern District of California- San Francisco Division; deposition testimony July 20, 2009; testimony regarding hedging strategies for common equity shares with built-in capital gain and the materiality of various alternatives with respect to constructive sale guidelines.

\*   *In re Scientific-Atlanta, Inc. Securities Litigation*  (Case No. 1:01- CV- 1950- RWS); In the United States District Court for the Northern District of Georgia- Atlanta Division; deposition testimony March 6, 2009; testimony regarding market efficiency and reliance, inflation per share, loss causation and damages relating to a relating to securities fraud claims involving  "channel-stuffing" and premature revenue recognition.

\*   *In re MIVA Inc. Securities Litigation*  (Civil Action No. 2:05-cv-00201-FtM-29DNF); In the United States District Court for the Middle District of Florida- Fort Myers Division; deposition testimony February 18, 2009; testimony regarding market efficiency and reliance, inflation per share, loss causation and damages relating to a relating to securities fraud claims involving revenues based on unethical Internet activity (including "click-fraud").

\*   *Brenholb, Inc. d/b/a Brenner Printing. v. Komori America Corporation* (Cause No. 51 181 Y 00365 08); American Arbitration Association; deposition testimony January 15, 2009; testified as to issues related to lost profits resulting from and impairment of the value of a defective printing press.

\*   *Capital One Financial Corporation and Subsidiaries. v. Commissioner of Internal Revenue* (Docket Nos. 24260-05 and 19519-05); United States Tax Court; trial testimony December 17, 2008; testified as to calculation of OID accruals related to certain fees and revenues generated by credit card portfolios based on analyses of account and balance turnover by type.

\*   *JOHN CARFAGNO, derivatively on behalf of CENTERLINE HOLDING COMPANY, vs. MARC D. SCHNITZER, STEPHEN M. ROSS, JEFF T. BLAU, LEONARD W. COTTON, ROBERT J. DOLAN, NATHAN GANTCHER, JEROME Y. HALPERIN, ROBERT L. LOVERD, ROBERT A. MEISTER, JANICE COOK ROBERTS, and THOMAS W. WHITE, and CENTERLINE HOLDING COMPANY* (Case No. 1:08-cv-00912-SAS-JCF); In the United States District Court for the Southern District of New York; deposition testimony November 18, 2008; testimony regarding the fairness of a preferred equity investment by an affiliate and related fiduciary issues and damages.

\*   *BENJAMIN SHIRK and RONALD JAUSS, individually and on behalf of all others similarly situated, vs. FIFTH THIRD BANCORP, et al.,* (Civil Action No. 05-cv-00049); In the United States District Court for the Southern District of Ohio, Western Division; deposition testimony November 13, 2008; testimony regarding lost profits and economic losses associated with alleged breaches of fiduciary duties and other acts related to investments in company stock in retirement plans.

\*   *AIR MEASUREMENT TECHNOLOGIES, INC. et al.  v. AKIN GUMP STRAUSS HAUER & FELD, L.L.P.* (Civil Action  No. SA 03 CA 0541 RF); In the United States District Court for the Western District of Texas, San Antonio Division; deposition testimony October 16, 2008; trial testimony April 20 and 21, 2009; testimony regarding  reasonable royalty rates and lost royalties associated with a portfolio of patents.

\*   *Cyberdyne Systems Inc. v. BGI, Inc.* (Case No. 06-2954-PHX-ROS);  In the United States District Court for the District of Arizona; deposition testimony August 18, 2008; testimony regarding preliminary analyses of claims of damages in a case involving claims of copyright infringement and breach of contract relating to an exclusive distribution agreement.

\*   *In re Stone Energy Securities Litigation*  (Civil Action No. 6:05CV2088p, 6:05CV2109, and 6:05CV2220); In the United States District Court for the Western District of Louisiana- Lafayette-Opelousas Division; deposition testimony June 18, 2008; testimony regarding market efficiency and reliance and loss causation relating to a motion for class certification relating to securities fraud claims involving overstated petroleum reserves.

\*   *Asher, et al. v. Baxter International, Inc.*   (Case No. CV 02-CV-5608, 5742, 5807, 6085, 6175, and 62567); In the United States District Court for the Northern District of Illinois; deposition testimony May 12, 2008; testimony regarding market efficiency and reliance, loss causation, and damages relating to securities fraud claims involving common stock.

\*   *Charles Moon and AISoft, Inc. v. Infoglide Software Corporation* (Cause No. D-1-GN-07-000747); 353rd Judicial District Court, Travis County, Texas; deposition testimony May 9, 2007; testified as to lost income due to severance and termination associated with allegations of wrongful termination.

\*   *Gordon Roundtree Motors, Ltd. v. Mazda Motor of America Inc. et al.;* (Case No. WA:06-CV--00251); In the United States District Court for the Western District of Texas, Waco Division; deposition testimony April 10, 2008; testimony regarding capitalization and capitalization ratios involving an application for the purchase of an automotive franchise; testimony in hearing before Texas Motor Vehicle Division August 29, 2008, regarding the financial condition and proposed capitalization of the subject dealership relative to manufacturer requirements.

\*   *In re Retek Inc. Securities Litigation* (Case No. CV 02-4209 JRT/AJB); In the United States District Court for the District of Minnesota; deposition testimony March 25, 2008; testimony regarding market efficiency and reliance, loss causation, and damages relating to securities fraud claims involving common stock.

\*   *In re Accredo Health Inc. Securities Litigation* (Civil Action No. 03-2216-BP); In the United States District Court for the Western District of Tennessee; deposition testimony March 10, 2008; testimony regarding market efficiency and reliance, loss causation, and damages relating to securities fraud claims involving common stock.

\*   *Planview, Inc. vs. Computer Associates International, Inc. et al.;* (Cause No. D-1-GN-06-001382); 345th Judicial District Court, Travis County, Texas; deposition testimony March 4, 2008; testified as to lost revenues and profits, unjust enrichment, and other issues relating to allegations of theft of trade secrets, tortuous interference with contractual relationships (including confidentiality, non-solicitation and non-competition agreements with employees of Planview), unfair competition, and other related causes of action.

\*   *In re Petco Corporation Securities Litigation* (Master File No. 05-CV-0823-H(RBB)); In the United States District Court for the Southern District of California; deposition testimony February 29, 2008; testimony regarding market efficiency and reliance, loss causation, and damages relating to securities fraud claims involving common stock.

* *In re Faro Technologies Securities Litigation* (Lead Case No. 6:05-cv-1810-Orl-22DAB); In the United States District Court for the Middle District of Florida, Orlando Division; deposition testimony February 1, 2008; testimony regarding market efficiency and reliance and loss causation relating to securities fraud claims involving common stock.

* *James Morton as Trustee for the James E. Morton Living Trust, vs. Merrill Lynch Pierce Fenner & Smith, Inc. and Presidio Capital Advisors, LLC,* (Case No. 2:06cv00236 DB); United States District Court, District of Utah, Central Division; deposition testimony February 12, 2008;; testimony regarding damages and measures of damages relating to certain block sales of common shares in alleged violation of plaintiff's instructions.

* *New Phoenix Sunrise Corporation and Subsidiaries v. Commissioner of Internal Revenue*, (Docket No. 23096-05); United Stated Tax Court; trial testimony January 22, 2007; testified as to the fairness, reasonableness and terms of certain foreign currency swaps.

* *MS Perry Company, Inc.; Michael Perry; Starr Perry; and Anisa International, Inc. vs. Mary Kay, Inc. et al.;* (Cause No. 05-00857); 68th Judicial District Court, Dallas County, Texas; deposition testimony December 3, 2007; testified as to revenues, unjust enrichment, lost profits and other issues relating to allegations of theft of trade secrets, breach of confidentiality agreements, and other related causes of action.

* *Premier Ambulatory Surgery of Austin, L.L.P. vs. Brown McCaroll, L.L.P., Hilgers & Watkins, P.C. and David Hilgers* (Cause No. D1-GN-06-003926); 200th Judicial District Court, Travis County, Texas; deposition testimony October 24, 2007; testified as to lost profits and lost purchase price consideration resulting from the loss of certain prospective partners associated with a surgical center.

* *In re Tower Automotive Securities Litigation (Civil Action No. 1:05-CV-01926-RWS);* United States District Court Southern District of New York; deposition testimony November 14, 2007; testimony regarding market efficiency and loss causation.

* *In re Forest Laboratories Securities Litigation* (Civil Action No. 05-CV-2827 (RMB)); In the United States District Court for the Southern District of New York; deposition testimony October 19, 2007; testimony regarding market efficiency and reliance, loss causation, and damages relating to securities fraud claims involving common stock.

* *Taffazzoli Family Limited Partnership, PMA Corp., Zum Tobel Holdings, Inc. v. Ralph L. Cruz, RLCF-I 1997 Limited Partnership, William R. Cruz, WRCF-I 1997 Limited Partnership, Marc J. Stone, Charles F. Wright, David H. Fleischman and Tradestation Group, Inc;* In the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida (Case No. 03-19815-CA40); deposition testimony September 24, 2007; testified as to materiality of alleged omissions, false and/or misleading statements relating to the sales of common shares by the plaintiffs in Tradestation Group and the losses or damages arising from those sales based on rescission and out-of-pocket damages.

* *Hubert Fu v. Baptist/ St. Anthony's Health System; Deborah McCollum; and, Amarillo Anesthesia Consultants, P.A.;* U.S. District Court for the Northern District of Texas, Amarillo Division (Civil Action No. 2-07CV-028-J); deposition testimony September 20, 2007; testified as to lost income and incremental expenses incurred as a result of defamation and other claims involving an anesthesiologist.

* *CHASE MEDICAL, LP v. CHF TECHNOLOGIES, INC. and ENDOSCOPIC TECHNOLOGIES, INC..;* U.S. District Court for the Northern District of Texas, Dallas Division (Civil Action No. 304 CV 2570 M); trial testimony September 12, 2007; testified as to the reasonable royalty and lost profits in a patent infringement and trademark infringement case involving a cardiovascular surgical procedure and device.

* *In re: CDX CORPORATION: CDX LIQUIDATING TRUST by the CDX LIQUIDATING TRUSTEE, vs. VENROCK ASSOCIATES, et al.;* U.S. Bankruptcy Court, Northern District of Illinois, Eastern Division

(Case No. 02-23467; Adversary Case No. 04A03018); deposition testimony August 30, 2007; testified as to the fairness of various non-arm's-length transactions and bridge loans involving the debtor corporation.

* *In re Parmalat Securities Litigation* (Master Docket No. 04-MD-1653 (LAK)); In the United States District Court for the Southern District of New York; deposition testimony August 16 and 17, 2007; testimony regarding market efficiency and reliance, loss causation, and damages relating to securities fraud claims involving common stock, preferred stock and bonds.

* *In re. Xcelera.Com Securities Litigation.;* United States District Court, District of Massachusetts, Boston, Massachusetts (Civil Action No. 00- CV-11649(RWZ)); deposition testimony August 9, 2007; hearing testimony April 25, 2008; testified as to loss causation and damages in a securities fraud case.

* *iValue Group, Inc. a/k/a Explore, Inc. v. M&A Technology, Inc. et al.; v. Julian Ross* (Cause No. 02-09794-B); In the 44th Judicial District Court, Dallas County, Texas; trial testimony August 2, 2007; testimony regarding errors in opposing expert's valuation analysis and speculative value of a failing dot.com enterprise.

* *Peter Kaltman, et al.; vs. Key Energy Services, Inc., et al.; (Case No. MO-04-CV-082);* In the United States District Court for the Western District of Texas, Midland-Odessa Division; deposition testimony August 6, 2007; testimony regarding market efficiency, reliance, and loss causation relating to a motion for class certification in securities fraud case.

* *Thomas G. Ong for Thomas G. Ong IRA and Thomas G. Ong, Individually and on behalf of all others similarly situated, v. Sears, Roebuck & Co., Sears Roebuck Acceptance Corp., et al.; (Case No. 03 C 4142);* In the United States District Court for the Northern District of Illinois, Eastern Division; deposition testimony July 26, 2007; testimony regarding market efficiency and reliance relating to a motion for class certification involving debt and preferred securities.

* *In re Credit Suisse-AOL Securities Litigation* (Civ. Action No. 02-15146-NG); In the United States District Court for the District of Massachusetts; deposition testimony July 10, 2007; testimony regarding market efficiency and reliance relating to a motion for class certification.

* *RICHARD WAGNER, MURIEL P. ENGELMAN, PHILIP SCHECHTER, IRA GAINES, and C.H. SMITH, Individually and on Behalf of all Other Similarly Situated vs. BARRICK GOLD CORP., RANDALL OLIPHANT, JOHN K. CARRINGTON, and JAMIE C. SOKALSKY,* (Case Nos. 1:03CV4302; 1:03CV5059; 1:03CV5104; 1:03CV5856;1:03CV6089); In the United States District Court For the Southern District of New York; deposition testimony June 27, 2007, testimony regarding market efficiency and loss causation related to a motion for class certification in a class action securities case; deposition testimony November 20, 2008, regarding market efficiency, loss causation and damages.

* *Suzanne Coates and 2055 Incorporated vs. Robert Coates,* 101st Judicial District Court, Dallas Texas (Cause No. 05-02456); trial testimony October 2007; testified as a fact witness on June 13, 2007, regarding a preliminary valuation analysis prepared for a company owned by a couple preparing for a divorce in 2002.

* *In re Worldcom, Inc., et al.; (Abbott Litigation Claims)* (Chapter 11 Case No.02-13533 (AJG)); In the United States Bankruptcy Court For the Southern District of New York; deposition testimony May 24, 2007; testimony regarding damages and insolvency associated with the merger of WorldxChange with World Access, Inc. in 2000.

* *Matt Brody, On Behalf of Himself and All Others Similarly Situated, vs. Zix Corporation, et al.;* (Civ. Action No. 3:04-CV-1931-K ECF); In the United States District Court For the Northern District of Texas-Dallas Division; deposition testimony May 17, 2007 and October 30, 2007; testimony regarding market efficiency and loss causation related to a motion for class certification in a class action securities case.

---

\* *Oscar Munoz, et al.; vs. AT&T Corp.* (Civil Action No. 06-cv-01205-PSF-MJW); In the United States District Court For the District of Colorado; deposition testimony May 7, 2007; testimony regarding the valuation of AT&T Wireless stock options vested and held by the Plaintiff, Oscar Munoz.

\* *In re Flag Telecom Holdings, Ltd. Securities Litigation* (Case No. 02-Civ. 3400 (WCC)); In the United States District Court For the Southern District of New York; deposition testimony May 2, 2007; testimony regarding market efficiency, tracing of shares to an offering and loss causation related to a motion for class certification in a class action securities case.

\* *156 Alliance Partners, Ltd. V. Susan Bonner Mead, Amy Col Griffin, and Don Cole, as Trustees for the M.T. Cole Trust No. 2, and M.T. Cole Trust No. 3* (Cause No. 2003-10038-16); 16th Judicial District, Denton County, Texas; deposition testimony April 18, 2007; hearing testimony May 8, 2008; testimony regarding the calculation of damages associated with claims of breach of contract and fraud involving a real estate transaction.

\* *Harvey Lapin vs. Goldman Sachs Group, Inc. et al.;* (No. 1:04-CV-02236-KMK); In the United States District Court For the Southern District of New York; deposition testimony April 5, 2007; testimony regarding market efficiency, materiality, and loss causation.

\* *ESTATE OF MARJORIE deGREEFF LITCHFIELD, DECEASED, GEORGE B. SNELL AND PETER deGREEFF JACOBI, CO-EXECUTORS, v. COMMISSIONER TO INTERNAL REVENUE* (Docket No. 15882-05); United States Tax Court; trial testimony April 12 and 13, 2007; testified as to the discounts for built-in capital gains, lack of control and lack of marketability of two corporations (with equity investments and agricultural real estate and operations representing the primary assets of the corporations).

\* *In re JDS Uniphase Corporation Securities Litigation* (Master File No. C-02-1486 CW (EDL)); In the United States District Court For the Northern District of California, Oakland Division; deposition testimony March 12 and 13, 2007; additional deposition testimony regarding supplemental report October 20, 2007; trial testimony November 1, 2 and 16, 2007; testimony regarding materiality, loss causation, and damages in a class action securities case.

\* *In re Enron Corporation Securities, Derivative and "ERISA" Litigation; LAMKIN et al.; vs. UBS PAINE WEBBER, INC., and UBS WARBURG LLC and, GIANCARLO vs. UBS FINANCIAL SERVICES, INC., UBS SECURITIES, L.L.C., and UBS AG* (MDL Docket No. 1446; Civil Action Nos. H-02-CV-0851 & H-03-4359, respectively); In the United States District Court For the Southern District of Texas, Houston Division; deposition testimony October 26, 2006; testimony regarding materiality, loss causation, solvency and damages in two class action securities cases involving customers and counter-parties of the defendants and Enron employees awarded stock options.

\* *F. L. Motheral Company d/b/a Motheral Printing Company vs. MLP, U.S.A., Incorporated, Mitsubishi & Company, (U.S.A.), Incorporated;* American Arbitration Association, Fort Worth, Texas (Arbitration No. 71 181 Y 00094 05); deposition testimony August 25 and September 20, 2006; testified regarding economic losses relating to allegedly defective printing equipment.

\* *In re Rhythms Securities Litigation;* (Case No. 02-K-35); In the United States District Court For the District of Colorado; deposition testimony July 21, 2006; testimony regarding materiality, loss causation, inflation per share and damages in a class action securities case.

\* *Rose Johnson, Individually and as Personal Representative of the Estate of Jay Johnson, and Thelma Johnson, Jason Johnson and Kindra Johnson, Individually v. Journeyman Construction, L.P.; Austex Concrete Construction, et al.;* (Cause No. GN-303431) 126th Judicial District, Travis County, Texas; deposition testimony July 11, 2006; testified as to the lost income associated with the death of Jay Johnson.

\* *In re Enron Corporation Securities Litigation; Mark Newby, et al.; vs. Enron Corp., et al.;* (MDL Docket No. 1446; Civil Action No. H-01-3624); In the United States District Court For the Southern District of Texas, Houston Division; deposition testimony May 8 and 9, 2006; testimony regarding materiality, loss causation, solvency and damages in a class action securities case in rebuttal to a number of expert reports for defendants.

\* *Thomas J. O'Neil, et al.; (Plaintiffs) v. Texas American Communications Network, Inc., et al.; (Defendants);* (Cause No. 67-210728-05) 17th Judicial District, Tarrant County, Texas; trial testimony May 3, 2006; testified as to the fair value of a small Internet service provider in a case involving breach of fiduciary duty, wrongful termination and destruction of business.

\* *Jeffrey H. Winokur, Individually and on Behalf of all Other Similarly Situated, vs. Direct General Corporation, et al.;* (Civil Action No. 3:05-0077); In the United States District Court, Middle District of Tennessee; deposition testimony April 7, 2006; testimony regarding materiality, loss causation and damages in a class action securities case.

\* *WRS Group, Ltd. And SJS Partnership v. United States* (Civil Action WA:05-CV-166); In the United States District Court, Western District of Texas, Waco Division; deposition testimony April 4, 2006; testified in rebuttal to and regarding the valuation of equity interests of a medical education company and relating allocation issues in an income tax dispute.

\* *Jules Adrian Carmack vs. John Dee Carmack II, Kevin Wayne Cloud and Id Software, Inc.;* 134th Judicial District, Dallas County, Texas; deposition testimony March 31, 2006; testified as to valuation of a computer game design company and related issues in a shareholder dispute regarding a buy-sell agreement, allegations of oppression and issues of fair value.

\* *In re Williams Sec. Litig.* (Case No. 02-CV-75-H(M)); In the United States District Court, Northeastern District of Oklahoma; deposition testimony March 22, 2006; testimony regarding materiality, loss causation and damages in a class action securities case.

\* *James Kelsoe, et al.; v. Texas United Excavators, L.L.C. and Leslie Lynn Cox;* (Cause No. 67-209655-05) Judicial District, Tarrant County, Texas; deposition March 9, 2006; testified as to lost household income and other support in a wrongful death case.

\* *In re Cigna Corporation Sec. Lit.* (Master File No. 2:02CV8088); In the United States District Court, Eastern District of Pennsylvania; deposition testimony March 7, 2006; testified as to issues of loss causation and damages.

\* *Windscape Holdings, Ltd. And Live Oak Holdings, Ltd. v. Wes Lochridge & Associates General Contractors, Inc.* (Cause No. 04-8259); 101st Judicial District, Dallas County, Texas; deposition February 27, 2006; testified in rebuttal to and regarding claims of lost rental income in apartments as result of alleged paint peeling.

\* *Joseph D. Martinec, Chapter 11 Trustee of WSNET Holdings, Inc. v. Ceberus Capital Management L.P., et al.;* 200th Judicial District, Travis County, Texas; deposition testimony December 15, 2005; testified as to valuation of a digital cable/satellite television provider.

\* *Vitamin Village, Inc. v. Commissioner of Internal Revenue* (Docket No. 8745-02) and *Universal Marketing, Inc. v. Commissioner of Internal Revenue* (Docket No. 8744-02); United States Tax Court; trial testimony December 9, 2005; testified as to issues related to reasonable compensation of two affiliated companies.

\* *Estate of Frederic C. Kohler v. Commissioner of Internal Revenue;* (Docket No. 4646-03); United States Tax Court; trial testimony December 7, 2005; valuation of minority shares of Kohler Inc.

---

* *In the Matter of the Marriage of Pamela Elaine White and Jeffrey Alan White;* 401st Judicial District, Collin County, Texas; deposition testimony November 8, 2005, trial testimony November 17, 2005; testified as to personal goodwill and business valuation.

* *In re Calpine Corporation Securities Litigation;* In the United States District Court, Northern District of California (N.D. Cal. Case No. C-02-1200 SBA (WDB)); deposition testimony October 6 and 7, 2005; testified as to Section 11 damages involving issued debt securities related to allegations of omissions regarding manipulation of the California energy markets in 2000 and 2001.

* *In re Omnicom Group Inc. Securities Litigation;* In the United States District Court, Southern District of New York (Case No. 02 Civ. 4483); deposition testimony September 14, 2005; and April 25, 2007; testified as market efficiency in relation to a motion for class certification in the first deposition and testified as to materiality, loss causation and damages in the second deposition.

* *In re: Metris Companies Inc. Securities Litigation;* In the United States District Court, District of Minnesota (Civil Action No. 02-CV-3677 JMR/FLN); deposition testimony August 15, 2005; testified as to materiality, inflation per share and aggregate damages in a class action securities case involving a subprime credit card lender.

* *Federal Home Loan Mortgage Corp. v. Commissioner,* United States Tax Court (Docket Nos. 3941-99, 15626-99 and 5829-02); trial testimony June 8 and 9, 2005; testified as to allocation of purchase price, valuation of intangible assets and favorable financing.

* *David Graben and Frank Strickler v. Western Reserve Life Assurance Company of Ohio; Intersecurities, Inc. and Timothy Hutton;* State District Court, 271st Judicial District, Wise County, Texas; deposition testimony March 29, 2005; trial testimony May 18, 2005; testified as to economic losses and prudent investment management involving the management of investment portfolios for two retired individuals.

* *Wechsler & Co., Inc. v. Commissioner of Internal Revenue,* United States Tax Court (Docket No. 9667-04); trial testimony March 24, 2005; prepared a written report and rebuttal report as testimony in a matter involving the determination of the reasonable compensation of a Chief Executive Officer of a broker-dealer specializing in trading convertible debt securities as a dealer and on its own account.

* *Stephen T. Davis, Individually and as Owner of Lone Star Phones v. Dobson Cellular Systems Inc. d/b/a CellularOne and Dobson Communications Corporation and Kelly Lane;* In the United States District Court for the Northern District of Texas, Dallas Division (Case No. 3-04-CV-0465 B); deposition testimony February 25, 2005; testified as to lost income associated with allegations of a breach of contract and wrongful termination of a dealership agreement.

* *In re: PE Corporation Securities Litigation;* In the United States District Court, District of Connecticut (Master File No. 3:00CV705(CFD))); deposition testimony February 23, 2005; testified as to materiality, inflation per share and aggregate damages in a class action securities case involving allegations of inadequate and misleading disclosures relating to a secondary offering of tracking shares.

* *Alpine International Corp. v. Texas Health Resources;* State District Court, 101st Judicial District, Dallas County, Texas; deposition testimony February 21, 2005; supplemental deposition October 3, 2005; trial testimony November 23, 2005; testified as to lost profits associated with a breach of a non-solicitation provision in a contract.

* *Michael Gloster and Victoria Gloster, t/a Gloster Marketing v. Relios, Inc., H. William Pollack, III, and Carolyn Pollack;* In the United States District Court, Eastern District of Pennsylvania (Cause No. 02-CV-7140); deposition testimony February 11, 2005; testified as to issues of valuation and profits involving claims of trademark and copyright infringement.

\*   *In re: Clarent Corporation Securities Litigation;* In the United States District Court, Northern District of California, San Francisco Division (Master File No. C-0103361CRB(JCS)); deposition testimony January 11, 2005; trial testimony January 31 and February 9, 2005; testified as to materiality, inflation per share and aggregate damages in a class action securities case involving allegations of accounting fraud against former officers of the company and the accounting firm for its audit.

\*   *In re: DQE, Inc. Securities Litigation;* In the United States District Court, Western District of Pennsylvania (Master File No. 01-1851); deposition testimony November 23, 2004; testified as to materiality, inflation per share and aggregate damages in a class action securities case.

\*   *In re: Worldcom, Inc. ERISA Securities Litigation;* In the United States District Court, Southern District of New York (Master File No. 02 Civ. 4816 (DLC)); deposition testimony November 15, 2004; testified as to discounts related to block size and information effects associated with the possible sale of shares of Worldcom and MCI tracking stock in the first half of the 2002.

\*   *Adele Brody, et al.; on behalf of themselves and all others similarly situated, vs. Peter S. Hellman, et al.;* District Court, City and County of Denver, State of Colorado; deposition testimony September 3, 2004, and May 27, 2005; hearing testimony November 30, 2004; testified as to the ability to measure damages to a class of shareholders via a plan of allocation.

\*   *In re: Broadcom Corp. Securities Litigation;* In the United States District Court, Central District of California, Southern Division (No. SACV 01-275 GLT (MLGx)); deposition testimony August 27 and 29, September 10, December 1 and 2, 2004, and January 21, 2005; testimony during hearings April 21 and May 25, 2005; testified as to materiality, valuation of customer contracts, valuation, inflation per share and aggregate damages in a securities class action and damages in a related private action.

\*   *Burt L. Schmidt, Individually and d/b/a Diamond S Trucking vs. Navistar Financial Corporation;* State District Court, Hamilton County, Texas; deposition testimony July 28, 2004; trial testimony August 30, 2004; testified in rebuttal as to claims of lost profits associated with the repossession of tractor trucks by the defendant in 2001.

\*   *Basic Management Inc, et al.; vs. United States of America, et al.;* In the United States District Court, District of Nevada (No. CV-S-02-0884-RCJ-(RJJ)); deposition testimony July 22 and 23, 2004; testified in rebuttal as to appropriate assumptions and methods (including discount rates and appreciation rates) for a real estate development company in Nevada.

\*   *In re. JTS Corporation, Suzanne L. Decker, Trustee, vs. Roger W. Johnson, et al.;* In the United States Bankruptcy Court, Northern District of California, (No. 98-59752 MM; A.P. No. 00-5423); deposition testimony July 15, 2004; trial testimony April 11, 2005; testified in rebuttal to trustee's expert as to economic losses to creditors and reasonable value associated with certain business decisions.

\*   *Randy S. Myers, Individually and on Behalf of all others Similarly Situated, vs. Progressive Concepts, Inc. d/b/a Hawk Electronics*; 352nd Judicial District, Tarrant County, Texas (Cause No. 352-201156-03); deposition testimony July 2, 2004; testified as to the appropriate measure of damages involving allegations of improper billing involving cell phone services.

\*   *OnSite Technology LLC vs. Duratherm, Inc. et al.;* In the United States District Court for the Southern District of Texas (Civil Action No. H-02-2624); trial testimony June 10, 2004; testified as to lost profits and reasonable royalties as a result of allegations of patent infringement.

\*   *ATS Telecommunications Systems, Inc. and ATS Liquidating, Inc. f/k/a Advanced Telecommunications Systems, Inc., by and through its Plan Agent H. Malcolm Lovett, Jr. vs. Philip R. Lacerte and Four LC Trust vs. Stan M. Gorman, Sr., and D. Scott Pool;* 113th Judicial District, Harris County, Texas (Cause No. 2001-00997); deposition testimony May 25, 2004; testified as to reasonable and customary terms

and consideration for the provision of performance guarantees, reasonable start-up and operating expenses, and issues of fraud and breach of fiduciary duty.

* *ISG Operations, Inc. vs. National Heritage Insurance Company, Inc.*; 250th Judicial District, Travis County, Texas (Cause No. 95-11014); deposition testimony May 11, 2004; trial testimony April 25, 2005; testified as to appropriate measures for calculation lost profits in a breach of contract claim involving data processing.

* *Xperex Corporation, et al.; vs. Viasystems Technologies Corp., LLC*; Court of Chancery, New Castle County, State of Delaware (Civil No. 20582-NC); deposition testimony April 23, 2004; testified as to the valuation of intangible assets and business related to allegations of fraudulent conveyance and breach of fiduciary duty to creditors.

* *Richard Marcoux, on behalf of himself and all others similarly situated, v. Billy D. Prim, Andrew J. Filipowski, et al.;* County of Forsyth, State of North Carolina (No. 04 CvS 920); deposition testimony April 12, 2004; testified as to errors in a fairness opinion issued in a proposed acquisition of a public company.

* *Houston Saba, L.P. vs. Nick Hernandez and Boyd Page Inc. d/b/a Boyd Page & Associates*; 280th Judicial District, Harris County, Texas (Cause No. 2003-07457); deposition testimony March 31, 2004; testified as lost profits associated with disruption of a restaurant due to street repairs and construction.

* *Autoland of New Jersey, Inc., et al.; v. Commissioner of Internal Revenue;* U.S. Tax Court (Docket number 12639-02); testified in trial February 19, 2004; testified as to issues related to the reasonable compensation of executives in the auto retail business.

* *Soils Control International, Inc. vs. Martin Marietta Magnesia Specialties, L.L.C. and Midwest Industrial Supply, Inc;* United States Court, District of Massachusetts (Civil Action No. A-03-CA-531 H); deposition testimony January 30, 2004; testified as to lost profits in a dispute relating to allegations of deceptive trade practices.

* *In re Raytheon Company Securities Litigation;* United States Court, District of Massachusetts (Civil Action No. 99-12142 (PBS)); deposition testimony January 27, 2004; testimony in hearings May 3 and 7, 2004; testified as to materiality, causation, inflation per share and aggregate damages.

* *In re:  AT&T Corp Securities Litigation;* United States District Court of New Jersey (MDL No. 1399, Civil Action No. 01-1883 (GEB)); Consolidation Class Action on Behalf of the Purchasers of AT&T Wireless Tracking Stock Shares between April 27 and May 1, 2000; deposition testimony January 16, 2004; testified as to materiality, causation, inflation per share and aggregate damages.

* *Robert Rodgers vs. Johnson Health Tech. Co., Ltd., Epix, Inc. d/b/a Vision Fitness, et al.;* United States District Court for the Western District of Texas, Austin Division (Civil Action No. A 02 CA 731 SS); deposition testimony January 7, 2004; testified as to reasonable royalties and damages for alleged patent infringement.

* *In re. Xcelera.Com Securities Litigation.;* United States District Court, District of Massachusetts, Boston, Massachusetts (Civil Action No. 00- CV-11649(RWZ)); hearing testimony November 20 and 21, 2003; testified as to materiality, reliance and market efficiency in a hearing on class certification.

* *C. F. Jordan, L.P. v. Argosy Gaming Company, Laneco Construction Systems, and Louisiana Glass*, AAA Arbitration (Case Number 71 110 01059 01); deposition testimony November 18, 2003; testified in rebuttal to allegations of lost income from hotel construction and remediation activities.

* *ELIZABETH M. KURECKA, Individually and as Representative of the estate of Edward Kurecka, Deceased, MICHAEL KURECKA, TIM KURECKA, and MELANIE KURECKA POWELL v. DAVID H.*

---

*AMMONS, M.D., GARY R. GODSIN, M.D., and MICHAEL PETTIBON, M.D.*; 342nd Judicial District, Tarrant County, Texas; deposition testimony September 2003; testified as to the loss of income to the survivors in a wrongful death case.

* *Betsy Gross v. David Halbert and AdvancePCS*; 352nd Judicial District, Tarrant County, Texas (Cause No. 352-196123-02); deposition testimony August 26, 2003; testified at trial November 10 and 11, 2004; testified as to the valuation of executive stock options.

* *Michael Aldridge, Individually and on Behalf of All Other Similarly Situated, vs. A. T. Cross Corporation; Bradford R. Boss; Russell A. Boss; et al.*; United States District Court, District of Rhode Island (C.A. No. 00-203 (ML)); deposition testimony August 19, 2003; testified as to materiality, causation and damages in a securities class action.

* *In Re Broadcom Corp. Securities Litigation*; United States District Court, Central District of California, Southern Division (Master File No. SACV 01-275 GLT (Eex)); deposition testimony July 29 and 30, 2003; testified as to the market efficiency of the trading of Broadcom shares and aggregate damages calculations relating to class certification.

* *J. Bryan Pickens vs. John T. Pickens, J. Michael Tiner, Michael K. Pickens, C. Robert Milner, Jr., Pickens Financial Group, L.L.C., Pickens Resource Corp., and Pickens, Ltd.*; 298th Judicial District, Dallas County, Texas (Cause No. 02-01105); deposition testimony July 11, 2003; testified as to the overall financial performance of certain companies and the fairness (or benefits to the plaintiff) of certain transactions involving the defendant companies and affiliated trusts.

* *In re Arthur Franklin Tyler, Jr., Debtor; Arthur Franklin Tyler, Jr., v. Tywell Manufacturing Corporation*; U.S. Bankruptcy Court, Northern District of Texas, Dallas Division (Case No. 01-80343-SAF-13; Adversary No. 02-3530); trial testimony July 1, 2003; testified as to net asset value under various assumptions in an involuntary shareholder foreclosure/shareholder oppression dispute.

* *FFP Partners, L.P. v. Jack J. Ceccarelli, Restructure Petroleum Marketing Services, Inc. f/k/a E-Z Serve Petroleum Marketing Company and Environmental Corporation of America, Inc.*; American Arbitration Association (Case No. 71-Y-198-00167-02); hearing testimony May 19, 2003; testified as to the value of gas-only operations related to allegations of breach of contract, breach of fiduciary duty and theft of business opportunities.

* *RadioShack Corporation, and TE Electronics, L.P. vs. Fried, Frank, Harris, Shriver & Jacobson and Harvey Pitt*; United States District Court, Northern District of Texas, Ft. Worth Division (Civil Action No. 4:02-CV-0639-TV); deposition testimony May 9, 2003; testified as to causation and damages as a result of allegations of legal malpractice.

* *Printwrap, Inc. v. Printwrap Sales, Inc. and Maxine Ammon*; 134th Judicial District, Dallas County, Texas (Cause No. 02-5064-G); deposition testimony May 6, 2003; testified as to the valuation and economic losses of a purchase of a specialty printing business as a result of allegations of material misrepresentations on the part of the seller.

* *In re Theragenics Corp. Securities Litigation*; United States District Court, Northern District of Georgia, Atlanta Division (Civil Action No. 1:99-CV-141-TWT); deposition testimony April 2, 2003, and August 14, 2003; testified as to materiality, causation, inflation per share and damages as a result of allegations of securities fraud (violations of the Securities Exchange Act of 1934, Rule 10b-5).

* *Teleplus, Inc., v. Avantel, S.A.*; United States District Court, Western District of Texas, San Antonio Division (Civil No. SA-98-CA-0849 FB); deposition testimony March 26, 2003; trial testimony September 25, 26 and 29, 2003; testified as to the valuation of a reseller and marketer of long-distance telephone services (primarily for domestic and international service in Mexico).

---

\* *Russell Grigsby vs. ProTrader Group Management, L.L.C., et al.;* American Arbitration Association (Cause No. 70-180-00648-02); deposition testimony March 7, 2003; arbitration hearing testimony October 17 and November 3, 2003; testified in a fraud and shareholder oppression case as to the fair value of a brokerage firm with specialization in day trading.

\* *Donald P. Williams vs. Peter O. Holliday, III, MD, and Open MRI of Decatur;* Circuit Court of Morgan County, Alabama (Case Number: CV-00-974); testified at trial March 4, 2003; testified as to the value of loan guarantees and the value of a business operating an MRI in a shareholder oppression lawsuit.

\* *Menard, Inc. v. Commissioner of Internal Revenue;* U.S. Tax Court; testified in trial February 27, 2003; testified as to the compensation of executives in comparable and guideline companies and the proper valuation of incentive compensation benefits.

\* *Richard Strauss, Sovereign Texas Homes, ltd., et al.; vs. Wallace Sanders & Company, et al.;* 191st Judicial District, Dallas County, Texas (Cause No. 02-2562-J); deposition testimony February 14 and 20, 2003; testified as to materiality, causation, and damages as a result of allegations of improper accounting.

\* *Paul Dzera, Philip J. Gund and Stephen Marotta v. Zolfo Cooper, L.L.C.;* American Arbitration Association (Arbitration no. 18Y180143301), Newark, New Jersey; hearing testimony February 11, 2003; testified as to measures of economic loss associated with claims brought by defendant.

\* *In re VISIONAMERICA, INC. SECURITIES LITIGATION;* United States District Court, Middle District of Tennessee, Nashville Division (Master File No. 3-00-0279); deposition testimony December 12, 2002; testified as to materiality, causation, inflation per share and damages as a result of allegations of securities fraud involving accounting misstatements (violations of the Securities Exchange Act of 1934, Rule 10b-5).

\* *In re National Golf Properties, Inc. Shareholder Litigation; (Masseo Investment Partners, Ltd., Anne Marie Rouleau, Thomas Feiman, IRA and Robert Lewis, On Behalf of Themselves and All Others Similarly Situated, vs. James M. Stanich, et al.;* Superior Court of the State of California, County of Los Angeles (Lead Case No. BC268215); deposition testimony November 22, 2002; testified as to fairness and problems with a fairness opinion involving a proposed acquisition of the public REIT, including process, disclosure and allocations of proceeds problems.

\* *Ralph R. Unstead, Jr., On behalf of Himself and All Other Similarly Situated, v. Intelect Communications, Inc., et al.;* U.S. District Court for the Northern District of Texas, Dallas Division (No. 3:99-CV-2604-M); deposition testimony October 31, 2002; testified as to materiality, causation and damages in a class action securities case.

\* *Physicians Resource Group, Inc. and EyeCorp, Inc., vs. Dr. David Meyer, et al.;* U.S. Bankruptcy Court, Northern District of Texas, Dallas Division; deposition testimony October 22, 2002; trial testimony February 7, 2002; testified as to issues of solvency and reasonably equivalent damages as a result of certain transactions between the defendants and the plaintiffs prior to bankruptcy.

\* *Maximicer, L.L.C., vs. PepsiCo, Inc.;* U.S. District Court for the Eastern District of Texas, Marshall Division (No. 2-01-CV-132(tjw)); deposition testimony October 21, 2002; trial testimony December 10, 2002; testified as to damages arising from claims of commercial defamation and other causes.

\* *HALCYON INVESTMENTS INC., f/k/a B.A.S.S., Inc., et al.; vs. B.A.S.S., LLC, f/k/a LIVEWELL ACQUISITION, LLC, B.A.S.S. (IP)., et al.;* AAA Arbitration (File No. 30 E 181 00434 02); deposition testimony October 10, 2002; testified as to due diligence, disclosures and economic damages estimates involving an agreement to sell a business between the parties (subject to confidentiality agreement).

---

\* *Jerry Krim, et al.; v. pcOrder.com, Inc., et al.*; U.S. District Court for the Western District of Texas, Austin Division (Master File No. A:00-CA-776-SS); hearing testimony September 20, 2002; testified in a class certification hearing on the trading of shares and source of shares purchased by proposed lead plaintiffs.

\* *APA EXCELSIOR III L.P., APA EXCELSIOR III OFFSHORE, L.P.,APA/FOSTIN PENNSYLVANIA VENTURE CAPITAL FUND, CIN VENTURE NOMINEES LIMITED, STUART A. EPSTEIN and DAVID EPSTEIN, v. PREMIERE TECHNOLOGIES, INC.,BOLAND T. JONES, PATRICK G.JONES, GEORGE W. BAKER, SR., and RAYMOND H. PIRTLE, JR*; U.S. District Court for the Northern District of Georgia (Civil Action No. 1:99-CV-1377-JOF); deposition testimony September 4, 2002; testified as to the materiality of certain representations and damages in a securities case.

\* *Microtune, L.P. v. Broadcom Corporation*; U.S. District Court for the Eastern District of Texas, Sherman Division (Civil Action No. 4:01-CV-023); deposition testimony August 29, 2002; testified as to the reasonable royalty in a patent infringement case.

\* *John F. Havens, On Behalf of Himself and All Others Similarly Situated, vs. James L. Pate, et al.; and Howard Lasker, On Behalf of Himself and All Others Similarly Situated, vs. James L. Pate, et al.*; 295th Judicial District, Harris County, Texas (Cause No. 2002-16085); deposition testimony July 15, 2002; hearing testimony July 18, 2002; testified as to the materiality of certain information omitted from a proxy to Pennzoil-Quaker State shareholders, issues with respect to the fairness opinion analysis by Pennzoil's financial advisor, the determination of fairness and issues with respect to mergers and acquisitions.

\* *Lawrence D. Poliner, M.D. v. Texas Health Systems, et al.*; U.S. District Court, Northern District of Texas, Dallas Division (Civil Action No. 3:00CV1007-P); deposition testimony May 20, 2002; testified as to certain anti-competitive issues involving a specialist medical practice.

\* *In re: Chartwell Health Care, Inc.; John H. Litzler, Chapter 7 Trustee, vs. Irving D. Boyes, et al.*; U.S. Bankruptcy Court, Northern District of Texas, Dallas Division (Case No. 398-38546-SAF-7); deposition testimony April 25, 2002; testified as to solvency and economic losses of a nursing home operator.

\* *Leonard Sauls, Jr., v. The Estate of William Lee Hatch, Jr., Deceased, et al.*; In the Probate Court Number One, Travis County, Texas (Cause No. 75278-A); deposition testimony March 22, 2002; testified as to the measurement of lost future earning capacity, case settled before issuance of deposition transcript.

\* *Leland Stenovich, et al., vs. Spencer F. Eccles, et al.*; Third Judicial District Court, Salt Lake County, State of Utah (Class Action, Case No. 000907870); deposition testimony February 5 and 6, 2002; testified as to standards of practice, fairness and adequacy of consideration in a class action lawsuit relating to the acquisition of First Security Corporation by Wells Fargo.

\* *In re Computer Associates Class Action Securities Litigation*; U.S. District Court for the Eastern District of New York (Master File No. 98-CV-4839); deposition testimony January 23 and 24, 2002; testified as to materiality, causation and damages in a securities fraud lawsuit.

\* *Pamela Graham Reeves vs. VIJ, Inc. d/b/a National Utilities Co./NUCO and Greer Industries, Inc.*; U.S. District Court for the Northern District of Texas-Fort Worth Division (Case No. 400=CV-1671-BE); trial testimony January 19, 2002; testified as to market wages, current job market and likelihood of employment for an individual alleged to have been wrongfully terminated.

\* *Patricia E. Vincent and James R. Vincent v. Bank of America Texas, N.A..*; In the 68th Judicial District Court, Dallas County, Texas (Cause No. DV99-00745); testimony in hearing in December 2000 and trial testimony December 18, 2001; testified as to the proper calculation of interest on a home mortgage and common standards and practices for calculating mortgage interest.

\*    *Joan C. Howard and Charles A. Anderson, on behalf of themselves and all others similarly situated vs. Everex Systems, Inc., and Steven L.W. Hui, et al.;* U.S. District Court for the Northern District of California (Case No. C 92 3742 CAL); deposition testimony November 19 and 20 and December 17, 2001; testified as to materiality, causation and damages in a securities fraud lawsuit.

\*    *Reinsurance International Services Company, L.L.C. v. Lambert Fenchurch Group Limited, et al.;* In the 98th Judicial District Court, Travis County Texas   (Civil Action No. 99-00745); deposition testimony September 20, 2001; testified as to lost profits and lost business value experienced by a reinsurance broker relating to allegations of misrepresentations and breach of duty.

\*    *Robert Alpert, James Ventures, L.P., Markus Investments, Inc. and James Investments, Inc. vs. Innovative Valve Technologies, Inc., et al.;* U.S. District Court for the Southern District of Texas, Houston Division (Civil Action No. H-01-076); deposition testimony September 19, 2001; testified as to materiality, causation and damages in a securities fraud lawsuit.

\*    *Premier Lifestyles International Corporation vs. Electronic Clearing House, Inc.; XpresscheX, Inc., et al.;* Superior Court for the State of California, County of Los Angeles (Case No. BC230691); deposition testimony September 17 and 27, 2001; trial testimony November 27 and 28, 2001; testified as to lost business opportunities and damages arising from various causes of action.

\*    *In re Phycor Corporation Securities Litigation;* U.S. District Court for the Middle District of Tennessee, Nashville Division (Civil Action No. 3-98-0834); deposition testimony August 9 and November 6, 2001; testified as to materiality, causation and damages in a securities class action lawsuit.

\*    *Ben Higbee and Bridgestone Healthcare Management, Inc., vs. Bridgestone Healthcare Management, Inc., and David E. Sones;* 101st Judicial District, Dallas County, Texas (Cause No. 00-7365-3); deposition testimony June 21, 2001; testified as to preliminary findings as to fairness of certain transactions involving a workers' compensation and rehabilitation business.

\*    *Auto Wax Co., Inc. v. Mark V Products, Inc.;* U.S. District Court for the Northern District of Texas, Dallas Division (Civil Action No. 3-99 CV 0982-T); deposition testimony April 25, 2001; trial testimony June 29, 2001; testified as to the reasonable royalty and lost profits in a patent infringement and trademark infringement case.

The Average Salary of Entry Level Software Engineers | eHow.com



Home » Careers & Work » Careers » Computer Software Jobs » The Average Salary of Entry Level Software Engineers

# The Average Salary of Entry Level Software Engineers

By Jennifer Eblin, eHow Contributor
updated: April 1, 2010

## Median Salary

The median salary of an entry-level software engineer was $55,840 in 2009. The median was determined by examining open positions listed by companies as well as income figures reported by those working in the field. Those with more experience or a master's degree can expect a higher salary.

## Percentiles

The bottom percentile of those working as an entry-level software engineer reported earning a median salary of $50,070 as of 2009. This means that fresh out of school you can expect to earn around $50,000 when you're just starting out. A smaller number of recent graduates and those working in entry-level positions reported earning nearly $62,000 a year. These jobs typically went to those with more experience or education.

## Geography

Geography plays a role in average salaries due to the cost of living. This is the amount of money you need to bring home in order to fund the basic necessities of life. In certain parts of the country such as Manhattan and Washington D.C., the cost of living is much higher than it is in other areas. These positions often offer more money for entry-level positions.

## Considerations

If you're enrolled in college courses, you should consider working in the field or completing an internship where you gain on-the-job experience. This sets you apart from other applicants and helps you find higher-paying positions once you graduate. You should also consider advanced studies, which will also help your chances starting out.

## Growth

As computer technology continues to grow, so will the demand for qualified software engineers. The U.S. Bureau of Labor Statistics expects growth in the field through 2016. As demand for engineers grows, the starting salary likely will, too. You can also expect your annual salary to grow as you gain more experience, with many software engineers earning more than six figures.

# References

- Salary
- Pay Scale
- U.S. Bureau of Labor Statistics

Average Software Engineer Salary in Texas | eHow.com                                     Page 1 of 2



# Average Software Engineer Salary in Texas

By Ian Graham, eHow Contributor
updated: May 11, 2010

# Categories

In May 2008, there were 33,480 computer applications software engineers working in Texas, not including those who were self-employed. These workers make or modify general computing applications and develop custom software for clients. Slightly more Texans—33,940 in 2008—worked as computer systems software engineers, designing, making and testing operating systems software for general and specific purposes.

# Hourly Wage

Computer systems software engineers are slightly better paid, on average, than computer applications software engineers in Texas, making a mean hourly wage of $43.50 compared to $42.98 for computer applications software engineers. Mean hourly wages are calculated by adding the hourly wages of all computer software engineers and dividing by the total number of people working as computer software engineers.

# Annual Salary

The annual salary in Texas for a computer systems software engineer in 2008 was $90,490, while for a computer applications software engineer it was $89,390. The Bureau of Labor Statistics arrives at these figures by multiplying the mean hourly wage by 2,080 hours, the amount a person working 40 hours per week would work if they were employed year-round, not including overtime.

# Median Wages

The median wages for Texas software engineers in 2008 were $42.54 per hour for those working in computer applications and $43.62 per hour for those working in systems software. On an annual basis, the median salaries were $88,470 for computer applications software engineers and $90,730 for computer systems software engineers. Median wages are those at which there are equal numbers of software engineers making more or less than that wage.

# Percentile Wages

The lowest-paid 10th of computer applications software engineers in Texas made $27.97 per hour or less in 2008, equivalent to $58,170 or less on an annual basis. For computer systems software engineers, the bottom 10 percent on the wage scale made $27.58 per hour or less, which works out to $57,730 or less annually. The best-paid 10 percent of computer applications software engineers made $60.93 per hour ($126,730 per year) or more. Among computer systems software engineers, the highest-paid 10 percent made $62.14 per hour or more, equivalent to $129,240 per year or higher.

# State Ranking

In terms of mean hourly wages in 2008, Texas ranked 11th in the nation for computer applications software engineers and 17th in the United States for computer systems software engineers.

# References

- Occupational Employment Statistics:Computer Software Engineers, Applications
- Occupational Employment Statistics:Computer Software Engineers, Systems Software

# Photo Credit

man finger on the enter key. image by mashe from Fotolia.com

Salary.com's Salary Wizard™- Know what to pay                                                                Page 1 of 2

**salary.com™**
Small Business

**Individual Job Reports      Subscriptions**

## HR Salary Wizard®

Search Job Titles      Select Job      **Salary Range**      Premium Product

**Base Salary**          **Bonuses**          **Benefits**

Base pay only

**Application Systems Architect** – U.S. National Averages          Methodology  New Search  Help



|  | 10th% | 25th% | 75th% | 90th% |
|--|--|--|--|--|

$80,256      $87,694      $104,720      $112,784

*Source: HR Reported data as of September 2010*

**Get a Custom Answer**
Customized information will help ensure you make a competitive offer. Create a detailed **Job Valuation Report** in 1 minute or less.

Continue ›

---

**Individual Reports**          Purchase ›

- Personalize your job report for an individual job or a specfic employee

- Build your report based on critical information such as Education, Years of experience, Performance, # of direct reports and more.

- Leverage comprehensive pay information and job descriptions for more than 3,700 benchmark jobs or price hybrid positions by blending benchmark jobs

- Base your descsions on an accurate, detailed report built on the most current 100% employer reported compensation data.

- Create and download your personalized report in minutes

**Benchmark Individual Jobs Easily And Accurately For As Low As $39.95 Each.**

Purchase ›

**Subscriptions**          Subscribe ›

- Salary.com Professional is an affordable compensation software solution for companies up to 350 employees

- Streamline pay benchmarking using a single, centralized tool

- Leverage comprehensive pay information and job descriptions for more than 3,700 benchmark jobs or price hybrid positions by blending benchmark jobs.

- Ensure accuracy with automatic monthly data updates

- Keep your salaries competitive with all the data you need in a single source

- Attract and retain top talent with validated, competitive pay information

**Ensure Up-To-Date Pay Information For As Little As $49.92 A Month.**

Subscribe ›

Salary.com's Salary Wizard™- Know what to pay



**Quick Links**

| **Salary** | **Job Search** | **Education** | **Advice** |
| --- | --- | --- | --- |
| Salary Wizard® | Job Search Wizard | Education Wizard | Articles |
| Benefits Calculator | Job Alerts | College Tuition Planner | Glossary |
| Executive Pay Wizard | Job Assessor | Education Advice | Newsletter Sign Up |
| Cost of Living Calculator | Browse Jobs | | RSS Feeds |
| Premium Salary Report | Unemployment Information | | Twitter |
| Salary Wizard Canada | Job Search Advice | | Facebook |
| Performance Self-Test | | | |
| Salary Negotiation Advice | | | |

**Salary.com**

about us | news | events | careers | investor relations | site map | contacts us      ©2010 Salary.com, Inc. All rights reserved.      Privacy Policy | Legal

Salary.com's Salary Wizard™- Know what to pay



Individual    Employer

Register | Login

**salary.com**
Small Business

**Individual Job Reports**    **Subscriptions**

## HR Salary Wizard®

Search Job Titles    Select Job    **Salary Range**    Premium Product

**Base Salary**    |    **Bonuses**    | |    **Benefits**    |

Total compensation (base + bonuses + benefits)

**Application Systems Architect** - U.S. National Averages    Methodology  New Search  Help

| Benefit | Median Amount | % of Total |
|---|---|---|
| Base Salary | $95,863 | 67.9% |
| Bonuses | $8,192 | 5.8% |
| Social Security | $7,960 | 5.6% |
| 401k / 403b | $3,954 | 2.8% |
| Disability | $1,041 | 0.7% |
| Healthcare | $6,103 | 4.3% |
| Pension | $5,203 | 3.7% |
| Time Off | $12,807 | 9.1% |
| **Total** | **$141,123** | **100%** |

**Get a Custom Answer**

Customized information will help ensure you make a competitive offer. Create a detailed **Job Valuation Report** in 1 minute or less.

Continue ›

*Source: HR Reported data as of September 2010*

**Individual Reports**    Purchase ›

• Personalize your job report for an individual job or a specfic employee

• Build your report based on critical information such as Education, Years of experience, Performance, # of direct reports and more.

• Leverage comprehensive pay information and job descriptions for more than 3,700 benchmark jobs or price hybrid positions by blending benchmark jobs

• Base your descsions on an accurate, detailed report built on the most current 100% employer reported compensation data

• Create and download your personalized report in minutes

**Benchmark Individual Jobs Easily And Accurately For As Low As $39.95 Each.**

Purchase ›

**Subscriptions**    Subscribe ›

• Salary.com Professional is an affordable compensation software solution for companies up to 350 employees.

• Streamline pay benchmarking using a single, centralized tool.

• Leverage comprehensive pay information and job descriptions for more than 3,700 benchmark jobs or price hybrid positions by blending benchmark jobs

• Ensure accuracy with automatic monthly data updates.

• Keep your salaries competitive with all the data you need in a single source

• Attract and retain top talent with validated, competitive pay information

**Ensure Up-To-Date Pay Information For As Little As $49.92 A Month.**

Subscribe ›

Salary.com's Salary Wizard™- Know what to pay                    Page 2 of 2



**Quick Links**

| Salary | Job Search | Education | Advice |
|---|---|---|---|
| Salary Wizard® | Job Search Wizard | Education Wizard | Articles |
| Benefits Calculator | Job Alerts | College Tuition Planner | Glossary |
| Executive Pay Wizard | Job Assessor | Education Advice | Newsletter Sign Up |
| Cost of Living Calculator | Browse Jobs | | RSS Feeds |
| Premium Salary Report | Unemployment Information | | Twitter |
| Salary Wizard Canada | Job Search Advice | | Facebook |
| Performance Self-Test | | | |
| Salary Negotiation Advice | | | |

Salary.com

about us | news | events | careers | investor relations | site map | contacts us          ©2010 Salary.com, Inc. All rights reserved.    Privacy Policy | Legal

Salary.com's Salary Wizard™- Know what to pay

Page 1 of 2

**salary.com**
Small Business

**Individual Job Reports     Subscriptions**

## HR Salary Wizard®

Search Job Titles     Select Job     Salary Range     Premium Product

**Base Salary          Bonuses          Benefits**



Base pay only

Applications Programmer – U.S. National Averages     Methodology   New Search   Help

**Get a Custom Answer**
Customized information will help ensure you make a competitive offer. Create a detailed **Job Valuation Report** in 1 minute or less.

Continue

Source: HR Reported data as of September 2010

**Individual Reports**     Purchase

- Personalize your job report for an individual job or a specfic employee
- Build your report based on critical information such as Education, Years of experience, Performance, # of direct reports and more
- Leverage comprehensive pay information and job descriptions for more than 3,700 benchmark jobs or price hybrid positions by blending benchmark jobs
- Base your descsions on an accurate, detailed report built on the most current 100% employer reported compensation data
- Create and download your personalized report in minutes

**Benchmark Individual Jobs Easily And Accurately For As Low As $39.95 Each.**

Purchase

**Subscriptions**     Subscribe

- Salary.com Professional is an affordable compensation software solution for companies up to 350 employees
- Streamline pay benchmarking using a single, centralized tool
- Leverage comprehensive pay information and job descriptions for more than 3,700 benchmark jobs or price hybrid positions by blending benchmark jobs
- Ensure accuracy with automatic monthly data updates
- Keep your salaries competitive with all the data you need in a single source
- Attract and retain top talent with validated, competitive pay information

**Ensure Up-To-Date Pay Information For As Little As $49.92 A Month.**

Subscribe

Salary.com's Salary Wizard™- Know what to pay                                    Page 2 of 2



**Quick Links**

| Salary | Job Search | Education | Advice |
|---|---|---|---|
| Salary Wizard® | Job Search Wizard | Education Wizard | Articles |
| Benefits Calculator | Job Alerts | College Tuition Planner | Glossary |
| Executive Pay Wizard | Job Assessor | Education Advice | Newsletter Sign Up |
| Cost of Living Calculator | Browse Jobs | | RSS Feeds |
| Premium Salary Report | Unemployment Information | | Twitter |
| Salary Wizard Canada | Job Search Advice | | Facebook |
| Performance Self-Test | | | |
| Salary Negotiation Advice | | | |

**Salary.com**

about us | news | events | careers | investor relations | site map | contacts us          ©2010 Salary.com, Inc. All rights reserved.   Privacy Policy | Legal

Salary.com's Salary Wizard™- Know what to pay

Page 1 of 2



Individual   Employer

Register | Login

salary.com®
Small Business

**Individual Job Reports**   **Subscriptions**

### HR Salary Wizard®

Search Job Titles     Select Job     **Salary Range**     Premium Product

**Base Salary**          **Bonuses**          **Benefits**

Total compensation (base + bonuses + benefits)

Applications Programmer – U.S. National Averages          Methodology   New Search   Help

| Benefit | Median Amount | % of Total |
|---|---|---|
| Base Salary | $72,300 | 71.1% |
| Bonuses | $1,319 | 1.3% |
| Social Security | $5,632 | 5.5% |
| 401k / 403b | $2,798 | 2.8% |
| Disability | $736 | 0.7% |
| Healthcare | $6,103 | 6.0% |
| Pension | $3,681 | 3.6% |
| Time Off | $9,061 | 8.9% |
| **Total** | **$101,630** | **100%** |

Source: HR Reported data as of September 2010

**Get a Custom Answer**

Customized information will help ensure you make a competitive offer. Create a detailed **Job Valuation Report** in 1 minute or less.

Continue ›

**Individual Reports**     Purchase ›

• Personalize your job report for an individual job or a specific employee

• Build your report based on critical information such as Education, Years of experience, Performance, # of direct reports and more

• Leverage comprehensive pay information and job descriptions for more than 3,700 benchmark jobs or price hybrid positions by blending benchmark jobs

• Base your descsions on an accurate, detailed report built on the most current 100% employer reported compensation data

• Create and download your personalized report in minutes

**Benchmark Individual Jobs Easily And Accurately For As Low As $39.95 Each.**

Purchase ›

**Subscriptions**     Subscribe ›

• Salary.com Professional is an affordable compensation software solution for companies up to 350 employees

• Streamline pay benchmarking using a single, centralized tool

• Leverage comprehensive pay information and job descriptions for more than 3,700 benchmark jobs or price hybrid positions by blending benchmark jobs

• Ensure accuracy with automatic monthly data updates

• Keep your salaries competitive with all the data you need in a single source.

• Attract and retain top talent with validated, competitive pay information

**Ensure Up-To-Date Pay Information For As Little As $49.92 A Month.**

Subscribe ›

Case 2:08-cv-00422-TJW   Document 156-2   Filed 10/29/10   Page 43 of 72 PageID #:  1747

Salary.com's Salary Wizard™- Know what to pay



**Quick Links**

**Salary**
Salary Wizard®
Benefits Calculator
Executive Pay Wizard
Cost of Living Calculator
Premium Salary Report
Salary Wizard Canada
Performance Self-Test
Salary Negotiation Advice

**Job Search**
Job Search Wizard
Job Alerts
Job Assessor
Browse Jobs
Unemployment Information
Job Search Advice

**Education**
Education Wizard
College Tuition Planner
Education Advice

**Advice**
Articles
Glossary
Newsletter Sign Up
RSS Feeds
Twitter
Facebook

**Salary.com**
about us | news | events | careers | investor relations | site map | contacts us          ©2010 Salary.com, Inc. All rights reserved.     Privacy Policy | Legal

Salary.com's Salary Wizard™- Know what to pay                                    Page 1 of 2



Individual   Employer                                                           Register | Login

**salary.com** Small Business

**Individual Job Reports**    **Subscriptions**

**HR Salary Wizard®**

Search Job Titles     Select Job     **Salary Range**     Premium Product

**Base Salary**          **Bonuses**          **Benefits**

Base pay only

Business Application Delivery Manager – U.S. National Averages        Methodology   New Search   Help

10th%   25th%   75th%   90th%

**Get a Custom Answer**
Customized information will help
ensure you make a competitive
offer. Create a detailed **Job
Valuation Report** in 1 minute or
less.

Continue ›

$81,777   $94,272   $123,064   $136,784

Source: HR Reported data as of September 2010

**Individual Reports**      Purchase ›       **Subscriptions**        Subscribe ›

• Personalize your job report for an individual job or a specfic
  employee

• Build your report based on critical information such as
  Education, Years of experience  Performance, # of direct
  reports and more.

• Leverage comprehensive pay information and job
  descriptions for more than 3,700 benchmark jobs or price
  hybrid positions by blending benchmark jobs

• Base your descsions on an accurate, detailed report built on
  the most current 100% employer reported compensation
  data

• Create and download your personalized report in minutes

**Benchmark Individual Jobs Easily And Accurately As For As
Low As $39.95 Each.**
                                        Purchase ›

• Salary com Professional is an affordable compensation
  software solution for companies up to 350 employees

• Streamline pay benchmarking using a single, centralized
  tool

• Leverage comprehensive pay information and job
  descriptions for more than 3,700 benchmark jobs or price
  hybrid positions by blending benchmark jobs

• Ensure accuracy with automatic monthly data updates

• Keep your salaries competitive with all the data you need in
  a single source

• Attract and retain top talent with validated, competitive pay
  information

**Ensure Up-To-Date Pay Information For As Little As $49.92
A Month.**
                                        Subscribe ›

Salary.com's Salary Wizard™- Know what to pay



**Quick Links**

**Salary**
Salary Wizard®
Benefits Calculator
Executive Pay Wizard
Cost of Living Calculator
Premium Salary Report
Salary Wizard Canada
Performance Self-Test
Salary Negotiation Advice

**Job Search**
Job Search Wizard
Job Alerts
Job Assessor
Browse Jobs
Unemployment Information
Job Search Advice

**Education**
Education Wizard
College Tuition Planner
Education Advice

**Advice**
Articles
Glossary
Newsletter Sign Up
RSS Feeds
Twitter
Facebook

**Salary.com**

about us | news | events | careers | investor relations | site map | contacts us          ©2010 Salary.com, Inc. All rights reserved.     Privacy Policy | Legal

Salary.com's Salary Wizard™- Know what to pay                                                        Page 1 of 2



Individual   Employer                                                                              Register | Login

**salary.com™**
*Small Business*

**Individual Job Reports    Subscriptions**

### HR Salary Wizard®

Search Job Titles      Select Job      **Salary Range**      Premium Product

**Base Salary** |          **Bonuses** | |      **Benefits** |

Total compensation (base + bonuses + benefits)

Business Application Delivery Manager - U.S. National Averages          Methodology  New Search  Help

| Benefit | Median Amount | % of Total |
|---|---|---|
| Base Salary | $107,995 | 66.4% |
| Bonuses | $13,376 | 8.2% |
| Social Security | $8,381 | 5.2% |
| 401k / 403b | $4,612 | 2.8% |
| Disability | $1,214 | 0.7% |
| Healthcare | $6,103 | 3.8% |
| Pension | $6,069 | 3.7% |
| Time Off | $14,938 | 9.2% |
| **Total** | **$162,689** | **100%** |

**Get a Custom Answer**

Customized information will help ensure you make a competitive offer. Create a detailed **Job Valuation Report** in 1 minute or less.

Continue ›

*Source: HR Reported data as of September 2010*

**Individual Reports**    Purchase ›

- Personalize your job report for an individual job or a specfic employee

- Build your report based on critical information such as Education, Years of experience, Performance, # of direct reports and more

- Leverage comprehensive pay information and job descriptions for more than 3,700 benchmark jobs or price hybrid positions by blending benchmark jobs

- Base your descsions on an accurate, detailed report bulit on the most current 100% employer reported compensation data.

- Create and download your personalized report in minutes

**Benchmark Individual Jobs Easily And Accurately For As Low As $39.95 Each.**

Purchase ›

**Subscriptions**    Subscribe ›

- Salary.com Professional is an affordable compensation software solution for companies up to 350 employees

- Streamline pay benchmarking using a single, centralized tool

- Leverage comprehensive pay information and job descriptions for more than 3,700 benchmark jobs or price hybrid positions by blending benchmark jobs

- Ensure accuracy with automatic monthly data updates

- Keep your salaries competitive with all the data you need in a single source.

- Attract and retain top talent with validated, competitive pay information

**Ensure Up-To-Date Pay Information For As Little As $49.92 A Month.**

Subscribe ›

Salary.com's Salary Wizard™- Know what to pay



**Quick Links**

**Salary**
Salary Wizard®
Benefits Calculator
Executive Pay Wizard
Cost of Living Calculator
Premium Salary Report
Salary Wizard Canada
Performance Self-Test
Salary Negotiation Advice

**Job Search**
Job Search Wizard
Job Alerts
Job Assessor
Browse Jobs
Unemployment Information
Job Search Advice

**Education**
Education Wizard
College Tuition Planner
Education Advice

**Advice**
Articles
Glossary
Newsletter Sign Up
RSS Feeds
Twitter
Facebook

**Salary.com**
about us | news | events | careers | investor relations | site map | contacts us          ©2010 Salary.com, Inc. All rights reserved.    Privacy Policy | Legal

California Overtime Pay Laws For California Computer Professionals, Programmers and Software Engin...   Page 1 of 2



**Law Office of Melissa C. Marsh**

Los Angeles, California Business Attorney With 10+ Years Experience
Serving All of Southern California

Contact Us:
13527 Huston Street
Sherman Oaks, CA 91423
Tel: 818-849-5206
Tel: 323-655-1002
E-mail: legalcorner@aol.com

| Home | About Us | Areas of Practice | Articles | Testimonials | Client Alerts (Blog) | Useful Links | Map/Directions | Contact Us |

Keyword Search: [        ]   Request a Telephone Consultation!   VISA ● ● PayPal   A A A

# California Overtime Pay Laws For California Computer Professionals, Programmers and Software Engineers

### Employment Law:
$65* Tel. Consult
At Will Employment
Hiring Employees In CA
Hiring Mistakes
Retracting a Job Offer
Background Check
Employee Reference
Employee Offer Letter
Employee or Contractor?
Ask the IRS
Independent Contractors
Exempt From Overtime?
Computer Professionals
Overtime Penalties
Salespersons
Primer of CA Wage Laws
Partial Day Absences
Non -Disclosure Agreements
Nonsolicitation Agreements
Noncompete Agreements
Primer on Trade Secrets
Employee Personnel Files
Employee Policies
(Handbooks)
Employee E-mail Policy
Telecommuting Policy
Sexual Harassment
Age Discrimination
Domestic Partners
Defamation
New COBRA Rules
Severance Pay Agmts
Wrongful Termination

### Related Practice Areas:
● Business Transactions
● Corporations
● Internet-Computer Law
● Landlord-Tenant
● Limited Liability Company
● Partnerships
● Real Estate Law
● Trademark & Copyright
● Wills & Trusts

**CALL 818-849-5206 if you want to form a California Corporation or LLC to: (1) prevent creditors of your business or investment real estate from taking your personal assets, and to (2) asset protect your personal assets from business debts, obligations & liabilities.**

**October 2008**

## California Overtime Pay Laws For California Computer Professionals, Programmers and Software Engineers
Prepared By: Melissa C. Marsh, Los Angeles Employment Attorney

**Update**: For 2009, to be exempt from California's overtime laws under the **computer professional overtime exemption** codified in Labor Code §515.5, the computer professional must earn at least $79,050 annually ($6,587.50 monthly and $37.94 hourly) and still meet the duties requirements as set forth below.

Although many computer professionals and programmers are treated as salaried employees exempt from overtime, the fact is that not all computer professionals are exempt from overtime. Pursuant to California law, only certain highly compensated computer systems analysts, programmers and software engineers who satisfy both the minimum salary test ($36 per hour for 2008; $37.94 per hour for 2009) and the following criteria are exempt from overtime.

**1. Job Duties.** The computer professional must spend more than 50% of his or her time in work that is "intellectual or creative" and requires the exercise of discretion and independent judgment, and the computer professional's primary duties must consist of one or more of the following:

● systems analysis, including consulting with users, to determine hardware, software or system functional specifications; OR
● design, development, documentation, analysis, creation, or modification of computer systems or programs, including prototypes, based on and related to, user or system design specifications; OR
● documenting, testing, creating, or modifying the design of a computer software or hardware.

**2. Skill Level/Compensation.** The computer professional must be highly skilled and proficient in the theoretical and practical application of highly specialized information to computer systems analysis, programming, or software engineering. Additionally, the employee must earn at least $37.94 per hour or a salary of $79,050 per year (up from $75,000 in 2008). This compensation level will be adjusted each year based on the increase in the Consumer Price Index for Urban Wage Earners and Clerical Workers.

**3. Specific Exceptions.** Employees in the following computer related jobs are NOT exempt from overtime under this Computer Professional Exemption:

● Trainees or entry-level employees;
● Employees in computer -related occupations lacking the expertise to work independently;
● Employees engaged in the operation of computers or in the manufacture, repair, or maintenance of computer hardware and related equipment;
● Engineers, drafters, machinists, or other professional employees whose work is highly dependent upon or facilitated by the use of computers and computer software programs and who are skilled in computer-aided design software, including CAD/CAM;
● Writers engaged in writing content material either for print or for onscreen media; and
● Computer professionals engaged in creating imagery for effects used in motion picture, television, or theatrical industries.

**Conclusion.**

In sum, the **computer programmer overtime exemption** codified in California Labor Code §515.5 may provide some overtime relief for employers of highly skilled and highly compensated computer professionals, but it is not a broad based exemption for high tech employees. California employers should also be aware that computer professionals who are properly classified as exempt from overtime (through job duties and hourly wage) are still entitled to the required meal and rest breaks.

*Our employment law practice consists of: (1) assisting employees with their wage claims and (2) counseling employers who seek to comply with new state and federal employment laws, providing human resource training, and providing essential contracts and employee policies to prevent employee lawsuits. To schedule a consultation, please call 818-849-5206 or Send Us An Email.*

**Related Articles:**

● California Penalties For Failing To Pay Overtime To Non-Exempt Employees

California Overtime Pay Laws For California Computer Professionals, Programmers and Software Engin...   Page 2 of 2

- California Overtime Laws Extend To Out-Of-State Employers Who Send Employees to California
- California Law on Paying Salespeople Their Expenses, Overtime and Commission

California employment lawyer, Melissa C. Marsh  is  based in Sherman Oaks and West Hollywood, and serves individuals and businesses throughout Los Angeles County,  including:  West Hollywood, Miracle Mile, Beverly Hills, Century City, Santa Monica, Burbank, North Hollywood, Valley Village, Toluca Lake, Studio City, Sherman Oaks, Van Nuys,  Encino, and Woodland Hills.

© 2008 Melissa C. Marsh. All Rights Reserved.

If you have any questions, or would like further information, please e-mail us at legalcorner@aol.com, or call: 818-849-5206.

Disclaimer: The  information presented on this web site was prepared by Melissa C. Marsh for general informational purposes only and does not constitute legal advice. The information provided in my articles and alerts should not be relied upon, or used as a substitute for professional legal advice from an attorney you retain to advise or represent you. Your use of this Internet site does not create an attorney- client relationship. Transmission of this article is not intended to create, and receipt of it does not  constitute,  an  attorney-client relationship. All uses of the contents of this site, other than personal uses, are prohibited. You may print or email a copy of any information posted on this web site for your own personal, non-commercial, use, but you may not publish any of the articles or posts on this web site without the Express Written Permission of Melissa C. Marsh.

Home | Request a Consultation | Practice Areas | Articles | Client Alerts | Testimonials | Directions | Terms of Use | Privacy Policy | Contact Us | Site Map
Copyright© 1998 - 2010, Melissa C. Marsh. All Rights Reserved.
Website Design By DK Web Design

Located in Los Angeles, California, the Law Office of Melissa C. Marsh handles business law and corporation law matters as a lawyer for clients throughout Los Angeles including Burbank, Sherman Oaks, Studio City, Valley Village, North Hollywood, Woodland Hills, Hollywood, West LA as well as Riverside County, San Fernando, Ventura County, and Santa Clarita. Attorney Melissa C. Marsh has considerable experience handling business matters both nationally and internationally. We routinely assist our clients with incorporation, forming a California corporation, forming a California llc, partnership, annual minutes, shareholder meetings, director meetings, getting a taxpayer ID number (EIN), buying a business, selling a business, commercial lease review, employee disputes, independent contractors, construction, and personal matters such as preparing a will, living trust, power of attorney, health care directive, and more.

Quality Assurance Engineers Overtime - California QA Engineer Overtime - LawyersAndSettlements.com   Page 1 of 2

 



Discover what thousands of your colleagues already know.

Information Management
Legal Technology
eDiscovery
Careers
Events

PivotalDiscovery.com

What are you looking for?

Search

Search 10,000 recent
cases and settlements

Home Page  >>  Emerging Issues  >>  Quality Assurance Engineer

  

# California Quality Assurance Engineer Overtime

**Quality Assurance** (QA) Engineers are among the most misclassified types of software engineers. It is important to understand that the job description of "software engineer" has changed drastically. The main reason is due to automation. Twenty years ago software engineers were involved with the design, testing, implementation, and release of programs from the ground up. That is not true today and that is why you rarely see the title '**computer programmer**'.

## FREE CASE EVALUATION

Send your California QA Engineer Overtime claim to a Lawyer who will review your case at **NO COST** or obligation.

### CLICK HERE

### California QA Engineer Overtime

The QA engineer's job has become more functional. A QA engineer's duties focus on making sure customer and company requirements are systematically and reliably satisfied. However, QA engineers are not typically involved in true design and often they exercise minimal discretion and independent judgment. If the duties performed regularly are routine, repetitive, automated, or are not intellectually varied in nature, then they are probably owed a lot of overtime pay.

### Do You Qualify for Overtime?

If you are a QA engineer and you perform many automated and repetitive duties, there is a strong chance that you are owed overtime in California, regardless of your quality assurance engineer pay or title—either salary or hourly wages. However, there is a caveat: If you are paid on an hourly basis, California has a minimum rate that must be paid for every hour you work.

### Minimum Wage Rate

As of January 1, 2008 the California Legislature passed a new law that will effectively eliminate overtime for a large portion of California's computer programmers. The law "resets" the minimum hourly rate of pay to $36.00 per hour. In 2001, a base rate of pay of $41.00 per hour was set, provided that it increase by a cost-of-living increase each year. Following these increases, the minimum pay was $49.77 for 2007. However, the new law sets the base rate to $36.00 and the cost-of-living increases will start being based on this number for 2009.

### Statute of Limitations

Quality assurance engineers, software engineers, or computer programmers are advised to contact a California labor law attorney immediately because the landscape in the industry is changing rapidly.

### California Quality Assurance Engineer Overtime Legal Help

If you or a loved one has suffered damages in this case, please click the link below and your complaint will be sent to a lawyer who may evaluate your claim at no cost or obligation.

---

**CALIFORNIA QA ENGINEER OVERTIME ARTICLES AND INTERVIEWS**

**California QA Engineer Overtime—the Pros and Cons of Filing a Claim**



*Palo Alto, CA:* Increasingly, California Quality Assurance (QA) engineers who are salaried and classified as exempt find themselves working around the clock and **California QA overtime** is just part of the job. QA engineers are typically well-educated and well-paid, yet many of them don't even know they are entitled to overtime compensation. And if they do know, many are afraid of retaliation, particularly in this economic climate. [READ MORE]

**California QA Engineers Misclassified as Exempt Entitled to Overtime**



*Sacramento, CA:* For many Quality Assurance (QA) engineers, long hours and low pay are standard. However, they may be entitled to **California QA Engineer Overtime**, mainly because an employer has misclassified employees as exempt from the wage and hour laws, and has improperly failed to pay overtime. And in some cases, QA engineers have been classified as independent contractors, meaning the company doesn't even have to pay them benefits. [READ MORE]

**YOUR CALIFORNIA QA ENGINEER OVERTIME STORIES**

Publish your California QA Engineer Overtime experience here for our readers to learn from.

[SHARE YOUR STORY]

---

**California QA Engineer Overtime Legal Help Now!**

**CLICK HERE**

- **Lawyers, click here to advertise.**

**Related Cases**

- BP ERISA
- Wrongful Termination
- Overtime - National
- ERISA / Employee Stock Options
- Employment Law - California

**Legal Services:**

- Lawyer Directory
- Free Newsletter
- Email this Page to a Friend

Quality Assurance Engineers Overtime - California QA Engineer Overtime - LawyersAndSettlements.com   Page 2 of 2

**Please click here for a free evaluation of your California QA Engineer Overtime case**

*Last updated on Feb-25-09*

FAQ | TOS | Privacy | Disclaimer | About Us | Contact Us | Press | Advertise | Member Login | Link to Us | Site Map

© 2001-2010 Online Legal Media. All rights reserved.

Salary.com's Salary Wizard™- Know what to pay

Page 1 of 2

Individual    Employer

Register | Login



**Individual Job Reports    Subscriptions**

### HR Salary Wizard®

Search Job Titles    Select Job    **Salary Range**    Premium Product

**Base Salary** | **Bonuses** | **Benefits**

Base pay only

Client Technologies Manager - U.S. National Averages    Methodology    New Search    Help

**Get a Custom Answer**
Customized information will help ensure you make a competitive offer. Create a detailed **Job Valuation Report** in 1 minute or less.

Continue ›

Source: HR Reported data as of September 2010

## Individual Reports    Purchase ›

• Personalize your job report for an individual job or a specific employee

• Build your report based on critical information such as Education, Years of experience, Performance, # of direct reports and more

• Leverage comprehensive pay information and job descriptions for more than 3,700 benchmark jobs or price hybrid positions by blending benchmark jobs

• Base your descsions on an accurate, detailed report built on the most current 100% employer reported compensation data

• Create and download your personalized report in minutes

**Benchmark Individual Jobs Easily And Accurately For As Low As $39.95 Each.**

Purchase ›

## Subscriptions    Subscribe ›

• Salary com Professional is an affordable compensation software solution for companies up to 350 employees

• Streamline pay benchmarking using a single, centralized tool

• Leverage comprehensive pay information and job descriptions for more than 3,700 benchmark jobs or price hybrid positions by blending benchmark jobs.

• Ensure accuracy with automatic monthly data updates

• Keep your salaries competitive with all the data you need in a single source

• Attract and retain top talent with validated, competitive pay information

**Ensure Up-To-Date Pay Information For As Little As $49.92 A Month.**

Subscribe ›

Salary.com's Salary Wizard™- Know what to pay



**Quick Links**

**Salary**
Salary Wizard®
Benefits Calculator
Executive Pay Wizard
Cost of Living Calculator
Premium Salary Report
Salary Wizard Canada
Performance Self-Test
Salary Negotiation Advice

**Job Search**
Job Search Wizard
Job Alerts
Job Assessor
Browse Jobs
Unemployment Information
Job Search Advice

**Education**
Education Wizard
College Tuition Planner
Education Advice

**Advice**
Articles
Glossary
Newsletter Sign Up
RSS Feeds
Twitter
Facebook

**Salary.com**

about us | news | events | careers | investor relations | site map | contacts us     ©2010 Salary.com, Inc. All rights reserved.     Privacy Policy | Legal

Salary.com's Salary Wizard™- Know what to pay

Page 1 of 2



Individual   Employer

Register | Login

**salary**.com
Small Business

**Individual Job Reports**      **Subscriptions**

### HR Salary Wizard®

Search Job Titles      Select Job      **Salary Range**      Premium Product

**Base Salary**                **Bonuses**                **Benefits**

Total compensation (base + bonuses + benefits)

Client Technologies Manager - U.S. National Averages                Methodology   New Search   Help

| Benefit | Median Amount | % of Total |
|---------|---------------|------------|
| Base Salary | $97,930 | 69.6% |
| Bonuses | $5,725 | 4.1% |
| Social Security | $7,930 | 5.6% |
| 401k / 403b | $3,939 | 2.8% |
| Disability | $1,037 | 0.7% |
| Healthcare | $6,103 | 4.3% |
| Pension | $5,183 | 3.7% |
| Time Off | $12,758 | 9.1% |
| Total | $140,603 | 100% |

**Get a Custom Answer**

Customized information will help ensure you make a competitive offer. Create a detailed **Job Valuation Report** in 1 minute or less.

Continue ›

Source: HR Reported data as of September 2010

**Individual Reports**      Purchase ›

● Personalize your job report for an individual job or a specific employee

● Build your report based on critical information such as Education, Years of experience, Performance, # of direct reports and more

● Leverage comprehensive pay information and job descriptions for more than 3,700 benchmark jobs or price hybrid positions by blending benchmark jobs

● Base your descsions on an accurate, detailed report built on the most current 100% employer reported compensation data

● Create and download your personalized report in minutes

**Benchmark Individual Jobs Easily And Accurately For As Low As $39.95 Each.**

Purchase ›

**Subscriptions**      Subscribe ›

● Salary com Professional is an affordable compensation software solution for companies up to 350 employees

● Streamline pay benchmarking using a single, centralized tool

● Leverage comprehensive pay information and job descriptions for more than 3,700 benchmark jobs or price hybrid positions by blending benchmark jobs

● Ensure accuracy with automatic monthly data updates

● Keep your salaries competitive with all the data you need in a single source

● Attract and retain top talent with validated, competitive pay information.

**Ensure Up-To-Date Pay Information For As Little As $49.92 A Month.**

Subscribe ›

Salary.com's Salary Wizard™- Know what to pay



**Quick Links**

**Salary**
Salary Wizard®
Benefits Calculator
Executive Pay Wizard
Cost of Living Calculator
Premium Salary Report
Salary Wizard Canada
Performance Self-Test
Salary Negotiation Advice

**Job Search**
Job Search Wizard
Job Alerts
Job Assessor
Browse Jobs
Unemployment Information
Job Search Advice

**Education**
Education Wizard
College Tuition Planner
Education Advice

**Advice**
Articles
Glossary
Newsletter Sign Up
RSS Feeds
Twitter
Facebook

**Salary.com**

about us | news | events | careers | investor relations | site map | contacts us          ©2010 Salary.com, Inc. All rights reserved.    Privacy Policy | Legal

# Overtime for Non-Academic Staff
# FLSA - Overtime Eligibility & Exemption

## FLSA Requirements

The Fair Labor Standards Act (FLSA) requires that most workers receive overtime pay at 1.5 times the employee's regular pay rate for all hours worked over 40 hours in a seven day workweek, and that employees be paid at least the federal minimum wage. The UW terms positions that are covered by FLSA regulations "overtime-eligible".

The overtime webpage explains:

- How to find out whether a current classified position has been designated as overtime eligible or overtime exempt.
- Overtime payment requirements.
- University policy regarding compensatory time accumulation and payment.
- How overtime may be legally offered contingent on an employee's willingness to accept compensatory time off in lieu of overtime payment.

The work time record keeping webpage describes how overtime eligible employees' work time records must be kept and maintained.

### Other Laws & Collective Bargaining Agreements

The FLSA establishes minimum standards that may be exceeded, but cannot be waived or reduced. Employers must comply with any federal, state or municipal laws, regulations or ordinances, or collective bargaining agreements or employer implemented policies that provide greater benefits than those established by the FLSA.

When state laws differ from the federal FLSA, an employer must comply with the standard most generous to employees.

## FLSA Overtime Exemption Standards

To be exempt from FLSA overtime regulations a position's salary amount **and** job duties must meet criteria specified in the regulations. These criteria are referred to as the "salary basis" and "duties" tests, respectively. Some types of "blue collar" and "Police, Fire Fighters, Paramedic & Other First Responder" work do not qualify for exemption by definition. These types of work are described below.

The Compensation Office is responsible for applying the "tests" to determine the positions that are covered by the FLSA overtime regulations. This determination is normally made at the time a position is created and may be reviewed when a position is reviewed for reclassification (classified titles) or for salary or title assignment (professional staff positions). To request that a position's FLSA status be reviewed, contact the Compensation Office.

All of the following requirements must be met for a position to be exempt from the FLSA overtime payment requirement:

1. The position must be paid on a salary (not hourly) basis, except for certain computer workers (see the Computer Professional Exemption). Being paid on a salary basis means that an employee is paid the same amount per workweek regardless of the hours the employee actually works, consistent with a position's percent time.
2. The position must be paid at least **$455** per week, regardless of percent time worked: e.g. a half-time employee who is paid $454 per week and a full-time employee who is paid $454 per week are both overtime covered, regardless of their job duties, even though the full-time equivalent pay for the half time employee is actually $908 per week.
3. The position's job duties must meet the **duties test** for one or more for one of the exemption categories—see below.

## FLSA Exemption Categories & Checklists

The following are summaries of the FLSA-defined exemption criteria. Checklists for the most commonly applied exemption criteria may be used to help employees and managers assess whether a position is likely to be covered by or exempt from the FLSA overtime regulations. A link to the checklist follows the exemption category description. Some terms have special meanings as applied by the FLSA regulations. See the FLSA Terms & Definitions webpage.

FLSA Requirements

The exemption categories in the following list are described below.

- Executive Exemption
- Administrative Exemption
- Learned or Creative Professional Exemption
- Computer Professional Exemption
- Highly Compensated Employees
- Outside Sales Exemption

## Executive Exemption

To qualify for the executive exemption, all of the following tests must be met:

- The employee must be compensated on a salary basis (as defined in the regulations) at a rate not less than $455 per week;
- The employee's primary duty must be managing the enterprise, or managing a customarily recognized department or subdivision of the enterprise;
- The employee must customarily and regularly direct the work of at least two or more other full-time employees or their equivalent; and
- The employee must have the authority to hire or fire other employees, or the employee's suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees must be given particular weight.

Executive Exemption Checklist

## Administrative Exemption

To qualify for the administrative exemption, all of the following tests must be met:

- The employee must be compensated on a salary or fee basis (as defined in the regulations) at a rate not less than $455 per week;
- The employee's primary function must be to perform office or non-manual work that is directly related to the management or general business operations of the employer or the employer's customers; and
- The employee's primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.

Administrative Exemption Checklist

## Learned or Creative Professional Exemption

To qualify for the learned professional exemption, all of the following tests must be met:

- The employee must be compensated on a salary or fee basis (as defined in the regulations) at a rate not less than $455 per week;
- The employee's primary duty must be to perform work requiring advanced knowledge, defined as work which is predominantly intellectual in character and which requires the consistent exercise of discretion and judgment;
- The advanced knowledge must be in a field of science or learning, such as law, medicine, nursing, accounting, actuarial computation, engineering, education, and various types of physical, chemical, and biological sciences; and
- The advanced knowledge must be customarily acquired by a prolonged course of specialized intellectual instruction.

To qualify for the creative professional exemption, all of the following tests must be met:

- The employee must be compensated on a salary or fee basis (as defined in the regulations) at a rate not less than $455 per week;
- The employee's primary duty must be to perform work requiring invention, imagination, originality or talent in a recognized field of artistic or creative endeavor, such as music, writing, acting, and the graphic arts.

Learned or Creative Professional Exemption Checklist

## Computer Professional Exemption

To qualify for the computer professional exemption, the following tests must be met:

FLSA Requirements                                                                                     Page 3 of 3

- The employee must be compensated **either** on a salary or fee basis (as defined in the regulations) at a rate not less than $455 per week **or**, if compensated on an hourly basis, at a rate not less than $27.63 an hour;
- The employee must be employed as a computer systems analyst, computer programmer, software engineer, or other similarly skilled worker in the computer field; and,
- The employee's primary duty must consist of:
  - The application of systems analysis techniques and procedures, including consulting with users, to determine hardware, software or system functional specifications;
  - The design, development, documentation, analysis, creation, testing or modification of computer systems or programs, including prototypes, based on and related to user or system design specifications;
  - The design, documentation, testing, creation, or modification of computer programs related to machine operating systems; or
  - A combination of the aforementioned duties, the performance of which requires the same level of skills.

Computer Professional Exemption Checklist

## Highly Compensated Employees

Employees performing office or non-manual work and who are paid total annual compensation of $100,000 or more (which must include at least $455 per week paid on a salary or fee basis) are exempt from FLSA overtime regulations if they customarily and regularly perform at least one of the duties of an exempt executive, administrative, or learned or creative professional employee identified in the standard tests for exemption.

## Outside Sales Exemption

To qualify for the outside sales employee exemption, all of the following tests must be met:

- The employee's primary duty must be making sales (as defined in the FLSA), or obtaining orders or contracts for services or for the use of facilities for which a consideration will be paid by the client or customer; and
- The employee must be customarily and regularly engaged away from the employer's place or places of business.

Outside Sales Exemption Checklist

# Duties that do not qualify for FLSA Overtime Exemption

## Blue Collar Workers

The exemptions apply only to "white collar" employees who meet the salary and duties tests (see below) set forth in the regulations. The exemptions do not apply to manual laborers or other "blue collar" workers who perform work involving repetitive operations with their hands, physical skill and energy. FLSA-covered, non-management employees in production, maintenance, construction and similar occupations such as carpenters, electricians, mechanics, plumbers, iron workers, craftsmen, operating engineers, longshoremen, construction workers, and laborers are entitled to overtime premium pay under the FLSA, and are not exempt under the regulations no matter how highly paid they might be.

## Police, Fire Fighters, Paramedics & Other First Responders

FLSA overtime exemptions do not apply to police officers, detectives, deputy sheriffs, state troopers, highway patrol officers, investigators, inspectors, correctional officers, parole or probation officers, park rangers, fire fighters, paramedics, emergency medical technicians, ambulance personnel, rescue workers, hazardous materials workers, and similar employees, regardless of rank or pay level, who perform work such as preventing, controlling or extinguishing fires of any type; rescuing fire, crime or accident victims; preventing or detecting crimes; conducting investigations or inspections for violations of law; performing surveillance; pursuing, restraining and apprehending suspects; detaining or supervising suspected and convicted criminals, including those on probation or parole; interviewing witnesses; interrogating and fingerprinting suspects; preparing investigative reports; or other similar work.

PayScale - Senior Software Engineer Salary, Average Salaries                                      Page 1 of 3



PayScale - Senior Software Engineer Salary, Average Salaries

Page 2 of 3



PayScale - Senior Software Engineer Salary, Average Salaries



Advertisement

*i* **More Charts** for Senior Software Engineer Jobs

**Most Popular Years Experience for Job: Senior Software Engineer**
Median Salary Charts

1-4 years
5-9 years
10-19 years
20 years or more

More ▸

**Most Popular Employer Type for Job: Senior Software Engineer**
Median Salary Charts

Company
Private Practice/Firm
Government - Federal
Non-Profit Organization
Other Organization

More ▸

**More Salary Reports for Job: Senior Software Engineer**

| | |
|---|---|
| Median Salary by Years Experience | Median Salary by Skill/Specialty |
| Median Salary by Employer Type | Median Salary by Industry |
| Median Salary by State or Province | Median Salary by Gender |
| Median Salary by City | Median Salary by Employer Name |
| Median Salary by Company Size | Median Salary by Degree/Major Subject |
| Median Salary by Certification | Median Salary by School Name |

**More Survey Reports for Job: Senior Software Engineer**

| | |
|---|---|
| Salary | Popular Tallies |
| Hourly Rate | Commute Time |
| Bonus | Profit Sharing |
| Vacation Weeks | |

Show All

Privacy Notice: PayScale takes your privacy seriously and is sensitive to the nature of information collected on this site.

Syndicate PayScale Data | Privacy Policy | Terms of Use | About PayScale | PayScale Blogs
PayScale, The PayScale Report and People Like You are Trademarks of PayScale, Inc.
© 2000 - 2010 PayScale, Inc. All rights reserved. Patents Pending.

**Some jobs are EXEMPT from these overtime payment requirements.**

The rules governing exemptions are very narrowly interpreted by the Labor Commissioner and you should be careful not to apply them incorrectly. It could be an expensive mistake.

EXEMPT means the job is NOT subject to payment for overtime hours worked. Employer policy may elect to compensate incumbents in these jobs for their overtime, but there are no restrictions on rates used or quantity of hours paid to incumbents in exempt jobs.

Overtime requirements apply to the JOB not the EMPLOYEE. It is the responsibility content of the job that determines if incumbent employees must be paid for the overtime they work.

There are eight categories of exemption from overtime requirements under the *Fair Labor Standards Act (FLSA)* and *Industrial Welfare Commission (IWC) Orders.*

1. Executive Exemption

- Receives at least two times the state's minimum wage as a salary for full-time employment. This is known as the "minimum salary level test." (See Footnote #1)
- The primary function of the job is management of the enterprise, or of a customarily recognized department or subdivision.
- The job regularly directs the work of two or more subordinate employees.
- Has the authority to hire, fire and give pay treatment, or recommend those things.
- Handles employee complaints and discipline.
- Devotes less than 50% of work time to activities other than managerial duties.
- Regularly and customarily exercises discretionary power.
- OR, owns at least a bona fide 20 percent equity interest in the enterprise and is actively engaged in its management. (29 CFR 541.114)

2. Learned Professional Exemption

- Primary duty of performing work requiring advanced knowledge in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction.
- In most cases, only licensed or certified occupations are exempt under state law. Those include: law, medicine, dentistry, optometry, architecture, engineering, teaching and accounting. Medicine includes physicians but not nurses. Pharmacists are no longer automatically considered exempt. They must meet the tests for administrative or executive exemption. Attorneys are exempt, but paralegals are not. Exempt accountants must be certified public accountants, not uncertified accountants. Licensed civil, mechanical and electrical engineers are exempt, but junior drafters or engineers are not.
- Wage Orders 1 (Manufacturing), 4 (Professional, Technical, Clerical, Mechanical and Similar Occupations), 5 (Public Housekeeping), 9 (Transportation) and 10 (Amusement and Recreation) allow for exemptions for jobs requiring learned professionals. For such treatment, the education required must be advanced, meaning the employee must have a degree or certificate requiring at least one year of specialized study in addition to completion of a four-year college course. The work must be of a nature that its product cannot be standardized based on hours of work, and the employee has considerable freedom of choice about how to carry out a task, which gives general control over hours of work. This requirement for creativity or intellectual application must apply more than 50% of the time.
- The minimum salary test is met. (See footnote #1)

3. Creative Professional Exemption

- Primary duty of performing work requiring invention, imagination, originality, or talent in a recognized field of artistic or creative endeavor.
- The minimum salary test is met. (See footnote #1.)

### 4. Administrative Exemption

- Primary duty of performing office or non-manual work directly related to the management or general business operations of the employer or the employer's customers and ...
- Customarily and regularly exercises discretion and independent judgment in the performance of intellectual work which, in the context of an administrative function, is office or non-manual work directly related to management policies or the general business operations of the employer or the employer's customers.
- Regularly and directly assists a proprietor or an exempt administrator, or performs, under only general supervision, work along specialized or technical lines requiring special training, experience or knowledge, or executes special assignments and tasks under only general supervision.
- Devotes more than 50% of time to these activities.
- The minimum salary test is met. (See footnote #1)

### 5. Outside Sales Exemption

- Primary duty of making sales; or of obtaining orders or contracts for services or for the use of facilities for which a consideration will be paid by the client or customer, and ...
- Incumbent is 18 years of age or older.
- Usually work away from the employer's place of business, selling tangible or intangible items.
- More than 50% of the time they are performing these outside sales duties. Work under Wage Orders 4 (Professional, Technical, Clerical, Mechanical and Similar Occupations) or 7 (Mercantile Industry).
- Receive commission-based compensation.

### 6. Computer-Related Occupation Exemption (See Footnote #2)

A California law known as S.B. 88 (Labor Code Section 515.5) exempts jobs (not the incumbent) that meet several tests, including ...

- Commonly involves job titles such as computer programmer, systems analyst, computer systems analyst, computer programmer analyst, applications programmer, applications systems analyst, applications systems analyst/programmer/software engineer, software specialist, systems engineer and systems specialist.
- Primarily engaged in intellectual or creative work that requires the exercise of discretion and independent judgment.
- Highly skilled and proficient in the theoretical and practical application of highly specialized information to computer systems analysis, programming and software engineering.
- Paid at least $36.00 per hour as of 1/1/2008 (an amount which may be adjusted each year).
- Primarily engaged in one or more of the following duties:
  1. The application of systems analysis techniques and procedures (including consulting with users) to determine hardware, software or system functional specifications; or
  2. The design, development, documentation, analysis, creation, testing or modification of computer systems or programs (including protypes) based on and related to, user or system design specifications; or
  3. The design, documentation, testing, creation or modification of computer programs related to the design of software or hardware for computer operating systems.
  4. A combination of these duties, the performance of which requires the same level of skills.

How to Determine Who Must Be Paid Overtime In California

7. Highly Compensated Jobs (Does not apply to non-public sector employees in California.)

- Any job guaranteed a total annual compensation of at least $100,000.
- If this job customarily and regularly performed one or more identifiable executive, administrative, or professional functions as described in those categories, the incumbent may be considered exempt.
- Excluded from this category are "blue collar" workers, police officers, fire fighters, paramedics, EMTs, and other first responders, no matter how much they are paid. This exclusion applies as long as the job doesn't meet the tests for executive, administrative, or professional exemption.
- Total annual compensation may include only base salary, commissions, non-discretionary bonuses, and other non-discretionary compensation.
- Total annual compensation may NOT include such things as
  - Payments for medical insurance
  - Payments for life insurance
  - Matching 401(k) pension plan payments
  - Contributions to retirement plans
  - Costs of other fringe benefits

8. Physicians & Surgeons

- A licensed physician or surgeon who is primarily engaged in performing duties for which a medical license is required is exempt from overtime if that person is paid at least the minimum hourly rate set annually by the state.
- Minimum requirement equates to $69.13 per hour.

If you have employees who perform exempt functions part of the time and non-exempt functions for the balance of the pay period, any time worked on non-exempt activities must be compensated for overtime if appropriate.

Computer Software Engineers: Training, Salary, & Career Information                    Page 1 of 5

Quick Links



# JobCenter
# Job
# Seeker
# Login

Email Address

☑ RememberMe

Login

# Preparation

## Explore
## Careers

## Resumes

## Cover
## Letters

## Interview
## Prep

# Find the Job

## Job Search Advice

## Post Resume

## Search Internships

## Search Employers

## Virtual Career Fair

# Offer

## Salary

## Negotiation

## New Job Advice

# Job

# Videos
# Employers
# Career
# Centers
# Additional
# Help

Degree Programs For Computer Software Engineers : Online And Campus Schools

# Career Information

## Computer Software Engineers: Training, Salary, & Career Information

### Career Profile: What do Computer Software Engineers Do?
From design to development, testing to troubleshooting, computer software engineers use their ability with applications and systems software to create the elements that make computers work. They use computer programs like C, C++, and Java to create packaged software and customized applications, often working in teams to create complex products.

Computer software engineers are highly trained in a range of technologies and well-compensated for their knowledge. No wonder Forbes placed computer engineers, including software engineers, at the top of their list of most lucrative college majors.

### A Day in the Life of a Computer Software Engineer
The traditional 40-hour work week, in a comfortable office setting is typical for computer software engineers. Some may work overtime, particularly during deadline periods when a large amount of work is due. The Bureau of Labor Statistics (BLS) reports that 17 percent of computer software engineers work over 50 hours a week on average.

Teamwork is essential for computer software engineers, who might work with a large group to solve problems and create new products. Even those who travel or telecommute must typically report to a team or management structure.

### Computer Software Engineer Training and Education
Training for computer software engineers typically results in a bachelor's degree plus experience with a range of computer systems and technologies. Hiring managers for some complex, high-level, or competitive careers require a master's degree among applicants.

Many computer software engineers choose to combine their formal education with certification programs. These targeted training programs prove the employees' commitments to continuing education, making them more valuable to the company and workforce. Popular certification programs include Cisco and Microsoft-based training.

**Get the Training You Need:** Find the top schools for Computer Software Engineers near you!

### Computer Software Engineer Employment & Outlook
About 324,000 new computer software engineers are expected to be added to the workforce through 2016, a huge increase for a job already in demand. The bulk of those jobs--226,000--are expected to go to applications software

Computer Software Engineers: Training, Salary, & Career Information                                    Page 4 of 5

engineers, while the rest are expected to go to systems software engineers. Over 1.1 million computer software engineers in total are expected to be employed in the field by 2016.

Excellent job prospects are due in part to a rising sophistication in available technology along with the demand among clients for personalized software applications. Concerns over security should provide extra career demand for those with formal training or experience in software engineers.

### Computer Software Engineer Salary
The BLS reports mean annual earnings for computer applications software engineers at $85,660 in 2007. That same year, systems software engineers earned $90,780. Systems software engineers in California and Virginia saw mean annual earnings over six figures, and the majority of computer software engineers were employed by computer systems design companies.

Sources
Forbes, Most Lucrative College Majors
Bureau of Labor Statistics, Software Engineers

Find Computer and Technology Schools Near You
Computer Engineering Programs

**\*NEW\* Education Center**
### Search Schools

Subject:
— All Subjects —
Program:
- Select a Subject -
SUBMIT ›



- University of Phoenix
- Walden University
- Grand Canyon University Online
- Keiser University eCampus

## Featured Articles

Computer Software Engineers: Training, Salary, & Career Information                    Page 5 of 5

# **1  2  3  4  5**



Student Credit Cards Are
a Thing of the Past

# Featured
# Jobs From
# Indeed

SolidEdge-Konstrukteur für
Tschechien
Ridgeley, WV - Euro
Engineering
Relationship Manager -
Outside Sales
Cumberland, MD -
Heartland Payment
Systems, Inc.
PT Service Associate -
Food Lion
Romney, WV - Food Lion

# CollegeGrad.com - The #1 Entry Level Job Site

AboutCareer CentersContactCopyrightEmployersLegal PressPrivacy (updated)Terms of serviceSite Search
Copyright © 2010 CollegeGrad.com. All rights reserved.



| Home | World News | Latest Articles | Escape Hatch | Topics | Free eCards | Endless Buzz |

---

**Topics**

**Salary Ranges For Jobs**

## Software Engineer Salary

What is the average software engineer salary? Read on this article, to find out the job description and salary for software engineers.

The job of a software engineer is widely reputed to be pretty remunerative. But what is the computer software engineer salary range? Here's an article on the software engineer salaries across various hierarchies in the company.



### Software Engineer Salary and Job Description

The software engineer jobs are looked at with a great deal of awe and amazement and not less so due to the heart-stopping salaries that they offer. As the IT sector continues its upward trend, the paymasters in Silicon Valley and other specialized software company pockets have become quite liberal with their purse-strings for the candidates they feel deserve the money.

Now the software engineer salary largely depends on the organization he works for. Multinational companies will certainly pay a lot more than domestic startup companies. Secondly, the years of work and experience that the software engineer puts in are also very crucial in determining the pay. The more experienced a software engineer is, the more valuable he is considered to be by the companies. So a mix of good experience and a good company will land the best software engineer salary package! So here's all about the software engineering salaries.

### Entry Level Software Engineer Salary

The entry level software engineer salary in USA is pegged at about USD 56,465 annually, which is pretty much the same as the starting salary for software engineers. This figure is a median amount for this IT job and hence may or may not be what you would get. Like I said, the profile of the recruiting company and their estimation of your worth to them plays a big part in determining your salary. The entry level software engineer is generally entrusted with more routine tasks of programming, software development and software testing. The entry level software engineer is assigned his work by his reporting authority, usually a senior software engineer and his job is to simply perform the programming as told to do so by his immediate head.

### Senior Software Engineer Salary

The senior software engineer salary is said to be a whopping USD 95,000 annually. But this is again a median figure. The responsibilities of a senior software engineer include writing programs and debugging and modifying the programs made by the entry level software engineers. A senior software engineer generally has a work experience in the field of software engineering of about 4 - 5 years. A senior software engineers is usually given a team to manage and is the reporting authority for several entry level engineers. A senior software engineer is also in charge of correcting any mistakes made by his juniors, checking the work done and adding his own touch to it which comes with experience.

### Principal Software Engineer Salary

An eye popping number indeed, seeing which will probably rock the floor under your feet. A principal software engineer, presumably with a 7 - 10 years of experience under his belt has the earning capacity of $105,000 annually. That's right, a 6-digit salary and if you're employed with a bigger company, that number might just go up a bit. The principal software engineer is most certainly one of the highest paying jobs. A principal software engineer is pretty much the manager of his department in the company. Depending on the nature of the job, the principal software engineer can be a software engineer, quality checker and the client interface, all rolled into one. The principal software engineer is in charge of meeting client companies, understanding what they want and then helping his team deliver the kind of product which meets the customer's specifications. The principal software engineer

is also in charge of receiving feedback from the customer with regard to the product and help improve the overall quality of the products/services offered. Read on for more on salary ranges for jobs and career opportunities.

So this was all about the software engineer salary. As you can see, there is a good scope to earn more as your progress through the ranks!

By Arjun Kulkarni
Published: 4/5/2010

| Discuss | Email Article |

## What do you think?
**Use the feedback form below to submit your comments.**

Your Comments:

Your Name:

Submit

## Related Articles

Network Engineer Job Description

Network Engineer Salary

Mechanical Engineer Salary

Biomedical Engineer Salary

Civil Engineer Salary

Civil Engineer Job Description

Robotics Engineer Average Salary

Computer Hardware Engineering: Careers and Jobs

How Engineers Earn Cash by Sharing Their Knowledge and Experiences

Types of Engineering

Types of Engineers

Career Information on Engineering

Construction Engineering

Online Education: Registering for an Engineering Degree Online

Information Assurance Engineer

Five Affordable High Paying Online Engineering Degree Programs

What Is Reverse-Engineering

What does an audio engineer do when mastering music?

Pharmacy Technician Salary

Optometrist Salary Range

Surgical Technologist Salary

Speech Therapist Salary

Car Salesman Salary

Radiologist Salary

Social Worker Salary

Computer Technician Salary

Software Engineer Salary

Dialysis Technician Salary

Veterinarian Salary

Nurse Practitioner Salary

Psychiatrist Salary

Physical Therapy Assistant Salary

Life Coach Salary

Average American Income

Master Electrician Salary

Firefighter Average Salary

Game Tester Salary

Physiotherapist Salary

Sonographer Salary Range

Dental Hygienist Salary

Business & Finance » Business Articles



Author Login | Become An Author | Advertising Info | RSS Feeds | Articles | About Buzzle | Privacy Policy | Message Boards

©2000-2009, 2010 Buzzle.com® · All rights reserved.