1              IN THE UNITED STATES DISTRICT COURT

2              FOR THE EASTERN DISTRICT OF TEXAS

3                      MARSHALL DIVISION

4                          - - -

5     PATTY BEALL, MATTHEW MAXWELL,      )

6     DAVID GRAVELY, TALINA MCELHANY,    )

7     KELLY HAMPTON, CASEY BROWN,        )

8     JASON BONNER, KEVIN TULLOS,        )

9     ANTHONY DODD, ILENE MEYERS,        )

10    TOM O'HAVER, JOY BIBLES, DON       )

11    LOCCHI and MELISSA PASTOR,         )

12    Individually and on behalf of      )

13    all others similarly situated;     )

14         Plaintiffs                    )

15    vs.                                ) 2:08-cv-422-TJW

16    TYLER TECHNOLOGIES, INC., and      )

17    EDP ENTERPRISES, INC.              )

18         Defendants.                   )

19    ---------------------------------

20        ' VIDEOTAPED DEPOSITION OF EDP ENTERPRISES, INC.'S

          CORPORATE REPRESENTATIVE, ROBERT SANSONE

21                     PORTLAND, MAINE

                     AUGUST 17, 2010

22

      ATKINSON-BAKER, INC.

23    COURT REPORTERS

      (800) 288-3376

24    www.depo.com

      REPORTED BY:  Cheryl C. Pieske, RMR

25    FILE NO.:  A40636D

**EXHIBIT 1**

```
 1              IN THE UNITED STATES DISTRICT COURT

 2              FOR THE EASTERN DISTRICT OF TEXAS

 3                     MARSHALL DIVISION

 4                         -  -  -

 5        PATTY BEALL, MATTHEW MAXWELL,    )

 6        DAVID GRAVELY, TALINA MCELHANY,  )

 7        KELLY HAMPTON, CASEY BROWN,      )

 8        JASON BONNER, KEVIN TULLOS,      )

 9        ANTHONY DODD, ILENE MEYERS,      )

10        TOM O'HAVER, JOY BIBLES, DON     )

11        LOCCHI and MELISSA PASTOR,       )

12        Individually and on behalf of    )

13        all others similarly situated;  )

14               Plaintiff,                )

15            vs.                          ) 2:08-cv-422 TJW

16        TYLER TECHNOLOGIES, INC., and,   )

17        EDP ENTERPRISES, INC.,           )

18               Defendants.               )

19        --------------------------------

20

21               Videotaped deposition of ROBERT J. SANSONE,

22        taken on behalf of Plaintiff, at 477 Congress Street,

23        Portland, Maine, commencing at 8:40 a.m., Tuesday, August

24        17, 2010, before Cheryl C. Pieske, RMR, Court Reporter

25        and Notary Public.
```

**EXHIBIT 1**

```
 1                       A P P E A R A N C E S:
 2            FOR PLAINTIFFS:
 3            SLOAN, BAGLEY, HATCHER & PERRY LAW FIRM
              BY: LAUREEN F. BAGLEY, ESQ.
 4            101 East Whaley Street
              P.O. Drawer 2909
 5            Longview, Texas 75601
 6            ZELBST, HOLMES & BUTLER
              BY: CHANDRA L. HOLMES, RAY, ESQ.
 7            411 Southwest 6th Street
              Lawton, Oklahoma 73501
 8
 9            FOR DEFENDANT:
10            MORGAN, LEWIS & BOCKIUS, LLP
              BY: PAULO B. McKEEBY, ESQ.
11            1717 Main Street, Suite 3200
              Dallas, Texas, 75201-7347
12
              TYLER TECHNOLOGIES, INC.
13            H. LYNN MOORE, ESQ.
              General Counsel
14
15            Also Present: Neil Orenstein, Videographer
16
17
18
19
20
21
22
23
24
25
```

**EXHIBIT 1**

| | | |
|---|---|---|
| 1 | 09:06:49 | instances where an implementation specialist on one job |
| 2 | 09:06:52 | might be doing job functions that are slightly different |
| 3 | 09:06:55 | from an implementation consultant but then on another job |
| 4 | 09:06:59 | would be doing the same job functions as an |
| 5 | 09:07:02 | implementation consultant? |
| 6 | 09:07:05 | MR. McKEEBY:  Object to the question.  You can |
| 7 | 09:07:07 | answer.  I object to the form of the question.  I'm |
| 8 | 09:07:10 | sorry.  You can answer. |
| 9 | 09:07:10 | A.   Are you asking me is that possible? |
| 10 | 09:07:12 | Q.   Yes. |
| 11 | 09:07:12 | A.   Yes, it's possible. |
| 12 | 09:07:13 | Q.   Okay.  So it would depend on the job, not |
| 13 | 09:07:16 | necessarily the position but the job that would create |
| 14 | 09:07:21 | perhaps a difference -- the difference that you were |
| 15 | 09:07:24 | speaking of? |
| 16 | 09:07:24 | A.   That's one of the factors.  The person |
| 17 | 09:07:27 | themselves can -- is probably a bigger factor. |
| 18 | 09:07:32 | Q.   And is that because of their level of |
| 19 | 09:07:34 | experience in the job? |
| 20 | 09:07:36 | A.   Or knowledge from a previous job or that |
| 21 | 09:07:40 | they've learned on the job.  So, yes, experience, |
| 22 | 09:07:43 | knowledge, and, again, the customer as well. |
| 23 | 09:07:46 | Q.   Okay. |
| 24 | 09:07:50 | A.   Product. |
| 25 | 09:07:51 | Q.   My -- I'm sorry.  Go ahead. |

**EXHIBIT 1**

```
 1    09:07:52        A.   Product also.

 2    09:07:53        Q.   So depending on the product they're installing

 3    09:07:55    or the customer that they're working for, their -- their

 4    09:07:59    job may be a little different?

 5    09:08:00        A.   Yes.

 6    09:08:01        Q.   Okay.

 7    09:08:03        MR. McKEEBY:  But it's not the company's position

 8    09:08:05    that the designation consultant and specialist mean

 9    09:08:09    different functions.

10    09:08:11    BY MS. BAGLEY:

11    09:08:11        Q.   Okay.  What is the company's position with

12    09:08:13    regard to the job title of implementation consultant

13    09:08:18    versus implementation specialist?  Does Tyler

14    09:08:23    Technologies consider those to be different job

15    09:08:24    positions?

16    09:08:29        A.   The industry and Tyler tend to be moving

17    09:08:34    towards implementation consultant.  So there are fewer

18    09:08:37    people called implementation specialists.  There may not

19    09:08:41    be any left right now.  But it's merely something that's

20    09:08:46    happening in the industry and we're following.

21    09:08:49        Q.   Is that because they are -- they essentially do

22    09:08:55    the same job functions?

23    09:09:01        A.   Yes.  Their job is to implement the software

24    09:09:05    product at the site so --

25    09:09:07        Q.   Okay.
```

**EXHIBIT 1**

| | | |
|---|---|---|
| 1 | 09:09:08 | A.    -- yes. |
| 2 | 09:09:08 | Q.   When Tyler Technologies evaluated the |
| 3 | 09:09:14 | classification for implementation consultant and |
| 4 | 09:09:19 | implementation specialist, was there a difference in the |
| 5 | 09:09:25 | evaluation because the jobs were different, or did Tyler |
| 6 | 09:09:29 | Technologies consider both of those positions essentially |
| 7 | 09:09:32 | to be the same position for purposes of classifying those |
| 8 | 09:09:36 | job positions under the Fair Labor Standards Act? |
| 9 | 09:09:39 | MR. McKEEBY:  I object to the form of the question. |
| 10 | 09:09:42 | You can answer. |
| 11 | 09:09:43 | A.   We -- we didn't do a separate position |
| 12 | 09:09:46 | evaluation when the title changed because there was a |
| 13 | 09:09:49 | title change. |
| 14 | 09:09:51 | BY MS. BAGLEY: |
| 15 | 09:09:53 | Q.   Well, I'm not sure you answered my question. |
| 16 | 09:09:55 | A.   Oh, okay. |
| 17 | 09:09:55 | Q.   My question wasn't limited to when the title |
| 18 | 09:10:00 | change was made.  My question was in general when Tyler |
| 19 | 09:10:03 | Technologies evaluated the implementation consultant |
| 20 | 09:10:06 | position and the implementation specialist position, did |
| 21 | 09:10:10 | they engage in a separate evaluation of those job |
| 22 | 09:10:13 | functions to determine whether they were exempt |
| 23 | 09:10:16 | positions, or did Tyler Technologies consider them to |
| 24 | 09:10:20 | basically be the same job position for purposes of making |
| 25 | 09:10:22 | that determination? |

**EXHIBIT 1**

| | | |
|---|---|---|
| 1 | 11:08:07 | those four HR directors are to engage in the analysis of |
| 2 | 11:08:13 | determining whether a position is exempt or nonexempt |
| 3 | 11:08:15 | under the FLSA, correct? |
| 4 | 11:08:18 | MR. McKEEBY:  Object to the form of the question. |
| 5 | 11:08:18 | THE DEPONENT:  Yeah. |
| 6 | 11:08:19 | MR. McKEEBY:  You can answer. |
| 7 | 11:08:20 | A.   I don't think that's entirely accurate. |
| 8 | 11:08:22 | BY MS. BAGLEY: |
| 9 | 11:08:22 | Q.   Okay.  Please correct me. |
| 10 | 11:08:23 | A.   We do not -- we require that positions be |
| 11 | 11:08:27 | evaluated to determine whether they're exempt or |
| 12 | 11:08:29 | nonexempt.  What we don't do is tell them specifically |
| 13 | 11:08:33 | how they have to do that. |
| 14 | 11:08:34 | Q.   Nor does Tyler Technologies provide any |
| 15 | 11:08:37 | guidance or policies in that regard, correct? |
| 16 | 11:08:41 | MR. McKEEBY:  Object to the form of the question. |
| 17 | 11:08:43 | You can answer. |
| 18 | 11:08:43 | A.   Well, there's no policy because it's a law.  So |
| 19 | 11:08:47 | we follow the law. |
| 20 | 11:08:48 | Q.   Okay.  And how -- do you train the HR directors |
| 21 | 11:08:51 | on how to follow the law, specifically the FLSA? |
| 22 | 11:08:56 | A.   No.  When we hire an HR director, we expect |
| 23 | 11:08:59 | them to be familiar with that.  You wouldn't put somebody |
| 24 | 11:09:04 | into that role who wouldn't be familiar with the FLSA. |
| 25 | 11:09:07 | So I don't train them on it. |

**EXHIBIT 1**

```
 1   11:09:08        Q.   Now, it's my understanding that the only

 2   11:09:12   exemption that is being asserted with regard to the

 3   11:09:21   implementor position is administrative exemption; is that

 4   11:09:25   correct?

 5   11:09:25        MR. McKEEBY:  Well, I don't know.

 6   11:09:28   BY MS. BAGLEY:

 7   11:09:28        Q.   Strike that.  Let me start over.  What

 8   11:09:32   exemption is Tyler Technologies relying on for purposes

 9   11:09:38   of classifying implementors as exempt?

10   11:09:41        MR. McKEEBY:  He's not equipped to answer that

11   11:09:43   question, and I'm not trying to be tricky.  It's just the

12   11:09:47   administrative exemption, but I haven't prepared him to

13   11:09:51   testify on behalf of the company about the defenses in

14   11:09:53   the case.

15   11:09:55        MS. BAGLEY:  I'm not -- and I'm not asking about the

16   11:09:57   defenses.  I'm asking in his mind, in Tyler's corporate

17   11:10:04   decision making --

18   11:10:04        MR. McKEEBY:  Okay.

19   11:10:06        MS. BAGLEY: -- process, what exemption were they

20   11:10:08   using?

21   11:10:09        MR. McKEEBY:  Okay.

22   11:10:12        MS. BAGLEY: -- to -- you know, what part of the

23   11:10:18   exempt classifications was Tyler relying on for purposes

24   11:10:21   of saying that the implementor position was exempt?

25   11:10:24        A.   The implementor position, you mean
```

**EXHIBIT 1**

| | | |
|---|---|---|
| 1 | 11:10:27 | implementation consultant or specialist? |
| 2 | 11:10:28 | Q.   Right. |
| 3 | 11:10:28 | A.   Okay. |
| 4 | 11:10:29 | Q.   I'm saying that because we have got the |
| 5 | 11:10:32 | different terms.  So implementor just seems to be -- |
| 6 | 11:10:32 | A.   Uh-hmm, okay. |
| 7 | 11:10:34 | Q.   -- the wrong way to say it. |
| 8 | 11:10:34 | A.   The administrator. |
| 9 | 11:10:36 | Q.   Okay.  Are there any other exemptions that |
| 10 | 11:10:39 | Tyler Technologies is relying on for purposes of |
| 11 | 11:10:44 | classifying implementors as exempt under the Fair Labor |
| 12 | 11:10:48 | Standards Act? |
| 13 | 11:10:48 | A.   No. |
| 14 | 11:10:49 | Q.   Have you or any of the other HR directors |
| 15 | 11:11:02 | reviewed Department of Labor decisions to determine |
| 16 | 11:11:07 | whether the implementor position was exempt or nonexempt? |
| 17 | 11:11:14 | A.   Not specifically to implementation consultants |
| 18 | 11:11:18 | but when I get notices from professional organizations, I |
| 19 | 11:11:23 | read them about positions being classified as exempt or |
| 20 | 11:11:28 | nonexempt, but I've never seen one that directly ties to |
| 21 | 11:11:32 | implementation consultant. |
| 22 | 11:11:32 | Q.   Are you aware that there are Department of |
| 23 | 11:11:36 | Labor decisions that discuss computer software training |
| 24 | 11:11:41 | and similar implementor positions? |
| 25 | 11:11:45 | MR. McKEEBY:  You can answer. |

**EXHIBIT 1**

| | | |
|---|---|---|
| 1 | 11:11:46 | A.   I'm aware of the recent changes to the act. |
| 2 | 11:11:52 | MR. McKEEBY:  That wasn't her question. |
| 3 | 11:11:54 | THE DEPONENT:  I'm sorry. |
| 4 | 11:11:55 | MR. McKEEBY:  Would you repeat your question? |
| 5 | 11:11:57 | A.   I am not aware of any recent decisions |
| 6 | 11:12:00 | affecting implementation consultants, if that's your |
| 7 | 11:12:02 | question. |
| 8 | 11:12:03 | BY MS. BAGLEY: |
| 9 | 11:12:03 | Q.   And it wasn't limited to recent decisions.  Are |
| 10 | 11:12:05 | you aware of any decisions of the Department of Labor |
| 11 | 11:12:07 | that deal with computer positions? |
| 12 | 11:12:14 | A.   Computer positions?  That's -- |
| 13 | 11:12:16 | Q.   Positions that involve implementation of |
| 14 | 11:12:19 | computer software? |
| 15 | 11:12:20 | A.   No, I'm not. |
| 16 | 11:12:39 | Q.   During the time that you were involved with the |
| 17 | 11:12:43 | Courts and Justice evaluation, was there a determination |
| 18 | 11:12:48 | at that meeting that the telephone support position |
| 19 | 11:12:53 | should be changed from exempt to nonexempt? |
| 20 | 11:12:58 | MR. McKEEBY:  Object.  That's outside the scope of |
| 21 | 11:13:01 | the designation. |
| 22 | 11:13:02 | MS. BAGLEY:  Okay. |
| 23 | 11:13:03 | MR. McKEEBY:  I instruct him not to answer questions |
| 24 | 11:13:05 | that are outside the scope of the designation. |
| 25 | 11:13:05 | BY MS. BAGLEY: |

**EXHIBIT 1**

| | | |
|---|---|---|
| 1 | 17:15:10 | MS. BAGLEY: Right. |
| 2 | 17:15:11 | MR. McKEEBY: -- status. |
| 3 | 17:15:12 | MS. BAGLEY: It may not be, Paulo. |
| 4 | 17:15:14 | MR. McKEEBY: I really don't think it is, and I'm |
| 5 | 17:15:15 | sure there are a lot of those complaints, and I asked him |
| 6 | 17:15:19 | as my -- |
| 7 | 17:15:19 | MS. BAGLEY: Is that an admission on the record? |
| 8 | 17:15:20 | MR. McKEEBY: No. I said I'm sure as in I would |
| 9 | 17:15:24 | imagine, not being a representative of Tyler Technologies |
| 10 | 17:15:28 | in that context, but, you know, I take my responsibility |
| 11 | 17:15:32 | seriously to prepare him to be the corporate |
| 12 | 17:15:34 | representative. |
| 13 | 17:15:34 | Q. So let me ask him -- |
| 14 | 17:15:34 | A. So one of the things -- |
| 15 | 17:15:36 | MS. BAGLEY: I will ask it -- |
| 16 | 17:15:36 | MR. McKEEBY: All right. |
| 17 | 17:15:37 | BY MS. BAGLEY: |
| 18 | 17:15:37 | Q. In your personal capacity as the HR director |
| 19 | 17:15:40 | for Tyler Technologies, have you become aware of |
| 20 | 17:15:44 | complaints by implementors regarding the number of hours |
| 21 | 17:15:48 | they're required to work? |
| 22 | 17:15:48 | A. No. |
| 23 | 17:15:49 | Q. And in your personal capacity as the HR |
| 24 | 17:15:54 | director and the vice-president of HR for Tyler |
| 25 | 17:15:58 | Technologies, **EXHIBIT** en made aware of any complaints |

| | | |
|---|---|---|
| 1 | 17:16:02 | by implementors regarding the amount of travel that they |
| 2 | 17:16:05 | are required to do? |
| 3 | 17:16:06 | A.  The amount of travel has been brought to my |
| 4 | 17:16:10 | attention, not necessarily in the form of a complaint. |
| 5 | 17:16:13 | Q.  Okay.  How was it brought to your attention? |
| 6 | 17:16:16 | A.  Well, they mention that the travel after a |
| 7 | 17:16:19 | while gets old, but they understand that that's part of |
| 8 | 17:16:23 | the job. |
| 9 | 17:16:24 | Q.  Are there any people that, other than yourself |
| 10 | 17:16:34 | and the HR directors that we've talked about, that make |
| 11 | 17:16:39 | decisions regarding exemptions of employees? |
| 12 | 17:16:44 | A.  No. |
| 13 | 17:16:48 | Q.  Are there -- within MUNIS -- strike that.  Does |
| 14 | 17:17:42 | it make any difference to Tyler Technologies whether an |
| 15 | 17:17:45 | implementor works out of their home or works out of an |
| 16 | 17:17:48 | office? |
| 17 | 17:17:48 | MR. McKEEBY:  I object to the form of the question. |
| 18 | 17:17:54 | You can answer. |
| 19 | 17:17:55 | A.  It's preferable that they work out of the |
| 20 | 17:18:01 | office, but they can be effective out of their home. |
| 21 | 17:18:05 | BY MS. BAGLEY: |
| 22 | 17:18:05 | Q.  Does that have anything -- does the fact that |
| 23 | 17:18:15 | an employee works out of -- an implementor works out |
| 24 | 17:18:18 | their home versus an office, does that affect the |
| 25 | 17:18:22 | employee's employment in any way? |

**EXHIBIT 1**

```
 1    17:18:27        A.    No.

 2    17:18:27        Q.    Does that affect how the employee is

 3    17:18:34    supervised?

 4    17:18:35        A.    No.

 5    17:18:36        Q.    Does that affect how the implementor does their

 6    17:18:48    job?

 7    17:18:49        A.    No.

 8    17:18:54        Q.    Would you please define the fluctuating work

 9    17:19:15    week provision under the Fair Labor Standards Act?

10    17:19:19        MR. McKEEBY:  That's a legal concept that this

11    17:19:22    witness hasn't been designated to testify about and which

12    17:19:27    is not appropriate in the context of the deposition

13    17:19:29    anyway.

14    17:19:29        Q.    Does Tyler Technologies, have they -- have they

15    17:19:34    ever -- strike that.  During the time that you have

16    17:19:37    worked for Tyler Technologies, have you ever been aware

17    17:19:41    of a policy, practice, or guideline within Tyler

18    17:19:50    Technologies that an implementor would be paid based on

19    17:19:55    the fluctuating work week?

20    17:19:57        MR. McKEEBY:  Again, object to the form of the

21    17:19:59    question.  I'm not sure that this witness knows what the

22    17:20:02    fluctuating work week is.  I'm not sure -- I know that we

23    17:20:05    haven't prepared him to testify about anything to do with

24    17:20:08    that legal concept, and it's not appropriate in the

25    17:20:10    context of this EXHIBIT 1  So he's not testifying about
```

| | | |
|---|---|---|
| 1 | 17:20:14 | that. |
| 2 | 17:20:17 | BY MS. BAGLEY: |
| 3 | 17:20:18 | Q.   Are you going to listen to your counsel and not |
| 4 | 17:20:20 | answer the question? |
| 5 | 17:20:20 | A.   Yes. |
| 6 | 17:20:21 | MS. BAGLEY:  Certify the question, please. |
| 7 | 17:20:26 | Q.   Mr. Sansone, have you ever been -- have you |
| 8 | 17:20:29 | ever told an implementor or someone that's hiring an |
| 9 | 17:20:34 | implementor that it's Tyler Technologies' understanding |
| 10 | 17:20:44 | that they're going to pay that implementor half time for |
| 11 | 17:20:49 | any hours they work over 40 hours a week? |
| 12 | 17:20:52 | MR. McKEEBY:  You can answer that question. |
| 13 | 17:20:55 | A.   I have not. |
| 14 | 17:20:56 | BY MS. BAGLEY: |
| 15 | 17:20:56 | Q.   Are you familiar with that concept? |
| 16 | 17:20:58 | A.   No, I'm not. |
| 17 | 17:20:59 | Q.   Have you ever heard of fluctuating work week? |
| 18 | 17:21:02 | A.   Not in the context that you're talking about |
| 19 | 17:21:09 | anyway. |
| 20 | 17:21:09 | Q.   Okay.  How have you heard of it? |
| 21 | 17:21:12 | MR. McKEEBY:  Yeah, and if you have heard of it from |
| 22 | 17:21:15 | counsel in connection with this lawsuit, you can -- |
| 23 | 17:21:19 | MS. BAGLEY:  I don't want you to tell me anything |
| 24 | 17:21:21 | that you have heard or discussed with your -- with |
| 25 | 17:21:24 | counsel for Tyler Technologies in this lawsuit. |

**EXHIBIT 1**

```
1

2                                   CERTIFICATE

3

4          I, Cheryl C. Pieske, RMR, Notary Public in and for

5      the State of Maine, hereby certify that on AUGUST 17,

6      2010, personally appeared before me the within-named

7      deponent who was sworn to testify the truth, the whole

8      truth and nothing but the truth in the aforementioned

9      cause of action; and the foregoing, as reduced to

10     computer type, is a true and accurate record of the

11     evidence as taken by me by means of stenotype.

12         I further certify that I am a disinterested person in

13     the event or outcome of the aforementioned cause.

14     IN WITNESS WHEREOF, I subscribe my hand at Waldo, Maine,

15     this 30th day of August, 2010.

16               _____

17               Cheryl C. Pieske, RMR

18               Notary Public

19               My Commission Expires June 25, 2016.

20

21

22

23

24

25
```

**EXHIBIT 1**

1                       2:08-cv-422 TJW

2   PATTY BEALL, et als       ]IN THE DISTRICT COURT OF

3       Plaintiffs           ]

4   vs.                     ]MARSHALL DIVISION

5   TYLER TECHNOLOGIES, INC.,  ]

6   and EDP ENTERPRISES, INC., ]

7       Defendants         ]EASTERN DISTRICT OF TEXAS

8             REPORTER'S CERTIFICATION

9           DEPOSITION OF ROBERT SANSONE

10              AUGUST 17, 2010

11       I, Cheryl C. Pieske, Registered Merit Reporter

12   in and for the State of Maine, hereby certify to the

13   following:

14       That the witness, ROBERT SANSONE, was duly sworn by

15   the officer and that the transcript of the oral

16   deposition is a true record of the testimony given by the

17   witness;

18       That the deposition transcript was submitted on

19   August 30, 2010, to the witness or to the attorney for

20   the witness for examination, signature and return to me

21   by September 20, 2010;

22       That the amount of time used by each party at the

23   deposition is as follows:

24       Ms. Bagley - 8:40 a.m. to 5:40 a.m., 5:45 p.m. to

25   5:53 p.m.

**EXHIBIT 1**

Page 305

1      Mr. McKeeby - 5:40 p.m. to 5:45 p.m.

2      That pursuant to information given to the deposition

3  officer at the time said testimony was taken, the

4  following includes counsel for all parties of record:

5      Ms. Laurene Bagley, Attorney for Plaintiffs

6      Ms. Chandra L. Holmes Ray, Attorney for Plaintiffs

7      Mr. Paulo B. McKeeby, Attorney for Defendants

8      Mr. H. Lynn Moore, Attorney for Defendants

9      I further certify that I am neither counsel for,

10  related to, nor employed by any of the parties or

11  attorneys in the action in which this proceeding was

12  taken, and further that I am not financially or otherwise

13  interested in the outcome of the action.

14      Further certification requirements pursuant to Rule

15  203 of TRCP will be certified to after they have

16  occurred.

17      Certified to by me this 30th day of August, 2010.

18

19                              _____

20                              Cheryl C. Pieske, RMR

21

22

23

24

25

**EXHIBIT 1**

1           FURTHER CERTIFICATION UNDER RULE 203 TRCP

2           The original deposition was/was not returned to the

3     deposition officer on _____;

4           If returned, the attached Changes and Signature page

5     contains any changes and the reasons therefor;

6           If returned, the original deposition was delivered to

7     _____, Custodial Attorney;

8           That $ _____ is the deposition officer's charges

9     to the ^ party for preparing the original deposition

10    transcript and any copies of exhibits;

11          That the deposition was delivered in accordance with

12    Rule 203.3, and that copy of this certificate was served

13    on all parties shown herein on and filed with the Clerk.

14          Certified to by me this _____ day of

15    _____,_____.

16

17              _____

18              Cheryl C. Pieske, RMR

19

20

21

22

23

24

25

**EXHIBIT 1**