Freedom Court Reporting, Inc     1

```
 1            IN THE UNITED STATES DISTRICT COURT
 2             FOR THE EASTERN DISTRICT OF TEXAS
 3                      MARSHALL DIVISION
 4    _____
 5    _____
 6    PATTY BEALL, MATTHEW
 7    MAXWELL, TALINA McELHANY and
 8    KELLY HAMPTON, Individually
 9    and on behalf of all other
10    similarly situated,
11            Plaintiffs,
12       v.                          2:08-cv-422   TJW
13    TYLER TECHNOLOGIES, INC., and
14    EDP ENTERPRISES, INC.,
15            Defendants.
16    _____
17    _____
18                     DEPOSITION OF
19                       JOY FLYNN
20
21    At Raleigh, North Carolina
22    Tuesday, July 27, 2010; 9:17 a.m.
23    Reported by: Lindsey D. Cline, CVR
```

367 Valley Avenue Birmingham, Alabama (877) 373-3660

**EXHIBIT NO. 38**

Freedom Court Reporting, Inc    2

1                    A P P E A R A N C E S

2

3   For the Plaintiffs:

4        LAUREEN F. BAGLEY, ESQ.

5        Sloan, Bagley, Hatcher & Perry Law Firm

6        101 East Whaley Street

7        Longview, Texas 75606

8

9   For the Defendants:

10       PAULO B. McKEEBY, ESQ.

11       Morgan, Lewis & Bockius, LLP

12       1717 Main Street, Suite 3200

13       Dallas, Texas 75201-7347

14

15

16

17

18

19

20

21

22

23

**EXHIBIT NO. 38**

1               T A B L E  O F  C O N T E N T S

2                     E X A M I N A T I O N S

3    EXAMINATION                                    PAGE

4       Direct Examination by Mr. McKeeby             6

5       Cross Examination by Ms. Bagley              --

6

7               T A B L E  O F  C O N T E N T S

8                          E X H I B I T S

9    EXHIBITS      DESCRIPTION              MARKED/REFERENCED

10   Number 1      Letter                         17/18

11   Number 2      Consent to Opt In              89/

12

13

14

15

16

17

18

19

20

21

22

23

**EXHIBIT NO. 38**

1  Q.   Was there a way, from looking at the calendar, for
2       you to know that you were performing the initial
3       part of that training process, or did you just
4       kind of know that?
5  A.   Okay.  I understand what you're saying now.  When
6       you're doing -- when you're first setting up like
7       for HR or payroll, first employee records have to
8       be built out there.  And that's where you go in
9       and put in the employee benefits, put in their
10      beneficiary type information.  All of that type of
11      information has to be set up.  Employee
12      deductions, for example.  Are they purchasing
13      savings bonds or anything that's coming out of
14      their pay?  So that is what I'm referencing as the
15      initial steps, the initial setup.  So sometimes
16      that would be the work that needed to be done
17      before you can even run a payroll.  You have to
18      have the employee information in the system along
19      with their employee records.  So when you run the
20      payroll processes, it can link back to that
21      employee to know what deductions need to be taken
22      out for state tax, federal tax, any type of
23      deductions, wage garnishments, anything like that.

1        So first you have to build those employee

2        records. So when you're looking at this Excel

3        spreadsheet, even though it may say payroll under

4        there, it would say, "Employee record setup" --

5   Q.   Okay.

6   A.   -- or something of that nature.

7   Q.   Okay. So the actual calendar would indicate not

8        only payroll but the type of payroll training that

9        you would be performing?

10  A.   The type of processes, yes.

11  Q.   Got it. And what you just described, the building

12       the employee records, setting up the

13       beneficiaries, the deductions from payroll, that's

14       the type of -- that's what you mean when you say,

15       "Getting the group started on the process" --

16  A.   That is --

17  Q.   -- the initial steps?

18  A.   That is correct, yes.

19  Q.   And so that's the type of training you performed?

20  A.   That is correct.

21  Q.   Okay. So I take it that you would be -- for the

22       training you would be doing, you wouldn't

23       necessarily be training end users with respect to

Freedom Court Reporting, Inc                                                                                  75

```
 1        functionality; but you would be training people
 2        who would be setting up the system at the
 3        customer?
 4   A.   That is correct.
 5   Q.   Did these people have some particular designation
 6        or title?
 7   A.   The people that I generally worked with were
 8        people that actually worked in payroll processes,
 9        actually worked in HR.  So they were familiar with
10        their old processing system.  And now we're
11        plugging this information into the new system, so
12        -- and verifying that everything from their old
13        system has moved over correctly to the new
14        software system.
15   Q.   Okay.  I take it the calendar would tell you how
16        long you were supposed to be at a particular
17        location?
18   A.   Yes.
19   Q.   Did you ever have any role in -- and again, we're
20        now talking about the three to four months --
21   A.   Yes.
22   Q.   -- while you were on your own.  Did you ever have
23        any role in setting up the calendar or the agenda?
```

367 Valley Avenue Birmingham, Alabama (877) 373-3660

**EXHIBIT NO. 38**

Freedom Court Reporting, Inc                                      76

```
 1   A.   No.
 2   Q.   That was done by Jodi?
 3   A.   Yes.
 4   Q.   When you were doing the initial training, had the
 5        customer already been converted -- as we defined
 6        that term earlier -- to the Tyler system?
 7   A.   Sometimes.
 8   Q.   Was there anything it depended on or was it just
 9        -- did it vary?
10   A.   There was various reasons.  Sometimes when they
11        did the initial conversion, there may have been
12        problems with the conversion processes so the
13        programmers had to figure out what -- kind of
14        troubleshoot the software to see what the
15        situation was.  But normally it was mostly all
16        converted.
17   Q.   Okay.  Okay.  When you went to Iowa -- I think you
18        said you took two trips to Iowa?
19   A.   I believe so, two.
20   Q.   Was that for the same customer?
21   A.   Yes, yes, it was.
22   Q.   Why did you only have to make two trips to Iowa
23        versus the many weeks that you went back to
```

367 Valley Avenue Birmingham, Alabama (877) 373-3660

**EXHIBIT NO. 38**

```
1           Newport News?  Was that a function of the number
2           of people that had to be trained or something
3           else?
4    A.     The number of people.  I believe in Iowa it was
5           only about 200 employees.  And I was just doing
6           the initial piece, setting up employee benefit
7           information.
8    Q.     And what about in Newport News?  Was it more
9           employees that had to be trained then?
10   A.     Yeah.  They had whole departments of persons.  And
11          their employee database was as much as between
12          7,000 and 10,000 employees.  So the various
13          different departments that go along with that.
14   Q.     Was there any type of recordkeeping that you were
15          required to do that summarized your work?
16              MS. BAGLEY:  Object to the form.
17   Q.     (Mr. McKeeby)  Did you have -- does the term trip
18          reports mean anything to you?
19   A.     Yeah.  Those trip reports again -- and I think
20          that's what these little half sheets of paper
21          might -- I'm sorry.  The trip reports, yes.  The
22          trip reports was like a summary once the week was
23          complete that you wrote up what you did every day
```

| | | |
|---|---|---|
| 1 | | with the client, what was accomplished, any |
| 2 | | questions that the client may have had, any |
| 3 | | unresolved issues that may need to be addressed by |
| 4 | | a person more senior than myself, which was Jodi. |
| 5 | Q. | But you were the person that drafted the trip |
| 6 | | report? |
| 7 | A. | Yes, I was. |
| 8 | Q. | And was that done, you said, on a weekly basis? |
| 9 | A. | Yes, it was. |
| 10 | Q. | But it summarized daily activities? |
| 11 | A. | Yes, it did. |
| 12 | Q. | What did you do with the trip reports, just give |
| 13 | | them to Jodi? |
| 14 | A. | They were e-mailed to Jodi, yes. Jodi, and I |
| 15 | | think a copy also went to Penny. |
| 16 | Q. | You copied Penny on the e-mail? |
| 17 | A. | I believe so, yes. |
| 18 | Q. | In terms of the training that you conducted as an |
| 19 | | implementation specialist, was it classroom style |
| 20 | | training typically? |
| 21 | A. | Yes. |
| 22 | Q. | So there would be multiple people in the class? |
| 23 | A. | Yes, there would be. |

Freedom Court Reporting, Inc    79

```
 1    Q.    And they would all have laptop computers?
 2    A.    No.
 3    Q.    You would have a projection of a laptop?
 4    A.    A projection of the laptop.  Some of them did have
 5          their own laptop.  And some people just worked off
 6          the screen.  But generally, most times there was a
 7          laptop available in the training room.
 8    Q.    For each person who was attending the training?
 9    A.    Yes.  Most times there was.
10    Q.    And how did you know how to conduct the training
11          at a particular location in terms of what to show
12          the people in the classroom?
13    A.    That was based on the experience I had from
14          shadowing the more senior persons.  And then
15          before going to a particular location, Jodi would
16          -- we would have a conversation and discuss what
17          the needs of the clients were and what I would be
18          training the client on.
19    Q.    Was that documented, the kinds of training that
20          the client would need, or was that just something
21          conveyed to you in communications orally with
22          Jodi?
23    A.    Orally with Jodi.  And it would also be shown on
```