# FREEDOM COURT REPORTING

```
                                                        Page 1
 1            IN THE UNITED STATES DISTRICT COURT
              FOR THE EASTERN DISTRICT OF TEXAS
 2                     MARSHALL DIVISION
 3   PATTY BEALL, MATTHEW           )
     MAXWELL, DAVID GRAVLEY,        )
 4   TALINA MCELHANY, KELLY         )
     HAMPTON, KEVIN TULLOS,         )
 5   CASEY BROWN, JASON BONNER,     )
     ANTHONY DODD, ILENE            )
 6   MEYERS, TOM O'HAVER, JOY       )
     BIBLES, DON LOCCHI AND         )
 7   MELISSA PASTOR,                )
     Individually and on behalf     ) CIVIL ACTION
 8   of all others similarly        )
     situated,                      ) NO.: 2:08-CV-422 TJW
 9                                  )
                   PLAINTIFFS,      )
10                                  )
     VS.                            )
11                                  )
                                    )
12   TYLER TECHNOLOGIES, INC.       )
     AND EDP ENTERPRISES, INC.,     )
13                                  )
                   DEFENDANTS.      )
14
15         -----------------------------------
16                  ORAL DEPOSITION OF
17                     MELANIE BAIRD
18                    APRIL 26, 2010
19         -----------------------------------
20
21      ORAL DEPOSITION OF MELANIE BAIRD, produced as a
     witness at the instance of the DEFENDANTS, and duly
22   sworn, was taken in the above-styled and numbered cause
     on the 26th day of April, 2010, from 1:22 p.m. to
23   4:30 p.m., before Elaine Fowler, CSR in and for the
     State of Texas, reported by machine shorthand, at the
24   offices of Cathy Sosebee & Associates, 901 Mac Davis
     Lane, Lubbock, Texas, pursuant to the Federal Rules of
25   Civil Procedure and the provisions stated on the record
```

**367 VALLEY AVENUE**
**(205) 397-2397 BIRMINGHAM, ALABAMA 35209 877-373-3660**

EXHIBIT C

**FREEDOM COURT REPORTING**

Page 17

```
 1   support?  What is the business of Tyler?
 2        A.  They design software for governments so they
 3   can operate.
 4        Q.  But the time you were employed as software
 5   support, the software that Tyler sold to the municipal
 6   government, those clients would then call you if they
 7   had questions about the software?
 8        A.  Questions or problems.
 9        Q.  And did I understand you that those problems or
10   concerns would be communicated to you by the customer or
11   the client making a telephone call to you?
12        A.  They would call into a phone queue.
13        Q.  And when you say phone queue, tell the jury
14   what you mean by that.
15        A.  Where they call in and their call is taken in
16   the order it was received.
17        Q.  So you never knew what call you were going to
18   receive when you answered a telephone call?
19        A.  That is correct.
20        Q.  How long did you remain in the software support
21   specialist position?
22        A.  Approximately four years.
23        Q.  When you first became employed by Tyler your
24   starting salary was around $28,000; is that right?
25        A.  Yes.
```

**367 VALLEY AVENUE**
**(205) 397-2397 BIRMINGHAM, ALABAMA 35209 877-373-3660**

EXHIBIT C

**FREEDOM COURT REPORTING**

Page 18

```
 1        Q.   But by the time you resigned in 2008 you had
 2   received several raises; is that right?
 3        A.   Yes.
 4        Q.   And your ending salary was about $34,984 per
 5   year?
 6        A.   Something like that.
 7        Q.   As an implementation specialist, what was your
 8   job duty and responsibility?
 9        A.   As an implementation specialist I worked with
10   the project managers to implement contracts.
11        Q.   Tell me what that means, implementing
12   contracts.
13        A.   Okay.  Marketing would sell the applications to
14   the customer and then implementation, we -- project
15   managers would, you know, work out the details with the
16   customers and then we would configure the software into
17   a conversion and then train them on the application.
18        Q.   So as an implementation specialist, one of your
19   jobs was to convert and configure; is that right?
20        A.   I didn't work on the conversions as much as the
21   trainers did.
22        Q.   Did you ever work on conversions?
23        A.   I would help them -- in a conversion, I would
24   help them figure out what information needed to go in
25   which field in the software.  So, yes, I did work on
```

**367 VALLEY AVENUE**
**(205) 397-2397 BIRMINGHAM, ALABAMA 35209 877-373-3660**

EXHIBIT C

**FREEDOM COURT REPORTING**

Page 109

1    A.  That was Dane Womble and Dyke Ellison, and
2  Becky Stevens was also in the room.  She was my
3  supervisor in support.
4    Q.  Did she continue to be your supervisor when you
5  became an implementation specialist?
6    A.  No.
7    Q.  What do you remember Dyke and Dane telling you
8  about the requirements or the duties and
9  responsibilities of a job as an implementation
10 specialist?
11    A.  They actually did not explain what the job
12 would entail.  I was told that once I went over to
13 implementation they would explain everything to me then.
14 Nothing was ever -- this is your duty.  Things built up
15 as time went.
16    Q.  When you first became software support employee
17 with Tyler, were you a salaried employee?
18    A.  Yes.
19    Q.  And you were getting a fixed salary?  You were
20 getting the same salary week after week after week?
21    A.  Yes.
22    Q.  And when you became an implementation
23 specialist, were you still getting paid a fixed salary?
24    A.  Yes.
25    Q.  And your salary wasn't changing week by week?

**367 VALLEY AVENUE**
**(205) 397-2397 BIRMINGHAM, ALABAMA 35209 877-373-3660**

EXHIBIT C

**FREEDOM COURT REPORTING**

Page 110

1     A.  No.
2     Q.  And you were not getting any overtime pay for
3  any hours worked over 40 hours?
4     A.  I always knew that we weren't getting it; I
5  just never knew why.
6     Q.  Had you ever been a salaried employee before
7  becoming a salaried employee with Tyler?
8     A.  No.
9     Q.  Had you always been paid by the hour before
10  then?
11    A.  Yes.
12    Q.  Who were you working with before?
13    A.  Fireman's Fund Agribusiness.  It was a crop
14  insurance company.
15    Q.  What was your position with them?
16    A.  Do you want when I first started or when I
17  ended with them?
18    Q.  Let's start with when you first started.
19    A.  When I first started it was data processing,
20  then it was premium accountant.
21    Q.  Premium accounting or accountant?
22    A.  Accountant.
23    Q.  So you were an accountant with them, or what
24  did that mean?
25    A.  It meant -- I did handle the majority of the

**FREEDOM COURT REPORTING**

Page 111

1  accounting functions for our regional office, but I also
2  handled the billing and the payments when they came in.
3       Q.   When you were being interviewed for a position
4  with Tyler, during the interview process were you told
5  that you were going to be receiving a salary and not
6  overtime pay?
7       A.   No.
8       Q.   So when did you first become aware that you
9  were not getting paid overtime pay for the hours worked
10 over 40?
11      A.   When I started working at Tyler and I asked if
12 we got overtime pay and I was told no.
13      Q.   And you realized that even if you worked 45
14 hours you were still getting the same salary as if you
15 worked 40 hours per week, right?
16      A.   That was the way it was explained to me.
17      Q.   But, in fact, was it reflected in your paycheck
18 that the pay didn't change no matter how many hours you
19 worked?
20      A.   That is correct.
21      Q.   And did your hours change as well?  Were you
22 working a set number of hours per week or were they
23 different?
24      A.   The hours that we were, you know, required to
25 work was 8 to 5.  But if you didn't complete something,

**367 VALLEY AVENUE**
**(205) 397-2397 BIRMINGHAM, ALABAMA 35209 877-373-3660**

EXHIBIT C

**FREEDOM COURT REPORTING**

Page 112

1  they would ask, you know, why didn't you stay over and
2  do that.
3         Q.  So your hours, depending on your work load,
4  would change week to week, right?
5         A.  Yes.
6         Q.  It was possible one week you worked 40 and one
7  week you worked 45, for example, correct?
8         A.  Yes.
9         Q.  And did you ever work less than 40 hours per
10 week?
11        A.  Only if I took like a day off in the middle of
12 the week.  But not when I worked five days, no.
13        Q.  Did you ever make any complaints to anybody at
14 Tyler about overtime pay?
15        A.  I expressed my concerns to Dane Womble.
16        Q.  Tell me what you told Dane Womble.
17        A.  I just told him that, you know, I worked well
18 over 40 hours a week and I felt I should have been
19 compensated for that, and he said we don't do that.
20        Q.  So when you said you felt like you should be
21 compensated, you were referring to overtime pay?
22        A.  Yes.
23        Q.  What were the maximum number of hours that you
24 worked in a given week?
25        A.  Like any week?

**367 VALLEY AVENUE**
**(205) 397-2397 BIRMINGHAM, ALABAMA 35209 877-373-3660**

EXHIBIT C

**FREEDOM COURT REPORTING**

```
                                                    Page 157
 1            IN THE UNITED STATES DISTRICT COURT
               FOR THE EASTERN DISTRICT OF TEXAS
 2                    MARSHALL DIVISION
 3   PATTY BEALL, MATTHEW          )
     MAXWELL, DAVID GRAVLEY,       )
 4   TALINA MCELHANY, KELLY        )
     HAMPTON, KEVIN TULLOS,        )
 5   CASEY BROWN, JASON BONNER,    )
     ANTHONY DODD, ILENE           )
 6   MEYERS, TOM O'HAVER, JOY      )
     BIBLES, DON LOCCHI AND        )
 7   MELISSA PASTOR,               )
     Individually and on behalf    ) CIVIL ACTION
 8   of all others similarly       )
     situated,                     ) NO.: 2:08-CV-422 TJW
 9                                 )
               PLAINTIFFS,         )
10                                 )
     VS.                           )
11                                 )
     TYLER TECHNOLOGIES, INC.      )
12   AND EDP ENTERPRISES, INC.,    )
                                   )
13                                 )
               DEFENDANTS.         )
14
15            REPORTER'S CERTIFICATION
16           DEPOSITION OF MELANIE BAIRD
17                APRIL 26, 2010
18     I, Elaine Fowler, Certified Shorthand Reporter in
19   and for the State of Texas, hereby certify to the
20   following:
21      That the witness, MELANIE BAIRD, was duly sworn by
22   the officer and that the transcript of the oral
23   deposition is a true record of the testimony given by
24   the witness;
25
```

**367 VALLEY AVENUE**
**(205) 397-2397 BIRMINGHAM, ALABAMA 35209 877-373-3660**

EXHIBIT C

**FREEDOM COURT REPORTING**

Page 158

```
 1       That the deposition transcript was submitted on
 2   May 7, 2010 to the witness or to the attorney for the
 3   witness for examination, signature and return to me by
 4   _____;
 5
 6       That the amount of time used by each party at the
 7   deposition is as follows:
 8   MS. FARIN KHOSRAVI - 2 hours 51 minutes
 9   MS. CHANDRA HOLMES RAY - 7 minutes
10       That pursuant to information given to the
11   deposition officer at the time said testimony was taken,
12   the following includes counsel for all parties of
13   record:
14   MS. CHANDRA L. HOLMES RAY, Attorney for Plaintiffs
15   MS. FARIN KHOSRAVI, Attorney for Defendants
16
17       That $_____ is the deposition officer's
18   charges to the Defendants for preparing the original
19   deposition transcript and any copies of exhibits;
20
21       I further certify that I am neither counsel for,
22   related to, nor employed by any of the parties or
23   attorneys in the action in which this proceeding was
24   taken, and further that I am not financially or
25   otherwise interested in the outcome of the action.
```

**367 VALLEY AVENUE**
**(205) 397-2397 BIRMINGHAM, ALABAMA 35209 877-373-3660**

EXHIBIT C

# FREEDOM COURT REPORTING

```
                                                          Page 159
 1        Certified to by me this 7th day of May, 2010.
 2
 3
 4                         _____
                           ELAINE FOWLER, CSR, No. 5881
 5                         Expiration Date:  12/31/2011
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

**367 VALLEY AVENUE**
**(205) 397-2397 BIRMINGHAM, ALABAMA 35209 877-373-3660**

EXHIBIT C