**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| **PATTY BEALL, MATTHEW MAXWELL,** | § | |
| **DAVID GRAVLEY, TALINA MCELHANY,** | § | |
| **KELLY HAMPTON, CASEY BROWN,** | § | |
| **JASON BONNER, ANTHONY DODD,** | § | |
| **ILENE MEYERS, TOM O'HAVER,** | § | |
| **JOY BIBLES, AND MELISSA PASTOR,** | § | |
| **Individually and on behalf of all others** | § | |
| **similarly situated;** | § | |
| | § | |
| **Plaintiffs,** | § | **2:08-cv-422 TJW** |
| | § | |
| **TYLER TECHNOLOGIES, INC., AND** | § | |
| **EDP ENTERPRISES, INC.** | § | |
| **Defendants.** | § | |

**PLAINTIFFS' MOTION FOR PARTIAL**
**SUMMARY JUDGMENT ON DEFENDANTS' AFFIRMATIVE DEFENSE UNDER**
**29 U.S.C. 213 a (17), ADMINISTRATIVE EXEMPTION AND BRIEF IN SUPPORT**

Come now Plaintiffs, Patty Beall *et al.*, individually and on behalf of all others similarly situated, (hereinafter "Plaintiffs") and pursuant to Rule 56 of the Federal Rules of Civil Procedure move this Honorable Court for an order directing entry of Partial Summary Judgment dismissing Defendants' Affirmative Defense under 29 USCS 213 a(17), computer professional exemption. Plaintiffs specifically request that the court dismiss Defendants' affirmative defense under 29 USCS 213 a(17) claiming the computer professional exemption, on the grounds that as a matter of law, Defendants cannot sustain their legal burden of establishing through clear and affirmative evidence that each Plaintiff herein meets every requirement of the computer professional exemption under the Fair Labor Standards Act (FLSA).

**I.**

## STATEMENT OF ISSUES TO BE DECIDED

1.1.    Plaintiff's motion presents the issue of whether the primary job duties of the Plaintiffs, that held the job position of Implementation Consultant and/or Implementation Specialist, qualify for exemption from overtime pay under the computer professional exemption set forth in 29 USCA 213a(17).

## II.
## PLAINTIFFS' STATEMENT OF UNDISPUTED MATERIAL FACTS

2.1    Pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56.1, Plaintiffs state the following facts are not in dispute and are the only facts material to the disposition of Plaintiffs' Motion for Partial Summary Judgment as to the application of the computer professional exemption to the job position of  Implementation Consultants/Specialists:

1.    Tyler Technologies, Inc.  is a computer software company specialized in government and school application software.

2.    Implementation Consultants/Specialists were employed by EDP Enterprises and/or Tyler Technologies at all times relevant to this action.

3.    During the time that Implementation Consultants/Specialists were employed by EDP Enterprises and/or Tyler Technologies, Inc. their work involved interstate commerce.

4.    Defendants do not contend that the computer exemption applies to the positions of Trainer or Client Liaison.

5.    The only remaining position that Defendants contend is exempt under the computer professional exemption is the position of Implementation Consultant and/or Implementation Specialist.

6.    Defendants' software packages are "canned" software programs.

7.    Implementation Consultants/Specialists were paid more than $455.00 per week in salary.

8.    Implementation Consultants/Specialists were not paid $27.63 per hour for all hours worked.

9.      Implementation Consultants and/or Implementation Specialists employed by Tyler Technologies were uniformly classified as exempt employees.

10.     Implementation Consultants/Specialists, while employed by Defendants, EDP Enterprises, Inc. and/or Tyler Technologies, Inc. routinely worked in excess of 40 hours per week, including evenings and weekends.

11.     The job duties associated with the implementation of Defendants' software products were consistent for every project and included the following responsibilities: (1) business process review; (2) conversion; (3) configuration; (4) training; (5) go live; (6) post go live support.

12.     Implementation Consultants/Specialists spent the majority of their time training Defendants' customers on how to set up the software and operate the software.

13.     The task of "business process review" involved the gathering of information from the client and reviewing their current business processes in order to determine what the client's current software did and what the client would like the new software to do.

14.     The Implementers' responsibility with conversion was limited to reviewing conversion reports that were generated after the conversion software is run.

15.     Implementers do not create or write conversion software.

16.     Implementers do not load conversion software.

17.     Implementers do not determine how the conversion is to be performed.

18.     The task of "configuration" involves setting up the software according to the client's preferences.

19.     The training process involves simply instructing the customer's employees how to use the software.

20.     Training primarily consists of using "canned" screen shots from the software and walking the employees through each step in the process.

21.     "Go Live" is the process where the client begins using the software in its operations.

22.     The role of all implementers during "go live" is to be on site to answer questions, re-train if necessary and address glitches if they occur.

23.     Post go-live support involves answering questions such as the correct sequence of entering information in order to print checks.

24.     Post go-live support is usually very limited, amounting to a de minimis job duty.

25.     Implementation Consultants/Specialists do not write or create computer programs for Defendants.

26.     Implementation Consultants/Specialists do not perform any work on operating systems.

27.     Implementation Consultants and Implementation Specialists routinely spend more than fifty percent of their time training Tyler Technologies customers how to use Tyler's software packages.

28.     Implementation Consultants and Implementation Specialists did not make decisions or recommendations about what programs or program options the customer should use.

29.     The customers made the decision as to what programs and program options it would  implement.

30.     Implementation Consultants/Specialists did not have as their primary duty the performance of office or non-manual work directly related to the management or general business operations of Defendants.

31.     At least 50 percent (50%) or more of Implementation Consultants/Specialists' job activities  took place on location – meaning at the customer's site.

32.     Implementation Consultants/Specialists' job duties were not directly related to Defendants' general business operations or the general business operations of Defendants' customers.

33.     Implementation Consultants/Specialists' duties are related to producing Defendants' product.

34.     Implementation Consultants/Specialists do not exercise discretion or independent judgment with respect to matters of significance.

35.     Implementation Consultants/Specialists did not have the authority to bind the company or negotiate on behalf of the company.

36.     Implementation Consultants/Specialists job duties did not include the

authority to evaluate possible courses of conduct and act after considering the various possibilities.

37.    Implementation Consultants/Specialists did not make recommendations to the customer about the possible courses of conduct.

38.    Implementation Consultants/Specialists were instructed not to give Defendants' customers recommendations or advice on their business processes, instead Implementation Consultants/Specialists were only permitted to present the various options available through the software package.

39.    Project managers were responsible for planning the activities for each implementation.

40.    Some Implementation Consultants/Specialists prepared job agendas from canned agendas, other Implementation Consultants/Specialists were given agendas by their project manager.

41.    Implementation Consultants/Specialists do not "analyze" data.

42.    Implementation Consultants/Specialists' job duties required the use of skill and not the exercise of discretion and independent judgment.

43.    Implementation Consultants/Specialists were not required to have any kind of specialized academic training in order to hold the position of Implementation Consultant or Specialist.

44.    The performance of the Implementation Consultants/Specialists' job duties does not require knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction.

45.    Defendants had been notified on previous occasions, or should have known, about the violations of the FLSA, but did not take action, despite demands and notice.

46.    Defendant's actions were taken with knowledge that its acts violate the wage and hour provisions of the FLSA.

47.    Defendants knew that Implementation Consultants/Specialists routinely worked more than 40 hours per week.

48.    Defendants did not compensate Implementation Consultants/Specialists for all hours they actually worked.

49.     Defendants did not keep accurate time records of hours worked by Implementation Consultants/Specialists.

## III.
## SUMMARY JUDGMENT EVIDENCE

3.1     In support of their Motion and Incorporated Brief Plaintiffs incorporate the pleadings, any discovery and disclosure materials on file.

3.2     Plaintiffs specifically rely on Plaintiff's Response to Defendants' Motion for Decertification and the Exhibits filed therewith [Docket # 159] and Plaintiffs' Motion for Partial Summary Judgment on Defendants' Affirmative Defense under 29 USCA 213 a(1) Administrative Exemption and the Exhibits filed therewith.

3.3     Plaintiffs further rely on any affidavits filed and the following specific documents and attached exhibits:

EXHIBIT 1               DEPOSITION OF CHRISTOPHER HEPBURN

EXHIBIT 2               DEFENDANTS' ANSWERS AND OBJECTIONS
                        TO PLAINTIFFS' FIRST SET  OF
                        INTERROGATORIES

EXHIBIT 3               DEPOSITION OF ROBERT SANSONE

## IV.
## BACKGROUND

## 1.     JOB DUTIES OF IMPLEMENTATION CONSULTANT/SPECIALIST

4.1     Before addressing the merits of Defendants' affirmative defense  that the computer professional exemption applies to Implementation Consultants/Specialists, an understanding of their job duties is essential.  It is undisputed that no matter what Division's software is being implemented the basic implementation process is identical for all divisions of Tyler Technologies.   Indeed,

Defendant's corporate representative, Chris Hepburn, President of Tyler's Schools Division,[1] testified that implementation employees working for Tyler performed six primary duties: (1) a review of customer's current business processes; (2) data conversion and reviewing converted data; (3) software configuration and reviewing the configuration for errors; (4) training; (5) go-live assistance; and (6) post go-live support.[2]  Additionally, each implementation employee is overseen by a project manager who dictates when, where and how the implementer is to perform his/her job. (See Plaintiff's Response to Defendant's Motion to Decertify [Docket #159], p. 17).  Although the implementer is often at the client site alone, the parameters of what the implementer is allowed to do is pre-determined by the project manager. Id.   A brief description of each of the essential elements of an implementer's primary job duties is instructive:

### a.   Review of Customer's Current Business Processes

4.2    Business process review is the process of meeting with the client and reviewing their current business processes in order to determine how Tyler's software will need to be set up/configured or customized to fit the customer's processes. *Id*. Mr. Hepburn described this process as consultation with the client wherein one of Defendants' employees would ask questions to determine what the client's current software did and what the client would like the new software to do.[3]

4.3    Importantly, Defendants' software programs are "canned" "out of the box" programs with various options built into the programs which can be turned on or off as needed to suit the client's preferences. *Id.* at 18.  In other words, Defendants' MUNIS payroll software is the same

---

[1]*See* Exhibit 1, Hepburn Dep. 46:5-7.

[2]*See* Exhibit 1, Hepburn Dep. 20:11-21:5.

[3]*See* Exhibit 1, Hepburn Dep. 21:8-28:19.

whether it is implemented by Ilene Meyers in the Virgin Islands or Travis Void in Raleigh, North Carolina.  The basis for any difference between how Defendants' MUNIS payroll software functions for a client in the Virgin Islands as opposed to a client in North Carolina is the specific options chosen by each client.  For example, the client in the Virgin Islands may want to set up payroll checks on a weekly basis and the client in Raleigh may want to select the option of bi-weekly payroll checks. However, the **process** is identical for each implementer, i.e. turning on the options chosen by the client within the software modules. *Id.*

> **b.    Conversion**

4.4    Conversion is the process where the client's existing data (i.e. employee names, social security numbers, client names etc.) is converted to a format that can be read by the Defendants' software. *Id.*  The process involves the loading of conversion software by the conversion department or programmers and the software converts the client's existing data into a new format. The **only** role that some implementers are involved with in the conversion process is the review of conversion reports that are generated once the conversion software has attempted to convert all the data. *Id.*  The reports identify data that is not properly converted. The implementer identifies these errors and notifies the programmers and/or assists the client in correcting the way their existing data is entered so that the conversion software can read and convert the data properly. *Id*. at 19. The implementers do not write conversion software, they do not load conversion software and they do not determine how the conversion is to be performed. *Id.*

> **c.    Configuration**

4.5    Configuration is the process in which the implementer sets up the software according to the client's preferences as determined in the business process review. *Id*.

> **d.    Training**

4.6     The training process is identical for all implementers. Id. "Training" simply consists of instructing the client's employees how to set up and use the software. Id. The training process primarily involves showing the customers's employees the various screen shots from the software and walking them through each step in the process. *Id.*

### e.     Go Live

4.7     Go Live is the process where the client begins using the software in its operations. *Id.* The role of all implementers in this process is identical. *Id.* The implementer is on site to answer questions, re-train if necessary and address glitches if they occur. *Id.*

### f.     Post go live support

4.8     Post go live support is simply answering questions, in other words more training. *Id.* at 20. The client may have forgotten the sequence of entering information in order to print checks and the implementer merely goes over the steps of the process and walks the client through it, usually over the phone. *Id.*   Post go live support is nothing more than continued training that all implementers perform, it is simply occurring after go live instead of before go live. *Id.* Additionally, post go live support is usually very limited, amounting to a *de minimis* job duty at best. *Id.*

## V.
## ARGUMENT

### A.     THE STANDARD APPLICABLE TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

5.1     A Motion for Summary Judgment must be granted if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law."[4]  The party moving for summary judgment has the initial burden of informing the Court of the basis for its motion and identifying the pleadings, admissions, discovery documents, and affidavits it contends show the absence of a genuine issue of material fact.[5]  However, the moving party is not required to support its motion with affidavits or other similar materials, nor does the moving party have the burden of negating the other party's claim.[6]  The movant need only "point out" to the District Court that there is an "absence of evidence to support the non-moving party's case."[7]

5.2      The non-moving party must then go beyond its own pleadings to designate specific controverted facts raising genuine triable issues.[8]  In order to establish a genuine issue of material fact, "the nonmoving party may not rely on mere denials or allegations in its pleadings, but must designate specific facts showing that there is a genuine issue for trial."[9]  Rather, the nonmoving party must show that: (1) there is a factual dispute; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine.[10]  The plain language of Rule 56(c) mandates the entry of summary judgment against a nonmoving party which, after adequate time for discovery, fails to make a showing sufficient to establish the existence of an element essential to its case, and on which

---

[4]Fed. R. Civ. P. 5(c).

[5]*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

[6]*Id.* at 322-323.

[7]*Id.* at 324.

[8]*Id.*

[9]*Barge v. Anheuser-Busch, Inc.*, 87 F.3d 256, 258 (8th Cir. 1996).

[10]*RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.*, 49 F.3d 399, 401 (8th Cir. 1995).

the party will bear the burden of proof at trial.[11]


_____**B.____THE COMPUTER PROFESSIONAL EXEMPTION**

5.3     The FLSA exempts from its coverage several categories of employees. See 29 U.S.C.

§ 216. These exemptions are treated as affirmative defenses to liability under the Act, which means

that the defendant-employer has the burden of proving that the exemption applies to the

plaintiff-employee. See *Danesh v. Rite Aid Corp*., 39 F. Supp. 2d 7, 10 (D.D.C. 1999) (citing

*Corning Glass Works v. Brennan*, 417 U.S. 188, 196-97, 94 S. Ct. 2223, 41 L. Ed. 2d 1 (1974)).

"[E]xemptions from the Act are narrowly construed against the employer in order to further

Congress's goal of affording broad federal government protection." *Id*. (internal quotation marks

omitted); see also *Mitchell v. Ky. Fin. Co.*, 359 U.S. 290, 295, 79 S. Ct. 756, 3 L. Ed. 2d 815 (1959)

("It is well settled that exemptions from the Fair Labor Standards Act  are to be narrowly

construed."). Defendants contend that the Plaintiffs were/are exempt from the FLSA's coverage

under either of two provisions of the Act: the exemption for certain computer professionals, 29

U.S.C. § 213(a)(17), and the exemption for administrative employees, 29 U.S.C. § 213(a)(1).

The computer professional exemption, 29 USCS § 213 (a) and (a) (17), provides:

(a) Minimum wage and maximum hour requirements. The provisions of sections 6
(except section 6(d) in the case of paragraph (1) of this subsection) and 7 [29 USCS
§§ 206, 207] shall not apply with respect to–
.....

(17) any employee who is a computer systems analyst, computer programmer,
software engineer, or other similarly skilled worker, whose primary duty is–

(A) the application of systems analysis techniques and procedures, including
consulting with users, to determine hardware, software, or system functional
specifications;

---

[11]*Celotex Corp. v. Catrett*, 477 U.S. at 322.

(B) the design, development, documentation, analysis, creation, testing, or modification of computer systems or programs, including prototypes, based on and related to user or system design specifications;

(C) the design, documentation, testing, creation, or modification of computer programs related to machine operating systems; or

(D) a combination of duties described in subparagraphs (A), (B), and (C) the performance of which requires the same level of skills, and  who, in the case of an employee who is compensated on an hourly basis, is compensated at a rate of not less than $ 27.63 an hour.

5.4    To more clearly understand the application of the computer professional exemption to Plaintiffs job positions, a basic understanding of the various software components of a computer system is helpful.  An  "operating system" is the software that consists of programs and data that manages computer hardware resources and provides common services for efficient execution of various application software. Http://en.wikipedia.org/wiki/Operating_system The type of software that Plaintiffs worked with was "application software." "Application software" is computer software designed to help the user to perform singular or multiple related specific tasks. ...Examples include enterprise software, accounting software.... "Application software"  is contrasted with system software and middleware, which manage and integrate a computer's capabilities, but typically do not directly apply them in the performance of tasks that benefit the user." ....An application thus differs from an operating system (which runs a computer), a utility (which performs maintenance or general-purpose chores) , and a programming language (with which the computer programs are created).

**Http://en.wikipedia.org/wiki/Application_software**

C.    **SUMMARY JUDGMENT IS PROPER ON DEFENDANTS' COMPUTER PROFESSIONAL EXEMPTION DEFENSE AS TO ALL SUBCLASSES OF IMPLEMENTATION CONSULTANTS/SPECIALISTS .**

1.    **THE JOB DUTIES OF EACH IMPLEMENTATION CONSULTANT/SPECIALIST.**

     5.5    The job duties and the names of the remaining  Plaintiffs of each Implementation

Consultant/Specialist  sub-class are set forth below.

**EDEN SUB CLASS IMPLEMENTATION CONSULTANTS**

Job duties included: (1) business process review ; (2) conversion; (3) configuration; (4) training; (5) go live; (6) post go live support.

Joy Bibles
Titus Britt
David Hayner
Tom O'Haver
Eyvonne Wilton

**INCODE SUB CLASS IMPLEMENTATION CONSULATANTS:**

Job duties included: (1) business process review ; (2) conversion; (3) configuration; (4) training; (5) go live; (6) post go live support.

Gayla Duke
Lorraine Mutch
Eric Emde
Melanie Baird
Larry Churnovic
David Edward

**ODYSSEY SUB CLASS IMPLEMENTATION CONSULTANTS:**

Job duties included: (1)Business process review ; (2) conversion; (3) configuration; (4) training; (5) go live; (6) post go live support.

Jill Brown
Kim Huynh
Linda Carrington

**EAGLE SUB CLASS IMPLEMENTATION CONSULTANTS:**

Job duties included: (2) conversion; (3) configuration; (4) training; (5) go live; (6) post go live support.

Anthony Dodd

**MUNIS SUB CLASS IMPLEMENTATION CONSULTANTS:**

Job duties included: (2) conversion; (3) configuration; (4) training; (5) go live; (6) post go live support.

Kimberly Gennette
Geraldine Ingram
Bethany Maynard
Travis Void
Ilene Meyers
Joy Flynn
Laura Milburn
Kevin Mosenthin
Betty Dupree
Sandra Dunning
Amy Dunn
Ronald Grimwood

5.    The undisputed facts support a finding that the job duties of each of the respective

Implementation Sub Classes  are not the type of job duties that would entitle Defendants to classify

Implementation Consultants/Specialists as exempt under the Computer Professional Exemption.

> **2.    THE JOB DUTIES OF THE IMPLEMENTATION CONSULTANTS/SPECIALISTS DO NOT QUALIFY UNDER 29 U.S.C. § 213 (a)(17), THE COMPUTER PROFESSIONAL EXEMPTION.**
>
> > **a.    IMPLEMENTATION CONSULTANTS/SPECIALISTS ARE NOT COMPUTER SYSTEMS ANALYSTS, COMPUTER PROGRAMMERS, SOFTWARE ENGINEERS OR OTHER SIMILARLY SKILLED WORKERS IN THE COMPUTER FIELD.**

5.    The FLSA regulations clearly require  a threshold level of skill commensurate with

a computer systems analyst, computer programmer or software engineer in order for the computer

professional exemption to apply.   Like the other "professional exemptions" a certain level of

professional skill or education is required in order for the exemption to apply.   Employees who

qualify for the computer professional exemption must be  highly-skilled in computer systems

analysis, programming, or related work in software functions. 29 C.F.R. § 541.303(c). In *Dybach*

*v. State of Fla. Dept. Of Corrections*, 942 F.2d 1562, 1565 (11th Cir. 1991), the court recognized that

"before a particular position can qualify as one which climbs to the level of the professional exemption of section 213(a)(17), the duties of that position must call for a person who is in a learned profession with at least a college degree in a specialized type of learning…." See also, *Bagwell v. Florida Broadband, LLC*, 385 F. Supp. 2d 1316, 1328 (S.D. Fla. 2005).

5.8     Implementation Consultants/Specialists do not possess the level of skill contemplated by the computer professional exemption.   It is undisputed that Implementation Consultants/Specialists are not computer systems analysts, computer programmers or software engineers, nor did their job duties encompass duties that required those skills.  Although Defendants would have this Court believe that the Implementation Consultants/Specialists engaged in "systems analysis" because they would show Defendants' customers available options within the computer software, this is not the type of  "systems analysis" skills  contemplated by the regulations.

> **b.     IMPLEMENTATION CONSULTANTS/SPECIALISTS' PRIMARY DUTY DID NOT CONSIST OF THE APPLICATION OF SYSTEMS ANALYSIS TECHNIQUES AND PROCEDURES INCLUDING CONSULTING WITH USERS, TO DETERMINE HARDWARE, SOFTWARE, OR SYSTEM FUNCTIONAL SPECIFICATIONS UNDER 29 U.S.C. § 213(A)(17)(A).**

5.9     Implementation Consultants/Specialists' primary duty did not consist of the application of systems analysis techniques and procedures, including consulting with users, to determine hardware, software or system functional specifications.

5.10     It is undisputed that the Implementation Consultants/Specialists' job duties did not include consulting with Defendants' clients to determine their hardware or software specifications. The Implementation Consultants/Specialists had nothing to do with determining hardware specifications and only became involved in a project after the software had already been sold to the client.  While Defendants have contended  that Implementation Consultants/Specialists performed a combination of the computer tasks set forth in 29 USCS § 213 (a) (17), Defendants have only been

able to articulate facts related to the job duties set forth in (a)(17) (A).  Defendants assert that Implementation Consultants/Specialists "regularly and customarily were required to consult with users to determine hardware, software or system functional specifications in their communications with Tyler's customers to ascertain system and information flow needs and requirements." (Exhibit "2 " Tyler's Answers and Objections to Plaintiffs' First Set of Interoggatories, Number 11). [12]  The regulations do not define "system functional specifications."  However, if the court determines that system functional specifications encompasses the business process review that some Plaintiffs participated in, Plaintiffs job duties regarding the business process review was so limited that it cannot rise to the level of skilled computer work envisioned by the regulation.

5.11    For example, Linda Carrington from the ODYSSEY sub-class describes her role in the business process review as operating the computer while the project manager presented the program. See *Plaintiff's Response to Defendants' Motion to Decertify* at page 35 & 36, footnote 138 & 139. Others describe their participation in the business process review as discussing options with clients' or asking questions about how they operate their current system.  *Id*. at page 29 -30 footnotes 111-114; page 34 footnotes128-131.   This job task is not what was envisioned by the regulations as consulting with users to determine system functional specifications.

---

[12]    *See* Exhibit 2. In response to Plaintiff's Interrogatory number 11, Defendants asserted the following with regard to the duties of implementation consultants that they contend qualify the position for exemption under the computer professional exemption.

"Tyler contends that the Implementation Consultants performed a combination of the duties identified above and, in particular, Item No. 1 above, in that they regularly and customarily were required to consult with users to determine hardware, software or system functional specifications in their communications with Tyler's customers to ascertain system and information flow needs and requirements."

"Tyler contends that Systems Engineers are covered by the computer professional exemption in that they perform a combination of the duties referenced above and, in particular, were required to consult with users to determine hardware and software needs and to assess, document, and test modifications of computer systems based on customer design specifications." Exhibit " "

5.12     Interestingly, Bob Sansone, Tyler Technologies' corporate representative with the most knowledge regarding the classification of the Plaintiffs as exempt, testified that the only exemption that Tyler used to classify the Plaintiffs as exempt was the administrative exemption. (Exhibit "3" Deposition of Bob Sansone, p. 103).  He provided no reasoning as to how the computer professional exemption would apply to the Plaintiffs.  Instead,  he stated that Tyler Technologies considered the Plaintiffs to be exempt because the implementation process is dynamic and unpredictable, you can't prepare someone for it, there are many components to it, the employee  must be able to deal with the unknown, resolve problems, consult with the customer on choices, discuss consequences and benefits and sometimes come up with a new way to do a task that had never been done before.  (Exhibit "3" Deposition of Bob  Sansone, pages 61-63).  However, Mr. Sansone had to admit that it is the customer/client that ultimately makes decisions as to which option the customer/client decides to go with. *Id*.     There are no disputed facts regarding whether Implementation Consultants' and/or Implementation Specialists' primary duty was the application of systems analysis techniques and procedures, including consulting with users, to determine hardware, software or system functional specifications.

> **c.     PLAINTIFFS' PRIMARY DUTY DID NOT CONSIST OF THE DESIGN, DEVELOPMENT, DOCUMENTATION, ANALYSIS, CREATION, TESTING OR MODIFICATION OF COMPUTER SYSTEMS OR PROGRAMS UNDER 29 U.S.C. § 213(A)(17)(B).**

5.13     Plaintiffs' primary duties did not consist of the design, development, documentation, analysis creation, testing or modification of computer systems or programs.  Plaintiffs job duties only involved setting up pre-existing parameters within Defendants' application software programs depending on the choices made by the client.  While Plaintiffs may run the programs at the client site to see if the program operates properly (i.e. printing invoices correctly), this can hardly be considered the type of "testing" envisioned by the regulations that relate to "computer systems or programs."

> **d.** **PLAINTIFFS' PRIMARY DUTY DID NOT CONSIST OF THE DESIGN, DOCUMENTATION, TESTING, CREATION OR MODIFICATION OF COMPUTER PROGRAMS RELATED TO MACHINE OPERATING SYSTEMS UNDER 29 U.S.C. § 213(A)(17)(C).**

5.14    Plaintiffs' primary duty did not consist of the design, documentation, creation or modification of computer programs related to "machine operating systems."  Plaintiffs did not work with the "operating systems" of Defendants' software they only worked with the "application software" that Defendants sold to their customers.

> **D.** **CASE LAW AND DEPARTMENT OF LABOR OPINIONS SUPPORT FINDING THAT THE PLAINTIFFS' PRIMARY  JOB DUTIES DO NOT QUALIFY AS EXEMPT UNDER THE REGULATIONS**.

> **1.** **Department of Labor Op. Letter, August 19, 1999, 1999 DOLWH LEXIS 88.**

5.15    In this DOL opinion, the job duties of the employee were nearly identical to those of the Plaintiffs herein.  At issue in 1999 DOLWH LEXIS 88 was the job position of "customer training consultant." The position was within an information management firm engaged in the installation of computer systems and customer training on the installed software.  "Customer training consultants" provided training to employees on customers' specialized computer software; manipulated and modified software settings and specifications (e.g. toolbars and setup) to fit and respond to customer needs (did not include program writing or software developing); installed, debugged, troubleshot, and converted data from old systems to the new conversion; tested customers' modems; and conducted customer follow-up visits to ensure customer satisfaction.

5.16    The DOL found that the "customer training consultants" were not exempt employees because they did not engage in determining hardware/software, or system functional specifications; or design, develop, document, analyze, create, test, or modify computer system or programs as required by the regulations. *Id*. at *2-3

## 2.      Department of Labor Op. Letter, May 11, 2001, 2001 DOLWH LEXIS 4.

5.17     The Department of Labor concluded in this opinion that a "systems engineer" position was non-exempt.  The responsibilities of the "systems engineer" included support services to local businesses; designing computer solutions to fit the client's need at a variety of local businesses (this involved analyzing current equipment and software, identifying equipment and software needs, determining a scope of work for implementation and integration of old with the new, and continuing with support of hardware and software after the implementation was complete).  Fo the "systems engineer"each work week differed in projects and responsibilities and was dependent upon the client's needs.  There was no direct supervision of employees associated with the position. Approximately 80% of each workweek was spent performing these activities.  The other 20% was spent traveling or writing reports.

5.18     The DOL found that the "employee's primary duty is to identify computer solutions to fit the need of a variety of local businesses, but that the employee does not design, create, modify the systems or programs.  Therefore, it is our opinion that this employee does not meet the duties requirements for any of the exemptions." *Id*.

## 3.      Department of Labor Op. Letter, October 26, 2006, 2006 DOLWH LEXIS 56.

5.19     In this opinion letter, the Department of Labor addressed the exempt status of an "IT Support Specialist" under the administrative and computer professional exemptions.   The Opinion letter recited the job duties as follows:

> 55% - - Analyzes, troubleshoots, and resolves complex problems with business applications, networking, and hardware. Accurately documents all work in appropriate problem tracking software. Prioritizes tasks based on service level agreement criteria with limited supervision.

> 20% - - Install, configures, and tests upgraded and new business **computers** and applications based upon user-defined requirements. Assists users in identifying

hardware/software needs and provides advice regarding current options, policies, and procedures. Creates and troubleshoots network accounts and other business application user accounts as documented in the employee lifecycle process.

10% - - Participates in the design, testing, and deployment of client configurations throughout the organization. This process requires detailed knowledge of Microsoft operating systems and compatible business applications. Leverages application packaging software technology for deployment of business applications to client systems.

5% - - Participates in the analysis and selection of new technology required for expanding computing needs throughout the organization. Works with competing vendors to determine the best selection based on price, technical functionality, durability, manufacturer support, manufacturer vision, and position in the healthcare industry.

5% - - Documents technical processes and troubleshooting guideline. Documents end-user frequently asked questions about **computer** systems or programs and publishes on Intranet as guideline for the entire organization.

5% - - Monitors automated alerts generated by systems management tools and makes decisions on the most effective resolution.

5.20    The DOL ultimately concluded that the position did not qualify for exemption under the administrative nor the computer professional exemption.

### 4.    *Hunter v. Sprint Corp*., 453 F. Supp. 2d 44, 52 (D.D.C. 2006)

5.21    In *Hunter v. Sprint Corp*., 453 F. Supp. 2d 44 (D.D.C. 2006) the Plaintiff employee had a Bachelor of Science degree in computer information systems and worked for Sprint in several positions including NTAC Engineer I,  NTAC Engineer II, and Managed Network Operations ("MNO") Engineer II.  *Id*. at 47-48. In those positions, Plaintiff  functioned primarily as a customer service representative, responding to telephone inquiries from clients who were having technological difficulties with Sprint's internet services.  *Id*. at 48. His role was as a second-tier responder -- that is, addressing questions or concerns that could not be handled by the person who fielded the initial call.  *Id*.  In that role, he would attempt to diagnose the source of a particular client problem and would assist the client in resolving it. *Id*. Often, he functioned as a liaison between the customer and

higher-level Sprint technicians or outside vendors, such as when the customer's problem appeared to require a modification of software code. *Id*.  In addition to those duties, the Plaintiff occasionally updated the schedule for employees in his group, at his supervisor's request, and provided on-the-job training to many newly hired employees. *Id*.

5.22    Sprint contended that the Plaintiff was exempt because he had to "analyze problems" that were "varied and unique," he had to "interface with the customer or vendor" and "conduct tests in trying to solve problems, and he did not follow a manual or have a supervisor watching over his shoulder." *Id*. at 51.   The court disagreed, finding that the responsibilities described in the computer-professional exemption require a substantially higher degree of skill than what the Plaintiff described in his deposition.   *Id*.   The court explained that the Plaintiff's job did not involve "determin[ing] hardware, software, or system functional specifications" or the "design, development, documentation, analysis, creation, testing, or modification of computer systems or programs" based on such specifications. *Id*. at 52.  Nor did the limited "modifications" he would make to computer software (i.e., uploading code provided by vendors) "relate[] to machine operating systems." *Id*. The Court found that it appeared that the Plaintiff  functioned as a technically proficient help-desk employee whose primary duty was customer service.  *Id*.  As such, the court concluded that "[t]he mere fact that some of the tasks [the Plaintiff] performed can be described as 'consulting,' 'analysis,' or 'testing' relating to computers does not mean that [Plaintiff] falls within the ambit of a provision that is designed to exempt computer programmers, network designers, and software developers." *Id.*

## VI.
## CONCLUSION

Based on the undisputed material facts, it is clear that the Plaintiffs that held the position of Implementation Consultant and/or Implementation Specialist did not perform duties that would qualify their position as exempt under 29 U.S.C. § 213(a)(17),  the computer professional exemption.

As such, this Court should grant Plaintiff's Motion for Partial Summary Judgment on Defendants' Affirmative Defense Under 29 U.S.C. § 213(a)(17).

Respectfully submitted,

SLOAN, BAGLEY, HATCHER & PERRY
LAW FIRM

/s/ Laureen F. Bagley
John D. Sloan, Jr.
State Bar No. 18505100
jsloan@textrialfirm.com
Laureen F. Bagley
State Bar No. 24010522
lbagley@textrialfirm.com
101 East Whaley Street
P.O. Drawer 2909
Longview, Texas 75606
(903) 757-7000
(903) 757-7574 (Fax)

Alexander R. Wheeler
awheeler@rrexparris.com
Jason Paul Fowler
jfowler@rrexparris.com
R. REX PARRIS LAW FIRM
42220 10TH Street West, Suite 109
Lancaster, CA 93534-3428
(661) 949-2595
(661) 949-7524 (Fax)

John P. Zelbst
zelbst@zelbst.com
Chandra L. Holmes Ray
chandra@zelbst.com
ZELBST, HOLMES & BUTLER
P.O. Box 365
Lawton, OK 73502-0365
(580) 248-4844
(580) 248-6916 (Fax)

James E. Wren
Texas State Bar No. 22018200
James_Wren@baylor.edu
One Bear Place #97288
Waco, Texas 76798-7288
(254) 710-7670
(254) 710-2817 (Fax)
**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I hereby certify that on this the 5th day of January, 2011, a true and correct copy of this document was sent via electronic mail to the following:

Paulo B. McKeeby
Ellen L. Perlioni
Farin Khosravi
*Morgan, Lewis & Bockius LLP*
1717 Main Street, Suite 3200
Dallas, TX 75201-7347

Deron R. Dacus
*Ramey & Flock P.C.*
100 East Ferguson, Suite 500
Tyler, TX 75702

By: /s/ Laureen F. Bagley
LAUREEN F. BAGLEY