IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

MARSHALL DIVISION

- - -

PATTY BEALL, MATTHEW MAXWELL,       )

DAVID GRAVELY, TALINA MCELHANY,     )

KELLY HAMPTON, CASEY BROWN,         )

JASON BONNER, KEVIN TULLOS,         )

ANTHONY DODD, ILENE MEYERS,         )

TOM O'HAVER, JOY BIBLES, DON        )

LOCCHI and MELISSA PASTOR,          )

Individually and on behalf of       )

all others similarly situated;      )

    Plaintiffs                       )

vs.                                 ) 2:08-cv-422-TJW

TYLER TECHNOLOGIES, INC., and       )

EDP ENTERPRISES, INC.               )

    Defendants.                      )

------------------------------------

VIDEOTAPED DEPOSITION OF EDP ENTERPRISES, INC.'S
CORPORATE REPRESENTATIVE, ROBERT SANSONE
PORTLAND, MAINE
AUGUST 17, 2010

ATKINSON-BAKER, INC.
COURT REPORTERS
(800) 288-3376
www.depo.com
REPORTED BY: Cheryl C. Pieske, RMR
FILE NO.: A40636D

**EXHIBIT "3"**

```
 1              IN THE UNITED STATES DISTRICT COURT
 2               FOR THE EASTERN DISTRICT OF TEXAS
 3                       MARSHALL DIVISION
 4                            - - -
 5   PATTY BEALL, MATTHEW MAXWELL,    )
 6   DAVID GRAVELY, TALINA MCELHANY,  )
 7   KELLY HAMPTON, CASEY BROWN,      )
 8   JASON BONNER, KEVIN TULLOS,      )
 9   ANTHONY DODD, ILENE MEYERS,      )
10   TOM O'HAVER, JOY BIBLES, DON     )
11   LOCCHI and MELISSA PASTOR,       )
12   Individually and on behalf of    )
13   all others similarly situated;   )
14           Plaintiff,                )
15       vs.                           ) 2:08-cv-422 TJW
16   TYLER TECHNOLOGIES, INC., and,   )
17   EDP ENTERPRISES, INC.,           )
18           Defendants.               )
19   ----------------------------------
20
21           Videotaped deposition of ROBERT J. SANSONE,
22   taken on behalf of Plaintiff, at 477 Congress Street,
23   Portland, Maine, commencing at 8:40 a.m., Tuesday, August
24   17, 2010, before Cheryl C. Pieske, RMR, Court Reporter
25   and Notary Public.
```

2

**EXHIBIT "3"**

```
 1                    A P P E A R A N C E S:

 2   FOR PLAINTIFFS:

 3   SLOAN, BAGLEY, HATCHER & PERRY LAW FIRM
     BY: LAUREEN F. BAGLEY, ESQ.
 4   101 East Whaley Street
     P.O. Drawer 2909
 5   Longview, Texas 75601

 6   ZELBST, HOLMES & BUTLER
     BY: CHANDRA L. HOLMES, RAY, ESQ.
 7   411 Southwest 6th Street
     Lawton, Oklahoma 73501
 8

 9   FOR DEFENDANT:

10   MORGAN, LEWIS & BOCKIUS, LLP
     BY: PAULO B. McKEEBY, ESQ.
11   1717 Main Street, Suite 3200
     Dallas, Texas, 75201-7347
12
     TYLER TECHNOLOGIES, INC.
13   H. LYNN MOORE, ESQ.
     General Counsel
14

15   Also Present: Neil Orenstein, Videographer

16

17

18

19

20

21

22

23

24

25
```

3

**EXHIBIT "3"**

| | | |
|---|---|---|
| 1 | A. We prepared position descriptions. I talked to | 10:03:39 |
| 2 | the project managers. I recruited for the position. I | 10:03:45 |
| 3 | talked to implementors. Quite a bit because it's -- we | 10:03:50 |
| 4 | have a number of them, and so I was filling a lot of | 10:03:58 |
| 5 | positions, interviewed a lot of candidates. So I had to | 10:04:01 |
| 6 | become familiar with the position. | 10:04:05 |
| 7 | Q. And what did the project manager tell you that | 10:04:06 |
| 8 | made you feel comfortable that the job position was | 10:04:09 |
| 9 | exempt? | 10:04:14 |
| 10 | A. Well, it wasn't just one project manager, first | 10:04:14 |
| 11 | of all. | 10:04:20 |
| 12 | Q. Sure. | 10:04:20 |
| 13 | A. It was several. But that the implementation | 10:04:20 |
| 14 | process is dynamic and unpredictable and that there are | 10:04:25 |
| 15 | many components of it, and you cannot totally prepare | 10:04:29 |
| 16 | somebody for what they're going to face when they go on | 10:04:35 |
| 17 | site; and the -- a candidate or implementation specialist | 10:04:37 |
| 18 | has to be able to deal with the unknown, the unforeseen, | 10:04:44 |
| 19 | and figure out a way to get the process moving again and | 10:04:49 |
| 20 | resolve problems that come up that no one would have | 10:04:54 |
| 21 | known about or predicted. | 10:04:57 |
| 22 | Q. Anything else? | 10:04:59 |
| 23 | MR. McKEEBY: The anything else is -- what's the | 10:05:02 |
| 24 | underlying question, what he was told? | 10:05:08 |
| 25 | MS. BAGLEY: What he was told by the project | 10:05:10 |

60

EXHIBIT "3"

|    |    |    |
|----|----|----|
| 1  | managers that he spoke with. | 10:05:12 |
| 2  | A.   They also told me that the job was | 10:05:13 |
| 3  | multi-faceted, that there was consulting with the | 10:05:17 |
| 4  | customer on how to do things with choices, and did they | 10:05:22 |
| 5  | want to set it one way or another, and if they did it one | 10:05:27 |
| 6  | way, these would be the consequences and the benefits; | 10:05:30 |
| 7  | and if they did it another way, these are the | 10:05:32 |
| 8  | consequences and benefits, and possibly coming up with a | 10:05:35 |
| 9  | third way that no one had ever done before that fits that | 10:05:39 |
| 10 | customer, and that may or may not ever happen again. | 10:05:42 |
| 11 | They're all unique situations. | 10:05:46 |
| 12 | Q.   Anything else? | 10:05:48 |
| 13 | A.   There were many other things, but that was a | 10:05:53 |
| 14 | long time ago and -- | 10:06:00 |
| 15 | Q.   Okay.  Well, I'm assuming you have engaged in | 10:06:01 |
| 16 | such an evaluation since that time. | 10:06:04 |
| 17 | A.   Uh-hmm. | 10:06:06 |
| 18 | Q.   Correct? | 10:06:06 |
| 19 | A.   Well, not a formal evaluation because, again, | 10:06:07 |
| 20 | I'm pretty comfortable with it being -- | 10:06:11 |
| 21 | Q.   Go ahead. | 10:06:14 |
| 22 | A.   -- being exempt. | 10:06:15 |
| 23 | Q.   Okay. | 10:06:16 |
| 24 | A.   I've never heard anything to the contrary that | 10:06:17 |
| 25 | has made me think that they weren't. | 10:06:19 |

EXHIBIT "3"

| | | |
|---|---|---|
| 1 | Q. So your present day comfortableness with regard | 10:06:21 |
| 2 | to the exempt status of the implementation consultant | 10:06:26 |
| 3 | position is based partly on the evaluation you were | 10:06:29 |
| 4 | involved with in 1995 with MUNIS, correct? | 10:06:34 |
| 5 | A. Yes. | 10:06:37 |
| 6 | Q. All right. And since that time, there has been | 10:06:37 |
| 7 | nothing that you have learned that has made you change | 10:06:40 |
| 8 | your mind about the exempt status of that position, | 10:06:42 |
| 9 | correct? | 10:06:47 |
| 10 | A. That's correct. | 10:06:47 |
| 11 | Q. Now, you also said you spoke to several | 10:06:47 |
| 12 | implementors about the job position and gained some | 10:06:50 |
| 13 | information from them. Did you learn anything other than | 10:06:55 |
| 14 | what you've already told us about when you spoke to the | 10:06:58 |
| 15 | project managers? | 10:07:02 |
| 16 | A. No, I did not. | 10:07:07 |
| 17 | Q. Okay. So my understanding, then, from your | 10:07:08 |
| 18 | testimony is that your -- your decision or your under -- | 10:07:12 |
| 19 | strike that. From what I understand from your testimony, | 10:07:18 |
| 20 | your belief that the implementation consultant position | 10:07:26 |
| 21 | is an exempt position under the Fair Labor Standards Act | 10:07:30 |
| 22 | is based on information you obtained from project | 10:07:33 |
| 23 | managers and implementation consultants and included job | 10:07:36 |
| 24 | duties that were dynamic and unpredictable, that you | 10:07:42 |
| 25 | could not totally prepare someone for the job. Is that | 10:07:50 |

EXHIBIT "3"

```
 1  correct?                                                10:07:55
 2       A.  Actually, it's reversed.                       10:07:55
 3       Q.  Okay.                                          10:07:57
 4       MR. McKEEBY:  Hold on.  Object to the form of the  10:07:57
 5  question.  You can answer, if you understand.           10:07:58
 6       A.  Yeah.  The implementation process is dynamic   10:08:03
 7  and unpredictable.                                      10:08:06
 8  BY MS. BAGLEY:                                          10:08:06
 9       Q.  Right.                                         10:08:07
10       A.  And I believe you said you can't prepare them  10:08:07
11  for the job?                                            10:08:10
12       Q.  Right, I think that's one of the things you    10:08:11
13  said, you can't totally prepare someone.                10:08:13
14       A.  For the -- well, "job" isn't the right word but 10:08:14
15  for what's going to happen when they get to the site.   10:08:17
16       Q.  Okay.  And that the implementation consultant  10:08:19
17  deals with unknown and unforeseen things at the site?   10:08:23
18       A.  Yes.                                           10:08:26
19       Q.  And that the implementation consultant is      10:08:26
20  responsible for resolving problems?                     10:08:31
21       A.  Uh-hmm.  Yes.                                  10:08:33
22       Q.  And that the position is multi-faceted; is that 10:08:34
23  correct?                                                10:08:39
24       A.  Yes.                                           10:08:39
25       Q.  And that the implementation consultant has to  10:08:39
```

EXHIBIT "3"

| | | |
|---|---|---|
| 1 | consult with the customer regarding options and provide | 10:08:44 |
| 2 | the customer with the consequences and benefits regarding | 10:08:48 |
| 3 | different options that are available within the software? | 10:08:52 |
| 4 |     A.   That's correct. | 10:08:55 |
| 5 |     Q.   Okay.  Can you think of anything else that you | 10:08:56 |
| 6 | based your decision on that the job position of | 10:08:59 |
| 7 | implementation consultant was an exempt position under | 10:09:04 |
| 8 | the Fair Labor Standards Act? | 10:09:06 |
| 9 |     MR. McKEEBY:  Object to the form of the question. | 10:09:08 |
| 10 | You can answer. | 10:09:11 |
| 11 |     A.   Nothing else comes to mind at the moment but | 10:09:13 |
| 12 | there are -- there are many factors that contribute, but | 10:09:22 |
| 13 | those are the major ones. | 10:09:26 |
| 14 |     Q.   Now, I want -- I want to ask a little more | 10:09:28 |
| 15 | specific question.  What -- did you make a determination | 10:09:31 |
| 16 | with regard to each of these different job | 10:09:35 |
| 17 | responsibilities that required the exercise of | 10:09:42 |
| 18 | discretion? | 10:09:45 |
| 19 |     A.   Did I?  Yes. | 10:09:50 |
| 20 |     Q.   Okay.  And what did you consider to be an | 10:09:52 |
| 21 | exercise of discretion within the job responsibilities | 10:09:55 |
| 22 | that you have outlined for us? | 10:10:01 |
| 23 |     A.   Well, all of them. | 10:10:02 |
| 24 |     Q.   And did you make a -- a specific evaluation of | 10:10:06 |
| 25 | the discretion used?  For instance, did you -- with | 10:10:17 |

| | | |
|---|---|---|
| 1 | Q. Now, it's my understanding that the only | 11:09:08 |
| 2 | exemption that is being asserted with regard to the | 11:09:12 |
| 3 | implementor position is administrative exemption; is that | 11:09:21 |
| 4 | correct? | 11:09:25 |
| 5 | MR. McKEEBY: Well, I don't know. | 11:09:25 |
| 6 | BY MS. BAGLEY: | 11:09:28 |
| 7 | Q. Strike that. Let me start over. What | 11:09:28 |
| 8 | exemption is Tyler Technologies relying on for purposes | 11:09:32 |
| 9 | of classifying implementors as exempt? | 11:09:38 |
| 10 | MR. McKEEBY: He's not equipped to answer that | 11:09:41 |
| 11 | question, and I'm not trying to be tricky. It's just the | 11:09:43 |
| 12 | administrative exemption, but I haven't prepared him to | 11:09:47 |
| 13 | testify on behalf of the company about the defenses in | 11:09:51 |
| 14 | the case. | 11:09:53 |
| 15 | MS. BAGLEY: I'm not -- and I'm not asking about the | 11:09:55 |
| 16 | defenses. I'm asking in his mind, in Tyler's corporate | 11:09:57 |
| 17 | decision making -- | 11:10:04 |
| 18 | MR. McKEEBY: Okay. | 11:10:04 |
| 19 | MS. BAGLEY: -- process, what exemption were they | 11:10:06 |
| 20 | using? | 11:10:08 |
| 21 | MR. McKEEBY: Okay. | 11:10:09 |
| 22 | MS. BAGLEY: -- to -- you know, what part of the | 11:10:12 |
| 23 | exempt classifications was Tyler relying on for purposes | 11:10:18 |
| 24 | of saying that the implementor position was exempt? | 11:10:21 |
| 25 | A. The implementor position, you mean | 11:10:24 |

**EXHIBIT "3"**

| | | |
|---|---|---|
| 1 | implementation consultant or specialist? | 11:10:27 |
| 2 | Q. Right. | 11:10:28 |
| 3 | A. Okay. | 11:10:28 |
| 4 | Q. I'm saying that because we have got the | 11:10:29 |
| 5 | different terms. So implementor just seems to be -- | 11:10:32 |
| 6 | A. Uh-hmm, okay. | 11:10:32 |
| 7 | Q. -- the wrong way to say it. | 11:10:34 |
| 8 | A. The administrator. | 11:10:34 |
| 9 | Q. Okay. Are there any other exemptions that | 11:10:36 |
| 10 | Tyler Technologies is relying on for purposes of | 11:10:39 |
| 11 | classifying implementors as exempt under the Fair Labor | 11:10:44 |
| 12 | Standards Act? | 11:10:48 |
| 13 | A. No. | 11:10:48 |
| 14 | Q. Have you or any of the other HR directors | 11:10:49 |
| 15 | reviewed Department of Labor decisions to determine | 11:11:02 |
| 16 | whether the implementor position was exempt or nonexempt? | 11:11:07 |
| 17 | A. Not specifically to implementation consultants | 11:11:14 |
| 18 | but when I get notices from professional organizations, I | 11:11:18 |
| 19 | read them about positions being classified as exempt or | 11:11:23 |
| 20 | nonexempt, but I've never seen one that directly ties to | 11:11:28 |
| 21 | implementation consultant. | 11:11:32 |
| 22 | Q. Are you aware that there are Department of | 11:11:32 |
| 23 | Labor decisions that discuss computer software training | 11:11:36 |
| 24 | and similar implementor positions? | 11:11:41 |
| 25 | MR. McKEEBY: You can answer. | 11:11:45 |

103

EXHIBIT "3"

|   |   |   |
|---|---|---|
| 1 | A. I'm aware of the recent changes to the act. | 11:11:46 |
| 2 | MR. McKEEBY: That wasn't her question. | 11:11:52 |
| 3 | THE DEPONENT: I'm sorry. | 11:11:54 |
| 4 | MR. McKEEBY: Would you repeat your question? | 11:11:55 |
| 5 | A. I am not aware of any recent decisions | 11:11:57 |
| 6 | affecting implementation consultants, if that's your | 11:12:00 |
| 7 | question. | 11:12:02 |
| 8 | BY MS. BAGLEY: | 11:12:03 |
| 9 | Q. And it wasn't limited to recent decisions. Are | 11:12:03 |
| 10 | you aware of any decisions of the Department of Labor | 11:12:05 |
| 11 | that deal with computer positions? | 11:12:07 |
| 12 | A. Computer positions? That's -- | 11:12:14 |
| 13 | Q. Positions that involve implementation of | 11:12:16 |
| 14 | computer software? | 11:12:19 |
| 15 | A. No, I'm not. | 11:12:20 |
| 16 | Q. During the time that you were involved with the | 11:12:39 |
| 17 | Courts and Justice evaluation, was there a determination | 11:12:43 |
| 18 | at that meeting that the telephone support position | 11:12:48 |
| 19 | should be changed from exempt to nonexempt? | 11:12:53 |
| 20 | MR. McKEEBY: Object. That's outside the scope of | 11:12:58 |
| 21 | the designation. | 11:13:01 |
| 22 | MS. BAGLEY: Okay. | 11:13:02 |
| 23 | MR. McKEEBY: I instruct him not to answer questions | 11:13:03 |
| 24 | that are outside the scope of the designation. | 11:13:05 |
| 25 | BY MS. BAGLEY: | 11:13:05 |

**EXHIBIT "3"**