```
 1                IN THE UNITED STATES DISTRICT COURT
 2                 FOR THE EASTERN DISTRICT OF TEXAS
 3                          MARSHALL DIVISION
 4                               - - -
 5   PATTY BEALL, MATTHEW MAXWELL,    )
 6   DAVID GRAVELY, TALINA MCELHANY,  )
 7   KELLY HAMPTON, CASEY BROWN,      )
 8   JASON BONNER, KEVIN TULLOS,      )
 9   ANTHONY DODD, ILENE MEYERS,      )
10   TOM O'HAVER, JOY BIBLES, DON     )
11   LOCCHI and MELISSA PASTOR,       )
12   Individually and on behalf of    )
13   all others similarly situated;   )
14         Plaintiffs                 )
15   vs.                              ) 2:08-cv-422-TJW
16   TYLER TECHNOLOGIES, INC., and    )
17   EDP ENTERPRISES, INC.            )
18         Defendants.                )
19   ------------------------------------
20       VIDEOTAPED DEPOSITION OF EDP ENTERPRISES, INC.'S
              CORPORATE REPRESENTATIVE, ROBERT SANSONE
21                        PORTLAND, MAINE
                          AUGUST 17, 2010
22
     ATKINSON-BAKER, INC.
23   COURT REPORTERS
     (800) 288-3376
24   www.depo.com
     REPORTED BY:  Cheryl C. Pieske, RMR
25   FILE NO.:  A40636D
```

**EXHIBIT 1**

```
 1                IN THE UNITED STATES DISTRICT COURT

 2                 FOR THE EASTERN DISTRICT OF TEXAS

 3                           MARSHALL DIVISION

 4                                - - -

 5       PATTY BEALL, MATTHEW MAXWELL,    )

 6       DAVID GRAVELY, TALINA MCELHANY,  )

 7       KELLY HAMPTON, CASEY BROWN,      )

 8       JASON BONNER, KEVIN TULLOS,      )

 9       ANTHONY DODD, ILENE MEYERS,      )

10       TOM O'HAVER, JOY BIBLES, DON     )

11       LOCCHI and MELISSA PASTOR,       )

12       Individually and on behalf of    )

13       all others similarly situated;   )

14              Plaintiff,                )

15              vs.                       ) 2:08-cv-422 TJW

16       TYLER TECHNOLOGIES, INC., and,   )

17       EDP ENTERPRISES, INC.,           )

18              Defendants.               )

19       ------------------------------------

20

21              Videotaped deposition of ROBERT J. SANSONE,

22       taken on behalf of Plaintiff, at 477 Congress Street,

23       Portland, Maine, commencing at 8:40 a.m., Tuesday, August

24       17, 2010, before Cheryl C. Pieske, RMR, Court Reporter

25       and Notary Public.
```

**EXHIBIT 1**

```
 1                    A P P E A R A N C E S:
 2         FOR PLAINTIFFS:
 3         SLOAN, BAGLEY, HATCHER & PERRY LAW FIRM
           BY: LAUREEN F. BAGLEY, ESQ.
 4         101 East Whaley Street
           P.O. Drawer 2909
 5         Longview, Texas 75601
 6         ZELBST, HOLMES & BUTLER
           BY: CHANDRA L. HOLMES, RAY, ESQ.
 7         411 Southwest 6th Street
           Lawton, Oklahoma 73501
 8
 9         FOR DEFENDANT:
10         MORGAN, LEWIS & BOCKIUS, LLP
           BY: PAULO B. McKEEBY, ESQ.
11         1717 Main Street, Suite 3200
           Dallas, Texas, 75201-7347
12
           TYLER TECHNOLOGIES, INC.
13         H. LYNN MOORE, ESQ.
           General Counsel
14
15         Also Present: Neil Orenstein, Videographer
16
17
18
19
20
21
22
23
24
25
```

**EXHIBIT 1**

```
 1   09:06:49    instances where an implementation specialist on one job
 2   09:06:52    might be doing job functions that are slightly different
 3   09:06:55    from an implementation consultant but then on another job
 4   09:06:59    would be doing the same job functions as an
 5   09:07:02    implementation consultant?
 6   09:07:05            MR. McKEEBY:  Object to the question.  You can
 7   09:07:07    answer.  I object to the form of the question.  I'm
 8   09:07:10    sorry.  You can answer.
 9   09:07:10            A.    Are you asking me is that possible?
10   09:07:12            Q.    Yes.
11   09:07:12            A.    Yes, it's possible.
12   09:07:13            Q.    Okay.  So it would depend on the job, not
13   09:07:16    necessarily the position but the job that would create
14   09:07:21    perhaps a difference -- the difference that you were
15   09:07:24    speaking of?
16   09:07:24            A.    That's one of the factors.  The person
17   09:07:27    themselves can -- is probably a bigger factor.
18   09:07:32            Q.    And is that because of their level of
19   09:07:34    experience in the job?
20   09:07:36            A.    Or knowledge from a previous job or that
21   09:07:40    they've learned on the job.  So, yes, experience,
22   09:07:43    knowledge, and, again, the customer as well.
23   09:07:46            Q.    Okay.
24   09:07:50            A.    Product.
25   09:07:51            Q.    My -- I'm sorry.  Go ahead.
```

**EXHIBIT 1**

```
 1   09:07:52        A.    Product also.
 2   09:07:53        Q.    So depending on the product they're installing
 3   09:07:55   or the customer that they're working for, their -- their
 4   09:07:59   job may be a little different?
 5   09:08:00        A.    Yes.
 6   09:08:01        Q.    Okay.
 7   09:08:03        MR. McKEEBY:  But it's not the company's position
 8   09:08:05   that the designation consultant and specialist mean
 9   09:08:09   different functions.
10   09:08:11   BY MS. BAGLEY:
11   09:08:11        Q.    Okay.  What is the company's position with
12   09:08:13   regard to the job title of implementation consultant
13   09:08:18   versus implementation specialist?  Does Tyler
14   09:08:23   Technologies consider those to be different job
15   09:08:24   positions?
16   09:08:29        A.    The industry and Tyler tend to be moving
17   09:08:34   towards implementation consultant.  So there are fewer
18   09:08:37   people called implementation specialists.  There may not
19   09:08:41   be any left right now.  But it's merely something that's
20   09:08:46   happening in the industry and we're following.
21   09:08:49        Q.    Is that because they are -- they essentially do
22   09:08:55   the same job functions?
23   09:09:01        A.    Yes.  Their job is to implement the software
24   09:09:05   product at the site so --
25   09:09:07        Q.    Okay.
```

**EXHIBIT 1**

```
 1   09:09:08        A.   -- yes.
 2   09:09:08        Q.   When Tyler Technologies evaluated the
 3   09:09:14   classification for implementation consultant and
 4   09:09:19   implementation specialist, was there a difference in the
 5   09:09:25   evaluation because the jobs were different, or did Tyler
 6   09:09:29   Technologies consider both of those positions essentially
 7   09:09:32   to be the same position for purposes of classifying those
 8   09:09:36   job positions under the Fair Labor Standards Act?
 9   09:09:39        MR. McKEEBY:   I object to the form of the question.
10   09:09:42   You can answer.
11   09:09:43        A.   We -- we didn't do a separate position
12   09:09:46   evaluation when the title changed because there was a
13   09:09:49   title change.
14   09:09:51   BY MS. BAGLEY:
15   09:09:53        Q.   Well, I'm not sure you answered my question.
16   09:09:55        A.   Oh, okay.
17   09:09:55        Q.   My question wasn't limited to when the title
18   09:10:00   change was made.  My question was in general when Tyler
19   09:10:03   Technologies evaluated the implementation consultant
20   09:10:06   position and the implementation specialist position, did
21   09:10:10   they engage in a separate evaluation of those job
22   09:10:13   functions to determine whether they were exempt
23   09:10:16   positions, or did Tyler Technologies consider them to
24   09:10:20   basically be the same job position for purposes of making
25   09:10:22   that determination?
```

**EXHIBIT 1**

| | | |
|---|---|---|
| 1 | 11:08:07 | those four HR directors are to engage in the analysis of |
| 2 | 11:08:13 | determining whether a position is exempt or nonexempt |
| 3 | 11:08:15 | under the FLSA, correct? |
| 4 | 11:08:18 | MR. McKEEBY: Object to the form of the question. |
| 5 | 11:08:18 | THE DEPONENT: Yeah. |
| 6 | 11:08:19 | MR. McKEEBY: You can answer. |
| 7 | 11:08:20 | A. I don't think that's entirely accurate. |
| 8 | 11:08:22 | BY MS. BAGLEY: |
| 9 | 11:08:22 | Q. Okay. Please correct me. |
| 10 | 11:08:23 | A. We do not -- we require that positions be |
| 11 | 11:08:27 | evaluated to determine whether they're exempt or |
| 12 | 11:08:29 | nonexempt. What we don't do is tell them specifically |
| 13 | 11:08:33 | how they have to do that. |
| 14 | 11:08:34 | Q. Nor does Tyler Technologies provide any |
| 15 | 11:08:37 | guidance or policies in that regard, correct? |
| 16 | 11:08:41 | MR. McKEEBY: Object to the form of the question. |
| 17 | 11:08:43 | You can answer. |
| 18 | 11:08:43 | A. Well, there's no policy because it's a law. So |
| 19 | 11:08:47 | we follow the law. |
| 20 | 11:08:48 | Q. Okay. And how -- do you train the HR directors |
| 21 | 11:08:51 | on how to follow the law, specifically the FLSA? |
| 22 | 11:08:56 | A. No. When we hire an HR director, we expect |
| 23 | 11:08:59 | them to be familiar with that. You wouldn't put somebody |
| 24 | 11:09:04 | into that role who wouldn't be familiar with the FLSA. |
| 25 | 11:09:07 | So I don't train them on it. |

**EXHIBIT 1**

```
 1   11:09:08        Q.  Now, it's my understanding that the only
 2   11:09:12   exemption that is being asserted with regard to the
 3   11:09:21   implementor position is administrative exemption; is that
 4   11:09:25   correct?
 5   11:09:25        MR. McKEEBY:  Well, I don't know.
 6   11:09:28   BY MS. BAGLEY:
 7   11:09:28        Q.  Strike that.  Let me start over.  What
 8   11:09:32   exemption is Tyler Technologies relying on for purposes
 9   11:09:38   of classifying implementors as exempt?
10   11:09:41        MR. McKEEBY:  He's not equipped to answer that
11   11:09:43   question, and I'm not trying to be tricky.  It's just the
12   11:09:47   administrative exemption, but I haven't prepared him to
13   11:09:51   testify on behalf of the company about the defenses in
14   11:09:53   the case.
15   11:09:55        MS. BAGLEY:  I'm not -- and I'm not asking about the
16   11:09:57   defenses.  I'm asking in his mind, in Tyler's corporate
17   11:10:04   decision making --
18   11:10:04        MR. McKEEBY:  Okay.
19   11:10:06        MS. BAGLEY: -- process, what exemption were they
20   11:10:08   using?
21   11:10:09        MR. McKEEBY:  Okay.
22   11:10:12        MS. BAGLEY: -- to -- you know, what part of the
23   11:10:18   exempt classifications was Tyler relying on for purposes
24   11:10:21   of saying that the implementor position was exempt?
25   11:10:24        A.  The implementor position, you mean
```

**EXHIBIT 1**

```
 1   11:10:27        implementation consultant or specialist?
 2   11:10:28        Q.   Right.
 3   11:10:28        A.   Okay.
 4   11:10:29        Q.   I'm saying that because we have got the
 5   11:10:32   different terms.  So implementor just seems to be --
 6   11:10:32        A.   Uh-hmm, okay.
 7   11:10:34        Q.   -- the wrong way to say it.
 8   11:10:34        A.   The administrator.
 9   11:10:36        Q.   Okay.  Are there any other exemptions that
10   11:10:39   Tyler Technologies is relying on for purposes of
11   11:10:44   classifying implementors as exempt under the Fair Labor
12   11:10:48   Standards Act?
13   11:10:48        A.   No.
14   11:10:49        Q.   Have you or any of the other HR directors
15   11:11:02   reviewed Department of Labor decisions to determine
16   11:11:07   whether the implementor position was exempt or nonexempt?
17   11:11:14        A.   Not specifically to implementation consultants
18   11:11:18   but when I get notices from professional organizations, I
19   11:11:23   read them about positions being classified as exempt or
20   11:11:28   nonexempt, but I've never seen one that directly ties to
21   11:11:32   implementation consultant.
22   11:11:32        Q.   Are you aware that there are Department of
23   11:11:36   Labor decisions that discuss computer software training
24   11:11:41   and similar implementor positions?
25   11:11:45        MR. McKEEBY:  You can answer.
```

**EXHIBIT 1**

```
 1   11:11:46         A.   I'm aware of the recent changes to the act.
 2   11:11:52         MR. McKEEBY: That wasn't her question.
 3   11:11:54         THE DEPONENT: I'm sorry.
 4   11:11:55         MR. McKEEBY: Would you repeat your question?
 5   11:11:57         A.   I am not aware of any recent decisions
 6   11:12:00    affecting implementation consultants, if that's your
 7   11:12:02    question.
 8   11:12:03    BY MS. BAGLEY:
 9   11:12:03         Q.   And it wasn't limited to recent decisions.  Are
10   11:12:05    you aware of any decisions of the Department of Labor
11   11:12:07    that deal with computer positions?
12   11:12:14         A.   Computer positions?  That's --
13   11:12:16         Q.   Positions that involve implementation of
14   11:12:19    computer software?
15   11:12:20         A.   No, I'm not.
16   11:12:39         Q.   During the time that you were involved with the
17   11:12:43    Courts and Justice evaluation, was there a determination
18   11:12:48    at that meeting that the telephone support position
19   11:12:53    should be changed from exempt to nonexempt?
20   11:12:58         MR. McKEEBY: Object.  That's outside the scope of
21   11:13:01    the designation.
22   11:13:02         MS. BAGLEY: Okay.
23   11:13:03         MR. McKEEBY: I instruct him not to answer questions
24   11:13:05    that are outside the scope of the designation.
25   11:13:05    BY MS. BAGLEY:
```

**EXHIBIT 1**

| | | |
|---|---|---|
| 1 | 17:15:10 | MS. BAGLEY:  Right. |
| 2 | 17:15:11 | MR. McKEEBY: -- status. |
| 3 | 17:15:12 | MS. BAGLEY:  It may not be, Paulo. |
| 4 | 17:15:14 | MR. McKEEBY:  I really don't think it is, and I'm |
| 5 | 17:15:15 | sure there are a lot of those complaints, and I asked him |
| 6 | 17:15:19 | as my -- |
| 7 | 17:15:19 | MS. BAGLEY:  Is that an admission on the record? |
| 8 | 17:15:20 | MR. McKEEBY:  No.  I said I'm sure as in I would |
| 9 | 17:15:24 | imagine, not being a representative of Tyler Technologies |
| 10 | 17:15:28 | in that context, but, you know, I take my responsibility |
| 11 | 17:15:32 | seriously to prepare him to be the corporate |
| 12 | 17:15:34 | representative. |
| 13 | 17:15:34 | Q.   So let me ask him -- |
| 14 | 17:15:34 | A.   So one of the things -- |
| 15 | 17:15:36 | MS. BAGLEY:  I will ask it -- |
| 16 | 17:15:36 | MR. McKEEBY:  All right. |
| 17 | 17:15:37 | BY MS. BAGLEY: |
| 18 | 17:15:37 | Q.   In your personal capacity as the HR director |
| 19 | 17:15:40 | for Tyler Technologies, have you become aware of |
| 20 | 17:15:44 | complaints by implementors regarding the number of hours |
| 21 | 17:15:48 | they're required to work? |
| 22 | 17:15:48 | A.   No. |
| 23 | 17:15:49 | Q.   And in your personal capacity as the HR |
| 24 | 17:15:54 | director and the vice-president of HR for Tyler |
| 25 | 17:15:58 | Technologies, EXHIBIT 1 made aware of any complaints |

```
 1   17:16:02   by implementors regarding the amount of travel that they
 2   17:16:05   are required to do?
 3   17:16:06        A.   The amount of travel has been brought to my
 4   17:16:10   attention, not necessarily in the form of a complaint.
 5   17:16:13        Q.   Okay.  How was it brought to your attention?
 6   17:16:16        A.   Well, they mention that the travel after a
 7   17:16:19   while gets old, but they understand that that's part of
 8   17:16:23   the job.
 9   17:16:24        Q.   Are there any people that, other than yourself
10   17:16:34   and the HR directors that we've talked about, that make
11   17:16:39   decisions regarding exemptions of employees?
12   17:16:44        A.   No.
13   17:16:48        Q.   Are there -- within MUNIS -- strike that.  Does
14   17:17:42   it make any difference to Tyler Technologies whether an
15   17:17:45   implementor works out of their home or works out of an
16   17:17:48   office?
17   17:17:48        MR. McKEEBY:  I object to the form of the question.
18   17:17:54   You can answer.
19   17:17:55        A.   It's preferable that they work out of the
20   17:18:01   office, but they can be effective out of their home.
21   17:18:05   BY MS. BAGLEY:
22   17:18:05        Q.   Does that have anything -- does the fact that
23   17:18:15   an employee works out of -- an implementor works out
24   17:18:18   their home versus an office, does that affect the
25   17:18:22   employee's employment in any way?
```

**EXHIBIT 1**

```
 1   17:18:27           A.   No.
 2   17:18:27           Q.   Does that affect how the employee is
 3   17:18:34   supervised?
 4   17:18:35           A.   No.
 5   17:18:36           Q.   Does that affect how the implementor does their
 6   17:18:48   job?
 7   17:18:49           A.   No.
 8   17:18:54           Q.   Would you please define the fluctuating work
 9   17:19:15   week provision under the Fair Labor Standards Act?
10   17:19:19           MR. McKEEBY:  That's a legal concept that this
11   17:19:22   witness hasn't been designated to testify about and which
12   17:19:27   is not appropriate in the context of the deposition
13   17:19:29   anyway.
14   17:19:29           Q.   Does Tyler Technologies, have they -- have they
15   17:19:34   ever -- strike that.  During the time that you have
16   17:19:37   worked for Tyler Technologies, have you ever been aware
17   17:19:41   of a policy, practice, or guideline within Tyler
18   17:19:50   Technologies that an implementor would be paid based on
19   17:19:55   the fluctuating work week?
20   17:19:57           MR. McKEEBY:  Again, object to the form of the
21   17:19:59   question.  I'm not sure that this witness knows what the
22   17:20:02   fluctuating work week is.  I'm not sure -- I know that we
23   17:20:05   haven't prepared him to testify about anything to do with
24   17:20:08   that legal concept, and it's not appropriate in the
25   17:20:10   context of this deposition.  So he's not testifying about
```

EXHIBIT 1

```
 1   17:20:14   that.
 2   17:20:17   BY MS. BAGLEY:
 3   17:20:18         Q.   Are you going to listen to your counsel and not
 4   17:20:20   answer the question?
 5   17:20:20         A.   Yes.
 6   17:20:21         MS. BAGLEY:  Certify the question, please.
 7   17:20:26         Q.   Mr. Sansone, have you ever been -- have you
 8   17:20:29   ever told an implementor or someone that's hiring an
 9   17:20:34   implementor that it's Tyler Technologies' understanding
10   17:20:44   that they're going to pay that implementor half time for
11   17:20:49   any hours they work over 40 hours a week?
12   17:20:52         MR. McKEEBY:  You can answer that question.
13   17:20:55         A.   I have not.
14   17:20:56   BY MS. BAGLEY:
15   17:20:56         Q.   Are you familiar with that concept?
16   17:20:58         A.   No, I'm not.
17   17:20:59         Q.   Have you ever heard of fluctuating work week?
18   17:21:02         A.   Not in the context that you're talking about
19   17:21:09   anyway.
20   17:21:09         Q.   Okay.  How have you heard of it?
21   17:21:12         MR. McKEEBY:  Yeah, and if you have heard of it from
22   17:21:15   counsel in connection with this lawsuit, you can --
23   17:21:19         MS. BAGLEY:  I don't want you to tell me anything
24   17:21:21   that you have heard or discussed with your -- with
25   17:21:24   counsel for Tyler Technologies in this lawsuit.
```

**EXHIBIT 1**

CERTIFICATE

I, Cheryl C. Pieske, RMR, Notary Public in and for the State of Maine, hereby certify that on AUGUST 17, 2010, personally appeared before me the within-named deponent who was sworn to testify the truth, the whole truth and nothing but the truth in the aforementioned cause of action; and the foregoing, as reduced to computer type, is a true and accurate record of the evidence as taken by me by means of stenotype.

I further certify that I am a disinterested person in the event or outcome of the aforementioned cause.

IN WITNESS WHEREOF, I subscribe my hand at Waldo, Maine, this 30th day of August, 2010.

_____

Cheryl C. Pieske, RMR

Notary Public

My Commission Expires June 25, 2016.

**EXHIBIT 1**

```
 1                      2:08-cv-422 TJW

 2    PATTY BEALL, et als     ]IN THE DISTRICT COURT OF

 3          Plaintiffs        ]

 4    vs.                     ]MARSHALL DIVISION

 5    TYLER TECHNOLOGIES, INC., ]

 6    and EDP ENTERPRISES, INC., ]

 7          Defendants        ]EASTERN DISTRICT OF TEXAS

 8                   REPORTER'S CERTIFICATION

 9                DEPOSITION OF ROBERT SANSONE

10                      AUGUST 17, 2010

11          I, Cheryl C. Pieske, Registered Merit Reporter

12    in and for the State of Maine, hereby certify to the

13    following:

14          That the witness, ROBERT SANSONE, was duly sworn by

15    the officer and that the transcript of the oral

16    deposition is a true record of the testimony given by the

17    witness;

18          That the deposition transcript was submitted on

19    August 30, 2010, to the witness or to the attorney for

20    the witness for examination, signature and return to me

21    by September 20, 2010;

22          That the amount of time used by each party at the

23    deposition is as follows:

24          Ms. Bagley - 8:40 a.m. to 5:40 a.m., 5:45 p.m. to

25    5:53 p.m.
```

**EXHIBIT 1**

```
 1          Mr. McKeeby - 5:40 p.m. to 5:45 p.m.
 2          That pursuant to information given to the deposition
 3   officer at the time said testimony was taken, the
 4   following includes counsel for all parties of record:
 5          Ms. Laurene Bagley, Attorney for Plaintiffs
 6          Ms. Chandra L. Holmes Ray, Attorney for Plaintiffs
 7          Mr. Paulo B. McKeeby, Attorney for Defendants
 8          Mr. H. Lynn Moore, Attorney for Defendants
 9          I further certify that I am neither counsel for,
10   related to, nor employed by any of the parties or
11   attorneys in the action in which this proceeding was
12   taken, and further that I am not financially or otherwise
13   interested in the outcome of the action.
14          Further certification requirements pursuant to Rule
15   203 of TRCP will be certified to after they have
16   occurred.
17          Certified to by me this 30th day of August, 2010.
18
19          _____
20          Cheryl C. Pieske, RMR
21
22
23
24
25
```

**EXHIBIT 1**

```
 1              FURTHER CERTIFICATION UNDER RULE 203 TRCP
 2          The original deposition was/was not returned to the
 3     deposition officer on _____;
 4          If returned, the attached Changes and Signature page
 5     contains any changes and the reasons therefor;
 6          If returned, the original deposition was delivered to
 7     _____, Custodial Attorney;
 8          That $ _____ is the deposition officer's charges
 9     to the ^ party for preparing the original deposition
10     transcript and any copies of exhibits;
11          That the deposition was delivered in accordance with
12     Rule 203.3, and that copy of this certificate was served
13     on all parties shown herein on and filed with the Clerk.
14          Certified to by me this _____ day of
15     _____,_____.
16
17                        _____
18                           Cheryl C. Pieske, RMR
19
20
21
22
23
24
25
```

**EXHIBIT 1**